**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

---

**TENZING FINANCIAL ADVISORS, PLLC** and **JERRY L. FURLONG JUNIOR**,

    *Plaintiffs*,

v.

**PHOS CREATIVE, LLC** and **DUNCAN WAY**,

    *Defendants*.

Index No.: 1:26-cv-00006-MW-MJF

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DUNCAN WAY'S RULE 12(B)(6) MOTION TO DISMISS THE AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ................................................................................3

    A.    PHOS Performs Naming, Branding, and Design Work for Furlong's Business (Tenzing's Predecessor-In-Interest) ..........................................3

    B.    PHOS Receives Plaintiffs' Cease-and-Desist Letter, Notifies Way of Takedown Demand, And Confirms Compliance by Way .......................5

    C.    Plaintiffs File the Complaint and the Amended Complaint ....................6

LEGAL STANDARD ...........................................................................................9

ARGUMENT .....................................................................................................10

    I.    Plaintiffs Do Not Have a Valid and Enforceable Contract with Way ..........10

    II.    Plaintiffs Lack Valid Copyright Registrations For the Tenzing Materials 13

    III.    Way Did Not Infringe the Tenzing Materials ...........................................15

    A.    Plaintiffs Fail to Allege That the Tenzing Materials Are Subject to Copyright Protection.............................................................................15

    B.    Publication of the Tenzing Materials Was *De Minimis* ........................20

    IV.    Publication of Furlong's First Name Was Not For a Commercial Purpose Under F.S. §540.08 ...........................................................................................23

    V.    Plaintiffs Are Not Entitled to Statutory Damages or Attorney's Fees ......25

CONCLUSION ..................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... 9

*Associated Builders, Inc. v. Ala. Power Co.*,
  505 F.2d 97 (5th Cir. 1974) ............................................................. 10

*Bateman v. Mnemonics, Inc.*,
  79 F.3d 1532 (11th Cir. 1996) ......................................................... 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................... 9

*CompuLife Software Inc. v. Newman*,
  959 F.3d 1288 (11th Cir. 2020) ....................................................... 16

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ......................................................... 8

*Eglin Fed. Credit Union v. Baird*,
  400 So. 3d 643 (Fla. 1st DCA 2024) ............................................... 11

*Essential Media Group, LLC v. 43 North Broadway, LLC*,
  No. 1:16-cv-24226, 2017 WL 2820014 (S.D. Fla. Apr. 21, 2017) ................ 14

*Faulkner Press, LLC v. Class Notes, LLC*,
  756 F. Supp. 2d 1352 (N.D. Fla. 2010) ........................................... 25

*Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ......................................................................... 18

*Fernandez v. School Board of Miami-Dade County*,
  201 F. Supp. 3d 1353 (S.D. Fla. 2016) ............................................. 8

*Fernandez v. Tricam Indus., Inc.*,
  No. 09-22089-civ, 2009 WL 10668267 (S.D. Fla. Oct. 21, 2009) .................. 9

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019) .................................................................. 13, 14

*Fuentes v. Mega Media Holdings, Inc.*,
  721 F. Supp. 2d 1255 (S.D. Fla. 2010) ........................................... 25

*Gibson v. Courtois*,
  539 So. 2d 459 (Fla. 1989) ............................................................. 11

*Griffin Indus. Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007)........................................................................ 10

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) ......................................................................................... 21

*Harris v. Ivax Corp.*,
182 F.3d 799 (11th Cir. 1999)............................................................................ 8

*Herzog v. Castle Rock Entm't*,
193 F.3d 1241 (11th Cir. 1999)................................................................. 17, 18

*Hoefling v. City of Miami*,
811 F.3d 1271 (11th Cir. 2016)........................................................................ 10

*Horsley v. Feldt*,
304 F.3d 1125 (11th Cir. 2002)........................................................................ 8

*Kmet v. Discovery Communications, LLC*,
No. 4:16-cv-565, 2017 WL 11672822 (N.D. Fla. Nov. 30, 2017).................. 22

*Loft v. Fuller*,
408 So. 2d 619 (Fla. 4th DCA 1981) ............................................................... 23

*MiTek Holdings, Inc. v. Arce Engineering Co.*,
89 F.3d 1548 (11th Cir. 1996).......................................................................... 20

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
297 F.3d 1182 (11th Cir. 2002).......................................................................... 9

*Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*,
533 F.3d 1287 (11th Cir. 2008)................................................. 15, 17, 20, 21

*Pintando v. Miami-Dade Hous. Agency*,
501 F.3d 1241 (11th Cir. 2007).......................................................................... 8

*Quesada v. Better Earth, Inc.*,
No. 6:23-cv-1809, 2024 WL 3890077 (M.D. Fla. Aug. 21, 2024) ................. 12

*Richmond v. Pep Boys-Manny*,
No. 5:05-cv-304, 2006 WL 1529079 (M.D. Fla. May 30, 2006).............. 12, 13

*Seven Oaks Millwork, Inc. v. Royal Foam US, LLC*,
483 F. Supp. 3d 1192 (M.D. Fla. 2020) .......................................................... 22

*Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*,
998 F. Supp. 2d 1340 (S.D. Fla. 2014) ............................................................ 22

*St. Joe Corp. v. McIver*,
 875 So. 2d 375 (Fla. 2004) ................................................................. 11

*St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*,
 No. 8:06-cv-223, 2007 WL 9734142 (M.D. Fla. May 17, 2007) .................... 14

*Tyne v. Time Warner Entm't Co., L.P.*,
 204 F. Supp. 2d 1338 (M.D. Fla. 2002) ........................................ 23

*Tyne v. Time Warner Entm't Co., L.P.*,
 901 So. 2d 802 (Fla. 2005) ................................................... 23, 24

*Universal Express, Inc. v. SEC*,
 177 F. App'x 52 (11th Cir. 2006) ............................................... 10

*Wilchombe v. TeeVee Toons, Inc.*,
 555 F.3d 949 (11th Cir. 2009) ................................................. 10

## Statutes

17 U.S.C. § 101 .................................................................. 19

17 U.S.C. § 102 .............................................................. 18, 19

17 U.S.C. § 412 .................................................................. 26

17 U.S.C. § 512 .................................................................. 27

Fla. Stat. § 540.08 ............................................................... 23

## Regulations

37 C.F.R. § 202.1 ............................................................ 18, 19

## Other Authorities

1 Williston on Contracts § 4:16 (4th ed.) ............................................ 11

3 Nimmer on Copyright § 13.03[F][5] (1996) ..................................... 20

Federal Rule of Evidence 201(b) ................................................... 8

## <u>INTRODUCTION</u>

As a graphic designer, Duncan Way did everything he was supposed to do. He maintained a portfolio website showcasing his work. He got a job at PHOS Creative, LLC ("PHOS"), a creative and design agency. He worked on the projects which were assigned to him. One of these projects was for Jerry L. Furlong Junior's ("Furlong") financial advisory firm. Inspired by Furlong's own words about how he tried to "carry the load for his clients," Way drew upon his knowledge of mountain-climbing history and brainstormed the name "Tenzing," derived from the real-life individual Tenzing Norgay, the sherpa who helped Edmund Hillary summit Mt. Everest. After settling on the name with Furlong, Way worked with his colleagues at PHOS to implement a standard design process: creating mood boards and color palettes; exploring different logo concepts; and packaging final brand guidelines outlining the colors, logo variations, typefaces, and voice & tone for the newly-formed entity, Tenzing Financial Advisors, PLLC ("Tenzing"). Furlong accepted the brand guidelines and launched his firm's rebrand shortly thereafter. Way was proud of the work he had done on the Tenzing project, so sometime after Tenzing's rebrand went live, Way included the project on his portfolio website, explaining in greater detail his design process for Tenzing.

More than two years after the Tenzing project had concluded, Way was contacted by PHOS. PHOS had received a cease-and-desist letter from Tenzing, demanding that Way remove all information about Tenzing from Way's portfolio website. Plaintiffs did not bother to send Way a copy of the letter directly; Way learned of the demand only when PHOS contacted him. Way immediately complied with the request, taking the page down on the very same day PHOS notified him.

That resolution, however, did not satisfy Plaintiffs. Plaintiffs had identified another financial services firm operating under the name Tenzing, Tenzing Financial, LLC ("Tenzing VA"), located in Virginia. Plaintiffs allege that Tenzing VA's name and branding are identical or nearly identical to that of Tenzing—so much so that it could not be a coincidence. Instead, Plaintiffs believe that Tenzing VA stole the name and branding from Way's portfolio website. This theory is implausible on its face: Tenzing VA was incorporated in 2020, three years before Way ever worked on the Tenzing project. Plaintiffs filed a separate action against Tenzing VA and now demand that Way and PHOS foot the bill for that separate lawsuit. As support for such monetary recovery and additional damages, Plaintiffs allege that Way is liable for breach of contract, copyright infringement, and unauthorized publication of Furlong's name or likeness.

Despite Plaintiffs' far-reaching allegations of liability, the Amended Complaint has no legal merit. Claim 1 (the "Contract Claim") fails because Way was

2

never a party to any contract with Plaintiffs and the Amended Complaint alleges no alternative theory of personal liability against him. *See* POINT I. Claims 2 and 3 (the "Copyright Claims") are independently barred because Plaintiffs did not register the allegedly infringed materials (collectively referred to by Plaintiffs as the "Tenzing Materials") in time, and their one existing copyright registration does not cover the majority of the Tenzing Materials. *See* POINT II. But even assuming that Plaintiffs addressed this threshold issue, the Copyright Claims fail on their merits: the Tenzing Materials are, by and large, uncopyrightable as a matter of law; and Way's display of any protectable elements in the Tenzing Materials was *de minimis* and cannot support a finding of substantial similarity as a matter of law. *See* POINT III. Finally, Claim 4 (the "Right of Publicity Claim") fails because Way referenced Furlong's first name solely for purposes of attribution, and not for commercial trade or advertising as required by F.S. §540.08. *See* POINT IV.

This case should have never been filed against Way. As discussed below, Way has been nothing but a good-faith operator and model employee. Plaintiffs' attempt to saddle Way with the consequences of their own decisions and the conduct of an unrelated third party should be dismissed in its entirety.

## FACTUAL BACKGROUND

### A. PHOS Performs Naming, Branding, and Design Work for Furlong's Business (Tenzing's Predecessor-In-Interest)

3

In early 2023, Duncan Way did what any employee at a creative agency does: he showed up and did his job. Way was an employee at PHOS, a creative and design agency. PHOS (and ***not*** Way) had contracted with Furlong Financial Group, PLLC ("FFG," predecessor-in-interest to Tenzing) on January 3, 2023, to perform naming, branding, and design services under an agreement duly executed by both parties (the "Agreement"). Am.Compl. Ex. A, 22-23. Way was not a signatory or party to the Agreement. *See id.* at 23. PHOS apprised its design team, which included Way, of the deliverables due under the Agreement. These were: (1) Name Identification and Selection; (2) a Brand Plan; and (3) Logo Design and Brand Package. *See id.* at 19; Am.Compl. ¶29. Under PHOS' direction, Way's team completed the naming, branding, and logo design services for FFG in April 2023. Am.Compl. ¶34. Furlong was pleased with the results: he filed incorporation documents for Tenzing Financial Advisors, PLLC, on March 24, 2023, Am.Compl. Ex. B, and the new logo and branding materials for Tenzing "went live in 2023," Am.Compl. ¶36.

Way was proud of the work he had completed for FFG while at PHOS and did what all designers do: he added the project to his portfolio website (the "Portfolio"). Am.Compl. Ex. G. The Portfolio was a professional website showcasing Way's design process across multiple client engagements, including Omnah Foundation, Gallop Veterinary, and Siren Distilling Co. Am.Compl. Ex. H. The Portfolio page for Tenzing was no different. It discussed how Way was "inspired

4

by Jerry [Furlong] describing how he tries to carry the load for his clients" and was reminded of Tenzing Norgay, the "sherpa who helped Edmund Hil[l]ary climb Everest." Am.Compl. Ex. G; *see also* Am.Compl. ¶47. Way described searching for a "strong brand identity that was professional but still approachable," presenting Furlong with "three mood boards" and "some different logo stylings" as part of this process. *Id.* Way then described exploring "mountain and letter-based iconography," as a nod to Tenzing Norgay, in "professional, bold, yet approachable fonts," which led to the final logo and branding selected. *Id.* As visual aids, Way included the final logo, three alternate logos, three mood boards, and six slides from a "Brand Style Guide" presentation deck. *See id.* This was all standard practice for any designer building a professional portfolio.

### B. PHOS Receives Plaintiffs' Cease-and-Desist Letter, Notifies Way of Takedown Demand, And Confirms Compliance by Way

Plaintiffs took no action to protect their alleged rights for more than two years. It was not until October 13, 2025, more than two years after Plaintiffs received the deliverables under the Agreement, that Tenzing bothered to apply for a federal copyright registration. *See* Am.Compl. Ex. C, 2. The applied-for registration was for a "Brand Style Guide" consisting of 25 slides (*id.* at 5-29, titled the "Tenzing Branding Guide") and describing "elements you may need—logos, typefaces, colors, and more—to create a consistent, tone, look, and feel" for Tenzing. *Id.* at 6.

Ten days later, Tenzing's counsel sent a cease-and-desist letter to PHOS but not to Way. Am.Compl. Ex. I, 2. By that point, Way no longer even worked at PHOS. *See id.* at 3 ("[t]he fact that Duncan [Way] has since left PHOS does not absolve You of responsibility"). Plaintiffs knew this and still chose not to send Way direct notice of their alleged claims. The letter demanded that PHOS "[i]mmediately remove all copies of Tenzing's brand guide, logo, and proprietary materials from any website, public portfolio, or third-party platform" and "[i]nstruct Duncan [Way] and any employee, whether current or former, and any of PHOS' agents to remove all such materials from their respective platforms," among other demands. *Id.* at 4. PHOS had to track down Way separately to pass along the takedown demand.

Way immediately complied with the request, taking down the Portfolio page on the very same day he was notified. *See* Am.Compl. Ex. J (Monday, October 27, 2025, email from PHOS assuring Furlong that "[e]verything on Duncan [Way]'s website has been down since last Friday"). That should have been the end of it.

### C. Plaintiffs File the Complaint and the Amended Complaint

Plaintiffs filed their Complaint on January 7, 2026, before the U.S. Copyright Office had even granted a registration to the "Tenzing Branding Guide." *Compare* Compl. [ECF No. 1] *with* Am.Compl. Ex. C, 2. The registration issued nine days later, on January 16, 2026, and even then, the Copyright Office significantly cabined the work's scope of protection, noting that registration was made "for the literary

6

work as a whole" and that "[s]tandard shapes, formatting, and layout [were] not copyrightable." Am.Compl. Ex. C, 3-4. Way, who had promptly removed the Portfolio page the moment he was notified, was not served with the Complaint until January 31, 2026, and it was only then that he learned the full extent of Plaintiffs' allegations and saw the Agreement between FFG and PHOS for the first time. *See* Summons [ECF No. 8].

The Amended Complaint (filed on March 12, 2026) [ECF No. 21] builds a damages theory on factual allegations Plaintiffs know to be false. First, it alleges that an unspecified Defendant breached the Agreement and that Way's Portfolio page caused Tenzing VA, a Virginia third party, to steal Tenzing's name and branding, requiring Plaintiffs to file suit against Tenzing VA to accuse it of "utiliz[ing] Tenzing's materials to develop their own [nearly identical] brand." Am.Compl. ¶¶72-74. Plaintiffs allege that, "[o]n information and belief, Tenzing VA was founded after Tenzing's founding, and after Defendant's unauthorized publication of the Tenzing Materials." *Id.* ¶71. But Plaintiffs themselves previously filed with this Court the Certificate of Organization for Tenzing VA, showing that Tenzing VA was organized under its present name since June 12, 2020—that is, three years before Way ever worked on the Tenzing project. Compl. Ex. L. Plaintiffs quietly dropped

7

that exhibit from the Amended Complaint but left the false allegation in place.[1]

Nonetheless, Plaintiffs contend that "Tenzing has had to expend significant time and resources to protect and enforce their Intellectual Property rights in a separate action against Tenzing VA," Am.Compl. ¶75, and demand "special damages, including all fees, expenses, and costs associated with enforcement of their Intellectual Property rights against third parties," *id.* ¶E.

Next, the Amended Complaint alleges copyright infringement of the Tenzing Materials, which include the "Tenzing Branding Guide." *Id.* ¶¶87-98, 99-107. Plaintiffs request damages (including special and statutory damages), *id.* ¶C, attorney's fees, *id.* ¶F, and a permanent injunction enjoining Defendants from

---

[1] Plaintiffs removed Tenzing VA's Certificate of Organization from the Amended Complaint. Although the general rule in the Eleventh Circuit is that an amended pleading supersedes all prior versions, *see Fernandez v. School Board of Miami-Dade County*, 201 F. Supp. 3d 1353, 1361 n.1 (S.D. Fla. 2016) (citing *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)), the Eleventh Circuit has adopted the "incorporation by reference" doctrine, under which attachments to a motion to dismiss "may be considered by the court…if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed," where "undisputed…means that the authenticity of the document is not challenged," *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). *See also* Fed. R. Evid. 201(b); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*"). It is appropriate for this Court, then, to consider Tenzing VA's Certificate of Incorporation, Compl. Ex. L, where the document was filed by Plaintiffs, is presently part of public court records, is central to Plaintiffs' claims and prayer for damages, and was not expressly disavowed by Plaintiffs.

displaying the Tenzing Materials, *id.* ¶B, even though Plaintiffs were notified on October 27, 2025, that Way had already removed all references to Tenzing from the Portfolio, Am.Compl. Ex. J.

Finally, the Amended Complaint claims that the mere mention of Furlong's first name on Way's Portfolio page constitutes unauthorized publication of name or likeness in violation of F.S. §540.08. *See id.* ¶¶108-112.

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Fernandez v. Tricam Indus., Inc.*, No. 09-22089-civ, 2009 WL 10668267, at *1 (S.D. Fla. Oct. 21, 2009) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). In analyzing the

9

sufficiency of the complaint, courts "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). However, on a motion to dismiss, courts may also take judicial notice of certain facts, such as public court records, without converting the motion into one for summary judgment. *See Universal Express, Inc. v. SEC*, 177 F. App'x 52, 53 (11th Cir. 2006). Of particular relevance here, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus. Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) ("Conclusory allegations and unwarranted deductions of fact are not admitted as true, especially when such conclusions are contradicted by facts disclosed by a document appended to the complaint. If the appended document…reveals facts which foreclose recovery as a matter of law, dismissal is appropriate.")); *see also Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

## ARGUMENT

### I. Plaintiffs Do Not Have a Valid and Enforceable Contract with Way

10

The Contract Claim (Claim 1) fails at the threshold because Way was never a party to any contract with Plaintiffs. *See* Am.Compl. Ex. A, 23. It is a well-established tenet of contract law that mutual assent is required for contract formation, which is typically evidenced by the signatures of the contracting parties. *See Eglin Fed. Credit Union v. Baird*, 400 So. 3d 643, 646 (Fla. 1st DCA 2024). "'Mutual assent is an absolute condition precedent to the formation of the contract,' without which 'neither the contract nor any of its provisions come into existence.'" *Id.* (quoting *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989)). Moreover, an "offeree cannot actually assent to an offer unless the offeree knows of its existence." *Id.* (quoting 1 WILLISTON ON CONTRACTS §4:16 (4th ed.)).

The Agreement itself is dispositive. Way's name does not appear anywhere in the Agreement. It was between FFG and PHOS, Way's then-employer. Am.Compl. Ex. A, 23. A valid contract in Florida requires "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). Plaintiffs cannot satisfy any of these elements as to Way: Way was not the party receiving the offer, was not the party authorized to accept on behalf of PHOS, and in fact did not even know the essential terms of the Agreement until he was served with the Complaint. Way cannot be held individually liable for breaches of a contract he was not a party to, knew nothing about, and never signed.

Plaintiffs' failure to allege any alternative theory of personal liability is equally fatal. Plaintiffs themselves allege that Way was a "full-time employee at Phos." *See* Am.Compl. ¶106. Yet even a corporation's officers are generally not personally liable for breaches of contract entered into by the corporation. *See Quesada v. Better Earth, Inc.*, No. 6:23-cv-1809, 2024 WL 3890077, at *8 (M.D. Fla. Aug. 21, 2024) ("It is well settled that a corporation's officer is not liable for a corporation's contracts except in two circumstances: where (1) the officer signed in an individual capacity, or (2) the corporate veil was pierced as between the officer and the contracting corporation" (internal quotations and references omitted)). Way was not an officer; he was a rank-and-file employee. Plaintiffs neither allege that Way signed in an individual capacity nor that any corporate veil should be pierced. The Contract Claim against Way has no legal basis.

The proposition that an employee is personally bound by his employer's contracts is so legally untenable that few courts have even had occasion to reject it. The Middle District of Florida has stated that binding employees to employer contracts "would turn the law of master/servant, the law of agency, and contract law on its head" and give every employee "independent authority to modify the terms of the contract, terminate the contract, extend the contract terms, or yes, sue for an alleged breach of the contract, without first seeking the approval of the corporation's officers or authorized agents. This would render the contract completely

12

ineffective." *Richmond v. Pep Boys-Manny*, No. 5:05-cv-304, 2006 WL 1529079, at *5 (M.D. Fla. May 30, 2006). For all these reasons, Plaintiffs' Contract Claim against Way should be dismissed with prejudice.

## II. Plaintiffs Lack Valid Copyright Registrations For the Tenzing Materials

Plaintiffs' Copyright Claims (Claims 2-3) fail, in whole or in part, because Plaintiffs did not obtain the required copyright registrations before instituting suit. As the Supreme Court has reiterated, plaintiffs "must comply with [17 U.S.C.] §411(a)'s requirement that 'registration … has been made'" before filing suit. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). "[A]lthough an owner's rights exist apart from registration, … registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Id.* A plaintiff must "receive the Copyright Office's decision on [an] application before instituting suit." *Id.* at 308.

Plaintiffs allege only one copyright registration, for the Tenzing Branding Guide, and allege no registrations whatsoever for the remainder of the Tenzing Materials. The "Tenzing Materials," as defined by Plaintiffs, encompass far more than the Tenzing Branding Guide alone: they include mood boards, logo iterations, color schemes, typography, brand voice/attributes, and naming development work. *See* Am.Compl. ¶¶29, 45, 46, 48, 89, 92-94. Plaintiffs do not allege that any of these materials have been registered with the Copyright Office for an obvious reason: they

13

are not eligible for copyright registration. The Copyright Claims therefore fail as to all Tenzing Materials beyond the Tenzing Branding Guide and should be dismissed on that basis alone.

As to the Tenzing Branding Guide specifically, Plaintiffs filed their Complaint before the registration was issued. *Compare* Compl. *with* Am.Compl. Ex. C, 3. Plaintiffs instituted this action on January 7, 2026. The Copyright Office did not grant registration until January 16, 2026. Am.Compl. Ex. C, 3. The registration was therefore not "made" at the time Plaintiffs instituted suit, as §411(a) requires. Plaintiffs subsequently filed the Amended Complaint on March 12, 2026, after the registration had issued. While some courts in this circuit have held that a timely and non-prejudicial amended complaint may cure a pre-registration filing defect, *see St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, No. 8:06-cv-223, 2007 WL 9734142, at *9-10 (M.D. Fla. May 17, 2007), the better-reasoned and more recent approach is that the original complaint controls and the proper procedure where registration is obtained after filing suit is to institute a new action. *See Fourth Estate*, 586 U.S. at 299-300 (affirming Eleventh Circuit's affirmation of district court's dismissal of copyright complaint); *see also Essential Media Group, LLC v. 43 North Broadway, LLC*, No. 1:16-cv-24226, 2017 WL 2820014, at *2 (S.D. Fla. Apr. 21, 2017) (dismissing a complaint without prejudice where the plaintiff held only a pending application at the time of filing and noting that the Eleventh Circuit requires

14

a certificate of registration before suit may be brought). Plaintiffs made a deliberate choice to file suit before registration was in hand. Having made that strategic choice, Plaintiffs cannot now use an amended pleading to paper over the defect they created. Moreover, the registration issued more than two months after Way had already removed all Tenzing Materials from his Portfolio, rendering any injunctive relief moot from the outset. *See* Am.Compl. Ex. J.

## III. Way Did Not Infringe the Tenzing Materials

Even if Plaintiffs could overcome the registration defect, the Copyright Claims fail on the merits. "To make out a prima facie case of copyright infringement, a plaintiff must show that (1) it owns a valid copyright … and (2) defendants copied protected elements from the [work]." *Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1301 (11th Cir. 2008). First, the Tenzing Materials are largely comprised of elements that are uncopyrightable as a matter of law, namely colors, typefaces, short phrases, and ideas. *See* POINT III(A). Second, even as to any protectable elements surviving that filtration step, Way's display of them on his Portfolio was *de minimis* and cannot support a finding of substantial similarity. *See* POINT III(B). The Copyright Claims should be dismissed on both grounds.

### A. Plaintiffs Fail to Allege That the Tenzing Materials Are Subject to Copyright Protection

15

The Eleventh Circuit employs the three-step abstraction-filtration-comparison test to determine issues of copyright infringement. *See CompuLife Software Inc. v. Newman*, 959 F.3d 1288, 1303 (11th Cir. 2020) (citing *Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543-46 (11th Cir. 1996)). Under this test, a court (1) *abstracts* the allegedly infringed work into its constituent parts, (2) *filters* out all non-protectable material, and then (3) *compares* what remains of the filtered work against the allegedly infringing work. *See id.* Notably, filtration is "a question of law or, at the very least, a mixed question of law and fact, to be determined by a judge," *id.* at 1309 n.12, which does not require discovery and is therefore properly adjudicated on a motion to dismiss.

But Plaintiffs' Copyright Claims stumble before the filtration stage even begins. The Amended Complaint defines the "Tenzing Materials" so expansively and inconsistently that it is impossible to discern which specific, fixed, and expressed works of authorship Plaintiffs actually claim were infringed. Plaintiffs define "Tenzing Materials" twice in the Amended Complaint, Am.Compl. ¶¶29, 45, each time referring to a different universe of materials, and introduce new components in Claim 2. *Id.* ¶¶89, 92-94. This lack of specificity is itself grounds for dismissal.

Reading the Amended Complaint using the most generous construction to Plaintiffs' definition and for purposes of broadest abstraction, we interpret the term

16

"Tenzing Materials" as encompassing every component Plaintiffs allege was infringed. Under this interpretation, the allegedly infringed Tenzing Materials include: (a) the three deliverables under the Agreement, Am.Compl. ¶29; (b) the Tenzing Branding Guide, which includes "color choices, typeface, and alternative logo designs," *id.* ¶45; (c) Way's "additional commentary and insight describing [] how he created the Tenzing Brand Guide," *id.*; (d) "the 'why' behind the Tenzing name and the development process," *id.*; (e) "private information regarding conversations between Furlong and Duncan [Way] regarding the brand development process," *id.* ¶46; (f) "visuals of the mood boards, alternative logo iterations, color scheme, typography, and brand voice/attributes," *id.* ¶48; (g) the "Technical Information" and "creations and inventions" assigned and transferred to FFG by PHOS under the Agreement, *id.* ¶89; and (h) the "Intellectual Property" assigned and transferred to FFG by PHOS under the Agreement, *id.* ¶¶89, 92-94, which includes (i) the "mood boards," *id.* ¶93, and (ii) "Proprietary Information contained in the conversations between Furlong and Duncan [Way], under the Agreement," *id.* ¶94.

Even under this generous construction, the vast majority of the Tenzing Materials is uncopyrightable as a matter of law. *See generally Peter Letterese*, 533 F.3d at 1302 ("Copyright protects original *expression* only; it does not extend to any underlying ideas, procedures, processes, and systems." (quoting *Herzog v. Castle*

17

*Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir. 1999))). Subparts (c)-(e) and (h)(ii) are conversations, thoughts, "[i]deas, plans, methods, [or] systems," which cannot be copyrighted unless "expressed or described in a writing," 37 C.F.R. §202.1(b); *see also* 17 U.S.C. §102(a) ("Copyright protection subsists…in original works of authorship *fixed in any tangible medium of expression*" (emphasis added)). Plaintiffs allege no such writing. These claims sound in breach of confidentiality, not copyright, and as discussed above, Way had no contract with Plaintiffs.

Subpart (g) contains the hallmarks of a contract claim rather than a copyright claim: Plaintiffs do not allege which specific, fixed, and expressed works constitute the "Technical Information" and "creations and inventions" that would give rise to copyright protection. Mere assignment of ownership through the Agreement does not, by itself, render those deliverables copyrightable; they must also meet the statutory requirements for copyrightability. *See* 17 U.S.C. §102; 37 C.F.R. §202.1. Plaintiffs cannot repackage their contract claims as copyright infringement claims to sweep in a non-party to their contract with PHOS.

The mood boards fare no better. Subparts (a), (f), and (h)(i) all allege that the "mood boards" were infringed. The mood boards are compilations of existing works, none of which are owned by Plaintiffs. *See* Am.Compl. Ex. G., 2. Not all compilations are afforded copyright protection, particularly where compilations are factual in nature. *See Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 358

(1991). Plaintiffs have not registered the mood boards with the Copyright Office nor pled any facts to support a finding of copyrightability of said compilations.

Most of the visual components of the Tenzing Materials are similarly unprotectable. Subparts (b) and (f) specifically refer to the "color choices, typeface," Am.Compl. ¶45, and "brand voice/attributes," *id.* ¶48. The law is clear on each of these elements. Coloring is not subject to copyright protection. 37 C.F.R. §202.1(a). Neither are typefaces. 37 C.F.R. §202.1(e). Nor is the "mere listing of…contents," such as words or short phrases. 37 C.F.R. §202.1(a).

The Copyright Office itself confirmed the narrow scope of what remains protectable. When it granted registration to the Tenzing Branding Guide, the Copyright Office registered it as a "*literary work* as a whole" (emphasis added) and excluded "[s]tandard shapes, formatting, and layout." Am.Compl. Ex. C, 3-4. Literary works under the Copyright Act are "works…expressed in words, numbers, or other verbal or numerical symbols or indicia," 17 U.S.C. §101, and are distinct from pictorial or graphic works, *see* 17 U.S.C. §102(a)(5). After filtration, the only protectable elements of the Tenzing Materials are the literal sentences in the Tenzing Branding Guide. None of the visual components Plaintiffs complain of are protectable.

Because Plaintiffs have only alleged that ideas, processes, plans, systems, facts, and standard visual components were infringed by Way—none of which are

19

subject to copyright protection—Plaintiffs' Copyright Claims should be dismissed as a matter of law.

### B. Publication of the Tenzing Materials Was *De Minimis*

Even if certain Tenzing Materials survived filtration, Way's display of them was *de minimis* as a matter of law. The Eleventh Circuit recognizes the *de minimis* copying doctrine, which holds that "[i]n some cases, the amount of material copied will be so small as to be *de minimis*, and will not justify a finding of substantial similarity." *MiTek Holdings, Inc. v. Arce Engineering Co.*, 89 F.3d 1548, 1560 (11th Cir. 1996) (quoting 3 NIMMER ON COPYRIGHT §13.03[F][5] at 13–146 (1996)). Any copying "must be assessed with respect to both the quantitative and qualitative significance of the amount copied to the copyrighted work as a whole." *See Peter Letterese*, 533 F.3d at 1307.

Here, Way's Portfolio page displayed only: (1) the Tenzing logo, along with three versions of the Tenzing logo and three alternate designs, (2) three mood boards, and (3) six slides from the Tenzing Branding Guide, which has 25 total slides (collectively, the "Displayed Images"). Am.Compl. Ex. G; *compare id. with* Am.Compl. Ex. C, 5-29.

Quantitatively, the Displayed Images are a trivial fraction of the Tenzing Materials. Plaintiffs define the Tenzing Materials to include "Technical Information," "Intellectual Property," "creations and inventions," "Proprietary

20

Information," "private information," "the 'why' behind the Tenzing name and the development process," "additional commentary and insight," "visuals of the mood boards, alternative logo iterations, color scheme, typography, and brand voice/attributes," the Agreement deliverables, and the Tenzing Branding Guide. *See generally* POINT III(A). Measured against this sprawling definition, the Displayed Images account for a miniscule portion of the Tenzing Materials. Moreover, the portion of the Tenzing Branding Guide displayed on the Portfolio accounted for less than a quarter of the presentation deck.

The qualitative analysis leads to the same conclusion. Qualitative significance looks to how important the copied portion was to the allegedly infringed work; in other words, whether the defendant has copied the "heart" of the work. *See Peter Letterese*, 533 F.3d at 1314 (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564-65 (1985)). Way did not copy the "heart" of anything. The mood boards and six slides from the Tenzing Branding Guide were displayed as small thumbnails for purposes of visual impact and layout, rather than as high-quality substitutes for the allegedly infringed works. *See* Am.Compl. Ex. G. Their low-quality nature—low resolution, low clarity, low readability—reinforces a finding that the Displayed Images are themselves qualitatively insignificant. Moreover, for the Tenzing logo, its different versions, and its alternates, the purpose of such logos is as source indicators, and Way did not utilize the logos as marks here to usurp the

21

"heart" of the logos. Rather, Way displayed the marks as visual aids for his "additional commentary and insights" regarding his design process, *see id.* ¶45, a use that is completely different in nature, purpose, character, and quality from the "heart" of Plaintiffs' logos.

Because the Displayed Images are *de minimis* relative to the allegedly infringed work, both quantitatively and qualitatively, this Court should dismiss the Copyright Claims. Where, as here, the allegedly infringed work and the allegedly infringing work are both provided in Plaintiffs' pleadings, "it is appropriate for the Court to determine the issue of substantial similarity based on a Motion to Dismiss." *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1349 (S.D. Fla. 2014) (holding that the issue of substantial similarity may be determined by a court on a motion to dismiss based on the court's own side-by-side comparison of the works at issue); *see also Seven Oaks Millwork, Inc. v. Royal Foam US, LLC*, 483 F. Supp. 3d 1192, 1197 n.3 (M.D. Fla. 2020) (finding plaintiff's sixteen images were not protectable expressions under copyright and dismissing plaintiff's copyright infringement claims with prejudice); *Kmet v. Discovery Communications, LLC*, No. 4:16-cv-565, 2017 WL 11672822, at *1-4 (N.D. Fla. Nov. 30, 2017) (finding that defendant's TV show was not substantially similar to plaintiffs' works as a matter of law and dismissing the copyright infringement claim with prejudice).

## IV. Publication of Furlong's First Name Was Not For a Commercial Purpose Under F.S. §540.08

As a threshold matter, only natural persons have a right of action under §540.08, meaning that Tenzing, an LLC, has no claim at all. *See* Fla. Stat. §540.08(1). But even as to Furlong, the Right of Publicity Claim (Claim 4) fails because Way did not use his name for a commercial purpose. §540.08 "applies only to actions in which a person's name or likeness is used for commercial trade or advertising purposes." *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 805 (Fla. 2005). "[M]erely using an individual's name or likeness in a publication is not actionable under §540.08." *Id.* (quoting *Tyne v. Time Warner Entertainment Co., L.P.*, 204 F. Supp. 2d 1338, 1341 (M.D. Fla. 2002)). In *Tyne*, the Supreme Court of Florida affirmed that the "commercial purpose" requirement of §540.08 is properly read as "prevent[ing] the unauthorized use of a name *to directly promote the product or service of the publisher*." *Id.* at 806 (quoting *Loft v. Fuller*, 408 So. 2d 619, 622-23 (Fla. 4th DCA 1981) (emphasis in original)). The test is not whether a name or likeness is "included in a publication[], but rather [whether] it associates the individual's name or his personality with something else." *Id*.

The facts of *Tyne* are instructive. The *Tyne* Court considered the use of a person's name or likeness in a motion picture, *The Perfect Storm*. *Id.* at 803-804. The motion picture depicted the lives and deaths of Billy Tyne and Dale Murphy, Sr., among other natural persons, but the publisher of *The Perfect Storm*, Warner

23

Bros., did not seek "permission from the individuals depicted in the picture." *Id.* While the *Tyne* Court agreed that "at least one of the purposes of the author and publisher in releasing the publication in question was to make money…and that such a publication is commercial in that sense," the court found that "this [publication]…simply does not amount to the kind of commercial exploitation prohibited by the statute." *Id.* at 806. The court reasoned that "the term 'commercial,' as employed by Section 540.08, was [not] meant to be construed to bar the use of people's names in such a sweeping fashion," further noting that accepting such a broad construction of §540.08 "would result in substantial confrontation between this statute and the first amendment to the United States Constitution guaranteeing freedom of the press and speech." *Id.*

Way's use of Furlong's first name falls far short of the commercial exploitation the statute prohibits. Way referred to Furlong only by his common first name, "Jerry." No photograph, portrait, or other likeness appeared anywhere on the Portfolio page. *Compare* Fla. Stat. §540.08(1) *with* Am.Compl. Ex. G. As in *Tyne*, Way referenced Furlong because his involvement in the project was simply a historical fact: Jerry Furlong was in fact involved in one of Way's design and branding projects.

Critically, Way referred to "Jerry" for purposes of attribution only. He did not invoke Furlong's name to leverage Furlong's personality or reputation in order to

24

drum up business. Using Furlong's name for a commercial purpose would require, at the very least, publishing Furlong's name in a way suggesting an *endorsement* by Furlong, such as through a testimonial or in an advertisement. Courts have consistently held that publishing a name for purposes of identification or attribution does not constitute commercial use in violation of §540.08. *See Faulkner Press, LLC, v. Class Notes, LLC*, 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010) (finding that the words "Professor Moulton" on the cover of note packages were used to identify the course and not to promote or endorse the notes in violation of §540.08); *see also Fuentes v. Mega Media Holdings, Inc.*, 721 F. Supp. 2d 1255, 1259-60 (S.D. Fla. 2010) (granting defendants' motion to dismiss §540.08 claim based on defendants' display of plaintiff's name during a TV broadcast without plaintiff's consent). Plaintiffs' theory, taken to its logical conclusion, would mean that no person could write about their previous work on personal blogs, portfolio websites, or even LinkedIn without running afoul of §540.08. Such a construction would be an impermissible restraint on constitutionally-protected speech and beyond the purview of §540.08. The Right of Publicity Claim should be dismissed.

## V. Plaintiffs Are Not Entitled to Statutory Damages or Attorney's Fees

Plaintiffs demand statutory damages and attorney's fees in the Amended Complaint. Am.Compl. ¶¶C, F. They are entitled to neither. To the extent the Court declines to address the unavailability of these remedies on a Rule 12(b)(6) motion,

25

Way moves in the alternative to strike these requests for relief pursuant to Federal Rule of Civil Procedure 12(f).

First, statutory damages are categorically unavailable here under 17 U.S.C. §412. Section 412 bars an award of statutory damages or attorney's fees for copyright infringement of a published work that commenced before registration, unless registration was made within three months of the work's first publication. 17 U.S.C. §412(2). Here, the Tenzing Branding Guide was first published in 2023, when Tenzing's rebranded website went live. Am.Compl. ¶36. Plaintiffs did not apply for registration until October 13, 2025, more than two years after first publication, and registration did not issue until January 16, 2026. Am.Compl. Ex. C, 2-4. Because registration was not made within three months of first publication, the three-month safe harbor is unavailable. Plaintiffs themselves allege that the infringement commenced "at least as early as September 30, 2024," Am.Compl. ¶55, well before the registration issued. Accordingly, §412(2) bars any award of statutory damages or attorney's fees as a matter of law, and those requests for relief should be stricken.

Second, Plaintiffs' request for attorney's fees cites a statute that has no bearing on this case, 17 U.S.C. §512(f). Section 512(f) of the 1998 Digital Millennium Copyright Act ("DMCA") imposes liability on parties who knowingly misrepresent in a takedown notice that material is infringing, causing an online service provider

26

to wrongfully remove content in reliance on that misrepresentation. *See* 17 U.S.C. § 512(f). Plaintiffs do not allege that Way sent any takedown notice, let alone a fraudulent one. The statute is flatly inapplicable. Plaintiffs' request that the Court declare "this case as exceptional[] and award[] Plaintiffs its reasonable attorneys' fees under 17 U.S.C. § 512(f)" should therefore be stricken.

## CONCLUSION

For the foregoing reasons, Way respectfully requests that this Court grant his Rule 12(b)(6) motion, dismiss the Amended Complaint in its entirety with prejudice, award Way his reasonable attorneys' fees and costs, and award any further relief that this Court deems just and proper.

## **<u>CERTIFICATE OF WORD COUNT</u>**

Pursuant to Local Rule 7.1(F), the undersigned counsel certifies that according to the word-processing system used to prepare this motion, the total word count for all printed text is 6,361 words, excluding the case style, signature block, and certificates.

Dated: April 27, 2026

Respectfully submitted,

**STUDIO LEGAL LLP**

By:    */s/ Cecillia X. Xie*

Cecillia X. Xie (*admitted pro hac vice*)
New York Bar No. 5497573
447 Broadway 2nd FL #388
New York, NY 10013
(347) 620-6423
cece@studiolegal.xyz

*Attorney for Defendant Duncan Way*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 27, 2026, the foregoing document was

electronically filed and served via the CM/ECF system to all counsel of record.

*/s/ Cecillia X. Xie*
CECILLIA X. XIE

29