**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

|  |  |
|---|---|
| TENZING FINANCIAL ADVISORS, PLLC and JERRY L. FURLONG JUNIOR, <br><br> *Plaintiffs*, <br><br> v. <br><br> PHOS CREATIVE, LLC and DUNCAN WAY, <br><br> *Defendants*. | )<br>)<br>)  Civil No.: 1:26-cv-00006-MW-MJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF
DEFENDANT DUNCAN WAY'S MOTION TO DISMISS THE AMENDED
COMPLAINT</u>**

1

# TABLE OF CONTENTS

*INTRODUCTION* ................................................................................................6

*FACTUAL BACKGROUND* ...............................................................................8

   A. The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940 ..........8

   B. Way's Infringement .................................................................................10

   C. Commencement of this Action .................................................................11

*LEGAL STANDARD* ........................................................................................*13*

   I.     Dismissal of the Breach-of-Contract Claim Against Way Is Premature Because Defendant's Personal Liability Turns on Employment Issues That Cannot Be Resolved on the Pleadings.................................................................14

      A. The Operative Amended Complaint Satisfies § 411(a)...........................17

      B. The Plaintiffs Own a Valid Copyright, and Way Directly Infringes Plaintiffs' Copyright.................................................................................20

      C. Defendant Mischaracterizes Plaintiffs' Copyright Claims by Dissecting the Registered Work into Isolated Elements. ......................................................24

   III. Plaintiffs Plausibly Allege Commercial Use Under Fla. Stat. § 540.08. ......30

   IV. Leave to Amend Should be Granted. .........................................................33

*CONCLUSION* ................................................................................................*33*

# TABLE OF AUTHORITIES

**Cases**

*ADA v. Cigna Corp.,* 605 F.3d 1283 (11th Cir. 2010) ...........................................13

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996) ...............................23

*Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir. 1994) .........................28

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007). .......................12

*CompuLife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020). ................23

*Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210 (11th Cir. 2006) .....17

*Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197 (2007)......................................12

*Faulkner Press, LLC, v. Class Notes, LLC*, 756 F. Supp. 2d 1352 (N.D. Fla. 2010). ...................................................................................................................31

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)................19, 22, 24

*Foman v. Davis*, 371 U.S. 178 (1962)...................................................................32

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 139 S. Ct. 881 (2019) ......................................................................................................17, 18

*Fuentes v. Mega Media Holdings,* 721 F.Supp. 2d 1255 (S.D. Fla. 2010) .............31

*Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539 (1985) ...........................28

*Hawthorne v. Mac Adjustment,* 140 F.3d 1367 (11th Cir. 1998) ...........................12

*Herzog v. Castle Rock Entm't*, 193 F.3d 1241 (11th Cir. 1999) ...........................27

*Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314 (11th Cir. 2016)................................................................................................................19

*Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404 (11th Cir. 2015)....22

*Iglesia Cristiana La Casa Del Señor v. L.M.*, 783 So. 2d 353 (Fla. Dist. Ct.App. 2001)................................................................................................................14

*John Daly Enters., LLC v. Hippo Golf Co.*, 646 F. Supp. 2d 1347 (S.D. Fla. 2009) ........................................................................................................................31

*Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010) ......................................13

*Leigh v. Warner Bros.*, 212 F.3d 1210 (11th Cir. 2000) ........................................27

*Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007) ..................................17

*Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218 (11th Cir. 2008)......19

*Peter Letterese & Assoc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287 (11th Cir. 2008)..................................................................................................27

*Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241 (11th Cir. 2007)..............17

*Playboy Enters. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) ............................22

*Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199 (S.D. Fla. 2013)..........32

*Reed Elsevier, Inc. v. Muchnick* ............................................................................17

*Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371 (11th Cir. 2010) ........................................................................................................................12

*Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802 (Fla. 2005)......................29

4

**Statutes**

17 U.S.C § 410(c)............................................................................................16

17 U.S.C. § 101 ..............................................................................................24

17 U.S.C. § 106(1)..........................................................................................19

17 U.S.C. § 106(5)..........................................................................................19

Fla. Stat. § 540.08................................................................................26, 27, 29, 30

**Other Authorities**

*Compendium of U.S. Copyright Office Practices* § 313 (3d ed. 2021)...................22

**Rules**

Fed. R. Civ. P. 15 ..........................................................................................31

Local Rule 7.1(c)............................................................................................31

Local Rule 7.1(F) ...........................................................................................33

**<u>INTRODUCTION</u>**

Jerry L. Furlong Junior ("Furlong") is a small business owner who, at the very beginning of this story, set out to rebrand his financial advisory firm. The firm, previously named Furlong Financial Group, PLLC ("FFG"), engaged PHOS Creative ("PHOS") in January 2023 for the rebrand. The goal was to develop a unique brand identity for what would later become Tenzing Financial Advisors, PLLC ("Tenzing"), as outlined in the written agreement between FFG and PHOS (the "Agreement"). Am. Compl. ¶¶ 22–29, Ex. A.

PHOS assigned one of its employees, Duncan Way ("Way" or "Defendant"), to be the creative lead on the project. Furlong and Way met on several occasions, with Furlong sharing details about his journey, his business, and his vision with Way. Drawing on those discussions, and pursuant to the Agreement, Way and PHOS (collectively, the "Defendants") pitched the Tenzing brand, including the Tenzing Branding Guide.

Under the Agreement, the brand assets PHOS created for and pitched to Furlong and his business were owned by the Plaintiffs.[1] As a work made for hire, use of any of Plaintiff's assets by the Defendants should have ended after the Defendants delivered the Tenzing Branding Guide to Plaintiffs. Instead, Way

---

[1] The assets originally contracted for and owned by FFG were subsequently assigned to Tenzing through an intellectual property assignment agreement.

willfully reproduced substantial portions of the Tenzing Branding Guide on his personal website without authorization, including descriptions of the creative process behind the work, to promote his own branding and design services. This kind of unauthorized use was not contemplated by nor contracted for in the Agreement.

Defendant's Motion to Dismiss is a fictional story about what happened between Furlong, Way, PHOS, and Tenzing (the "Parties"). Defendant has taken a straightforward dispute about the unauthorized reproduction of the Tenzing Branding Guide and designed a fabricated narrative.

In the Motion to Dismiss ("MTD" or "Motion"), Defendant presents a timing issue--that has already been cured--as a fatal defect and discards well-settled copyright law in an avant-garde attempt to encourage the Court to isolate elements of the Tenzing Branding Guide and ignore the work as a whole. Defendant asks the Court to resolve, on the pleadings, fact-intensive issues of filtration, substantial similarity, and *de minimis* use, even though binding Eleventh Circuit authority forbids such dismissal.

Accordingly, the Motion should be denied in its entirety. Accepting all well-pleaded factual allegations as true, there are no grounds upon which to dismiss the Amended Complaint. Regardless, if the Court identifies any pleading deficiency, Plaintiffs respectfully request leave to amend, a remedy to which Defendant PHOS

has already consented. Therefore, dismissal is inappropriate and not supported by either the legal or factual realities of this case.

## FACTUAL BACKGROUND

**A. The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940**

Pursuant to the Agreement, PHOS delivered three categories of work product: (i) Name Identification and Selection; (ii) a Brand Plan; and (iii) Logo Design and a Brand Package. Am. Compl. ¶ 29, Ex. A. The Agreement provided that all deliverables, technical information, and intellectual property developed in connection with the project, including derivatives, are assigned to FFG. FFG ultimately assigned the same to Tenzing. Am. Compl. ¶¶ 89, 92–94. The Agreement contains no language granting PHOS a license to use, promote, or publish any of the intellectual property created pursuant to the Agreement. Thus, PHOS retained no rights in the intellectual property assigned to Plaintiffs.

Defendant Way was the lead PHOS employee responsible for the Tenzing rebrand. Am. Compl. ¶¶ 26–28. Way personally presented logos and brand-design concepts directly to Furlong, routinely met with Furlong, was privy to Furlong's confidential business information, and was responsible for the creative design ultimately assigned to Plaintiffs. *Id*. As an employee of PHOS, Way had complete

access to the registered Tenzing Branding Guide[2] and the related Tenzing Materials. Am. Compl. ¶ 57.

PHOS delivered the brand identity in the spring of 2023, and Plaintiffs launched the Tenzing brand later that year. Am. Compl. ¶¶ 34–36. Sometime thereafter, Way, without Plaintiffs' consent and in violation of the Agreement, published portions of the Tenzing Branding Guide on his personal website (the "Portfolio"). Am. Compl. ¶¶ 45–58, Ex. G. Way's website prominently featured the Tenzing project, including the final Tenzing logo, three alternate logo designs, three mood boards, the design language used to create the logo, and six reproduced pages from the Tenzing Branding Guide. Way's website also included narrative commentary describing the brand-development process, the rationale behind the Tenzing name, and the design process, including the color and typographic choices, as well as confidential conversations between Way and Furlong about the reasons for Furlong's rebrand. Am. Compl. ¶¶ 45–48, Ex. G.

On October 13, 2025, Plaintiffs filed a copyright application for the Tenzing Branding Guide. It bears noting that, from October 1, 2025, through November 12, 2025, the Copyright Office was closed and was not reviewing new or current

---

[2] Plaintiffs' forthcoming Second Amended Complaint limits the definition of the Tenzing Branding Guide to the copyright registration.

applications.[3] Notwithstanding the federal government shutdown, Plaintiffs paid for special handling and expedited registration in anticipation of this litigation.

**B. Way's Infringement**

On or around September 2025, Furlong was conducting an SEO search for his new business, Tenzing Financial, and discovered the Tenzing Branding Guide, and his name and story, published on Way's website. Upon reviewing Way's website, including his resume and LinkedIn, Plaintiffs discovered that Way held himself out as a full-time employee at PHOS. Am. Compl. Ex. J.

On October 23, 2025, Plaintiffs sent PHOS a cease-and-desist letter demanding that PHOS and any employees, including Way, immediately remove all Tenzing-related materials from Way's website. Am. Compl. Ex. I. During this time, Way held himself out as an employee of PHOS, both on his LinkedIn and personal resume listed on his website. Am. Compl Ex. I. PHOS, exercising control over Way, responded by email to Plaintiffs that they had instructed Way to remove the

---

[3]The Court may take judicial notice of the Copyright Office's closure during the federal government shutdown from October 1, 2025 through November 12, 2025. The Copyright Office has publicly confirmed that, "[d]uring a lapse of appropriations from October 1 through November 12, 2025, the Office continued to receive registration applications, but staff were unable to process claims during this time." U.S. Copyright Office, Registration Processing Times, https://www.copyright.gov/registration/docs/processing-times-faqs.pdf. Courts routinely take judicial notice of information published on official government websites. See e.g. *U.S. ex rel. Osheroff v. Humana, Inc*., 776 F.3d 805, 811 n.4 (11th Cir. 2015).

infringing use of Tenzing's Branding Guide from his personal website. PHOS did not indicate to Plaintiff's the nature of Way's employment at that time.

Around the same time Plaintiffs discovered Way's infringement, Plaintiffs identified another financial-services firm, Tenzing Financial, LLC ("Tenzing VA"), operating under an identical company name, a nearly identical logo, and substantially similar colors, font, and design language. Accordingly, Plaintiffs have had to expend substantial resources to protect their intellectual property in a separate enforcement action. Am. Compl. ¶¶ 71–75.

## C. Commencement of this Action

Plaintiffs filed the original Complaint on January 7, 2026, while their copyright application was pending and during a federal government shutdown that delayed Copyright Office processing. Nonetheless, Plaintiffs paid for expedited processing in anticipation of this litigation. The Copyright Office issued Registration No. TX 9-553-940 for the Tenzing Branding Guide on January 16, 2026, claiming both "text" and "artwork." Am. Compl. Ex. C. Plaintiffs thereafter filed the operative First Amended Complaint ("FAC") on March 12, 2026, after the registration had issued, asserting four claims: (Count I) breach of contract; (Count II and III) copyright infringement; and (Count IV) unauthorized publication of name or likeness.

Following service of the FAC, the parties engaged in settlement discussions. Plaintiffs repeatedly attempted to confer with Defendants regarding case management and a Rule 26(f) conference, initiating outreach on March 27, April 2, and April 6, 2026, but Defendants declined to meet.

On April 23, 2026, the parties held a joint meet-and-confer pursuant to N.D. Fla. Loc. R. 7.1(C) to discuss Defendants alleged pleading deficiencies and the contemplated Motion to Dismiss. The very next day, on April 24, 2026, Plaintiffs emailed both Defendants identifying the specific amendments Plaintiffs intended to make in a proposed Second Amended Complaint.

Defendants were therefore on actual notice, before the MTD was filed, that Plaintiffs intended to amend in a manner that would address several of the issues now raised in the Motion. Additionally, Plaintiffs confirmed in writing that they would not oppose an extension of Defendants' response deadline provided that Defendants consented to Plaintiffs filing a Second Amended Complaint. Defendant PHOS consented.

Notwithstanding these communications, Defendant Way filed the present MTD. Plaintiffs intend to file a Motion for Leave to file a Second Amended Complaint.

Way participated directly in the development of the Tenzing brand and, sometime after Plaintiffs launched the Tenzing rebrand, publicly displayed portions

12

of the Tenzing Materials on his own website to promote his design services. Am. Compl. ¶¶ 26–28, 45–48. Indeed, Defendant's MTD acknowledges that Way "included the project on his portfolio website…sometime after Tenzing's rebrand went live" and that the website functioned as a "professional website showcasing [his] design process across multiple client engagements." Def.'s Mot. To Dismiss at 1, 4. The Complaint with the attached Agreement evidences the Tenzing Branding Guide posted was no longer owned by Way, nor licensed at the time he used and displayed it for potential monetary gain. Am. Compl Ex. A.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007). The court generally is limited in its review to the "four corners of the complaint," *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) and must accept all well-pleaded factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). The court does not make factual determinations in evaluating a motion to dismiss. *See Hawthorne v. Mac Adjustment*, 140 F.3d 1367, 1370 (11th Cir. 1998). If the complaint's allegations are plausible under the alleged facts, then the court must view them in the light most favorable to the plaintiff. *ADA v. Cigna*

13

*Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). In reviewing a motion to dismiss, the court must draw all reasonable inferences in the plaintiff's favor. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

## ARGUMENTS

**I. Dismissal of the Breach-of-Contract Claim Against Way Is Premature Because Defendant's Personal Liability Turns on Employment Issues That Cannot Be Resolved on the Pleadings.**

Defendant Way argues that he cannot be personally liable for a breach of contract because he was a PHOS employee and not a signatory to the Agreement between PHOS and FFG. Def.'s Mot. To Dismiss at 10–13. That argument oversimplifies the question and asks the Court to resolve, at the pleading stage, contested factual issues that cannot be decided without discovery. Defendant's status as a PHOS employee at the time of contracting does not, on its own, immunize him from personal liability for his own subsequent unauthorized conduct, particularly where PHOS is likely to disclaim responsibility for Way's conduct as outside the scope of employment.

Plaintiffs allege and the Agreement evidences the deliverables developed under the Agreement, including all materials prepared in the creation of the brand, were assigned to Plaintiffs, including all derivative works. Am. Compl. ¶¶ 89, 92–94. Way thereafter, without authorization, reproduced and publicly displayed

14

substantial portions of those materials on his personal website to promote his own design services. Am. Compl. ¶¶ 45–58, Ex. G.

Whether Defendant's conduct was done within the scope of his employment at PHOS, on his own behalf, or as some combination of the two is a factual question. Whether Way had an employment agreement listing out his obligations to abide by the Agreement or other rules is a factual question to be determined through discovery. Despite Plaintiffs' repeated requests, neither Defendant Way nor PHOS have provided the dates of Way's employment with, or departure from, PHOS, another fact to be determined through discovery.

PHOS has not yet answered the operative pleading, and based on the Parties joint Local Rule 7.1(C) conference, PHOS indicated that it will disclaim responsibility on the ground that Defendant's publication of the Work on his personal website was outside the scope of his employment.

Florida law recognizes that an employer is responsible under respondeat superior only for acts taken within the course and scope of employment, and that determination is generally a fact question. *See Iglesia Cristiana La Casa Del Señor v. L.M.*, 783 So. 2d 353, 356 (Fla. Dist. Ct. App. 2001) (scope-of-employment determination is ordinarily a question of fact). Where an employee acts outside the scope of employment, for example, by appropriating client assets to promote his own personal business interests, the employee may be personally liable, even if the

15

underlying contract was executed by the employer. Thus, dismissing Way before PHOS has answered or any discovery has taken place, would risk leaving Plaintiffs without a remedy if PHOS later establishes that Defendant's conduct fell outside the scope of his employment.

This is precisely the situation Fed. R. Civ. P. 8 was designed to prevent. The Federal Rules expressly permit Plaintiffs to plead in the alternative. Specifically, Fed. R. Civ. P. 8(d)(2) provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(3) further authorizes a party to "state as many separate claims or defenses as it has, regardless of consistency." Plaintiffs' breach of contract claim against the Defendants is properly pleaded. If PHOS is responsible for Defendant's unauthorized conduct, liability flows to PHOS. Alternatively, if PHOS is not liable, then Way remains personally liable for his conduct in misappropriating and reproducing copyrighted assets owned by Plaintiffs. The Court should not foreclose either theory before these factual issues have been developed.

To be clear, Plaintiffs have proposed certain refinements to the breach of contract claim in their forthcoming motion for leave to file a Second Amended Complaint, including additional factual allegations supporting vicarious liability. Accordingly, dismissing Defendant Way at this stage is premature, as doing so

16

would substantially prejudice Plaintiffs by dismissing a plausible theory of liability before the parties have litigated, or even joined issue on, the threshold scope-of-employment question.

Finally, Defendant's reliance on the information from the Virgina State Corporations Commission regarding Tenzing Financial, LLC ("Tenzing VA") in an effort to evade liability in this matter is flawed. Plaintiff's related Virginia Complaint sufficiently pleads that Tenzing VA did not begin using their name, logo, or design in commerce until 2025, a fact expressly admitted by Tenzing VA.[4] Although not attached as an exhibit in this matter, Defendant Way is well aware of this fact, as Plaintiffs provided both Defendants in this matter a copy of that Complaint.

## II. Plaintiffs Have a Valid Copyright Registration for the Tenzing Branding Guide, and the Operative Amended Complaint Satisfies § 411(a).

### A. The Operative Amended Complaint Satisfies § 411(a).

The operative pleading, the FAC, was filed on March 12, 2026, after the Copyright Office issued Reg. No. TX 9-553-940 for the Tenzing Branding Guide. Am. Compl. Ex. C. Courts evaluate the sufficiency of the operative complaint, not a superseded pleading. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th

---

[4] The related Virginia case is *Tenzing Financial Advisors, PLLC v. Tenzing Financial, LLC*, 4:26-cv-00044-JKW-RJK filed in the Eastern District of Virginia, Newport News Division. Exhibit F of the Complaint [Dkt. 1] includes correspondence from counsel confirmed that "My client…began operating under the Tenzing Financial in summer of 2025."

Cir. 2007) ("[A]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment and is no longer a part of the pleader's averments against his adversary." (quoting *Dresdner Bank AG v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006))); *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007) ("Under . . . federal law, an amended complaint supersedes the initial complaint and becomes the operative pleading in the case."). Section 411(a) requires that "registration . . . has been made" before a copyright claim is pursued. *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 300, 139 S. Ct. 881, 887 (2019). That requirement is satisfied here, as Plaintiffs possessed a valid registration at the time they filed the operative Amended Complaint.

[5] Defendant identifies no prejudice resulting from Plaintiffs' amendment. Most importantly, § 411(a) is a non-jurisdictional precondition to suit, not a limit on the Court's authority. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157, 166 (2010).

---

[5] Defendant's MTD at page 14 relies on *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, stating that "some courts in this circuit have held that a timely and non-prejudicial amended complaint may cure a pre-registration filing defect." *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, No. 8:06-cv-223, 2007 WL 9734142, at *9–10 (M.D. Fla. May 17, 2007). Although Plaintiff located the underlying case, Plaintiff was unable to locate the referenced Westlaw citation or language in the opinion supporting Defendant's characterization of the case after a diligent review.

Dismissal here would serve no practical purpose because any technical issue regarding timing and registration has already been cured. Plaintiffs filed their Initial Complaint to preserve their rights while their copyright application was still pending following the Federal Government Shutdown and uncertainty as to when the Copyright Office would resume normal operations. The Copyright Office issued the registration of the work shortly after the Initial Complaint was filed, and Plaintiffs promptly filed the FAC to cure any alleged defect.

Moreover, Defendant's reliance on *Fourth Estate* is misplaced. *Fourth Estate* addressed whether a plaintiff may initiate suit based *solely* on a pending application; it did not address whether an amended complaint filed after copyright registration satisfies § 411(a). *See Fourth Estate*, 586 U.S. at 308. In fact, Defendant conveniently omitted the most important sentence from *Fourth Estate*, that "[u]pon registration of the copyright…*a copyright owner can recover for infringement that occurred both before and after registration*." *Id*. at 886–87 (emphasis added).

Ultimately, requiring dismissal, only to permit refiling of the same claims based on the same now-registered work, would needlessly increase the costs and burden *both* the Parties and the Court with duplicative proceedings. Defendant's MTD is devoid of any facts that show Defendant has been, is, or will be prejudiced by this filing.

19

**B. The Plaintiffs Own a Valid Copyright, and Way Directly Infringes Plaintiffs' Copyright.**

Taking Plaintiffs' allegations as true, as the Court must, the FAC plausibly states a claim for direct copyright infringement against Way. To state such a claim, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008).

First, in any judicial proceeding, the certificate of registration made before or within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C § 410(c). No party disputes that Plaintiffs possess a valid copyright registration for the Tenzing Branding Guide, Reg. No. TX 9-553-940.

The second element may be shown either through direct proof of copying or, if direct proof is unavailable, by showing that the defendant had access to the copyrighted work and that the works are substantially similar. *Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016).

This is a case of direct copying, and the FAC makes that clear. Am. Compl. Ex. G. Consider the following:

| **Plaintiffs' Copyright Reg. TX 9-553-940** | **Material Published on Way's Website** |
| --- | --- |

20





Way reproduced pages of the Tenzing Branding Guide on his own personal website in direct violation of Plaintiffs' exclusive rights, including the right to reproduce and display those works. 17 U.S.C. § 106(1), (5); *see also Playboy Enters. v. Frena*, 839 F. Supp. 1552, 1556-7, 1559 (M.D. Fla. 1993) (unauthorized uploading and display of copyrighted photographs infringed the copyright owner's rights). Accordingly, Plaintiffs plausibly allege direct copyright infringement, and dismissal is inappropriate.

Defendant invokes the Eleventh Circuit's abstraction-filtration-comparison framework and asks this Court to filter out, as a matter of law, the "vast majority" of the Tenzing Materials at the pleading stage. Def.'s Mot. To Dismiss at 15–20. Defendant's framing materially overstates copyright law.

It is well settled in the Eleventh Circuit that "[w]hether a work is sufficiently original to merit copyright protection is a question of fact." *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015). Originality is a "low bar," requiring only "independent creation" and "a modicum of creativity." *Id*. And, as the Supreme Court has explained, "the requisite level of creativity is extremely low; even a slight amount will suffice." *Id*. It is plainly incorrect to resolve the "originality" of the Tenzing Branding Guide and related brand materials in Defendant's favor at the motion-to-dismiss stage.

23

The same principle applies to filtration. Although Defendant cites *CompuLife Software Inc. v. Newman* for the proposition that filtration may be a question of law, it does not support dismissal at the pleading stage. In *CompuLife*, the Eleventh Circuit reviewed a judgment entered after a bench trial, not a Fed. R. Civ. P. 12(b)(6) dismissal, and remanded because the court had failed to make necessary findings regarding factual copying, filtration, protectability, and substantial similarity. *CompuLife Software Inc. v. Newman*, 959 F.3d 1288, 1309 & n.12 (11th Cir. 2020).

The determination of what aspects of a creative work constitute protectable expression, the scope of any resulting protection, and whether allegedly copied material is substantially similar to protected expression are fact-intensive, or at minimum mixed law-and-fact, inquiries not suitable for resolution on a motion to dismiss. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543–46 (11th Cir. 1996); *see also CompuLife*, 959 F.3d at 1303–04 & n.7.

### C. Defendant Mischaracterizes Plaintiffs' Copyright Claims by Dissecting the Registered Work into Isolated Elements.

As stated above, the Defendant argues that the "vast majority of the Tenzing Materials are uncopyrightable as a matter of law" because they allegedly consist of "colors, typography, ideas, short phrases, concepts, and branding attributes." Def.'s Mot. To Dismiss at 17–19. Plaintiffs' claim is based on Way's unauthorized reproduction and public display of protected expression from the registered Tenzing

24

Branding Guide and related brand materials incorporated into or reflected in the Registered Work. Am. Compl. ¶¶ 45, 48, 55–58.

As explained throughout, Way's infringement is not merely substantial similarity; it is the unauthorized, exact reproduction of the Tenzing Branding Guide. Plaintiffs' claim is much simpler than Defendant contents. Each of these images are contained within the deposit submitted to the Copyright Office and falls within the scope of Registration No. TX 9-553-940. *See* Am. Compl. Ex. C. Defendant attempts to zoom out from the Registration as far as possible improperly isolating individual elements from the Registration rather than evaluating the Registration as a whole.

It is fundamental copyright law that even where certain elements may not qualify for protection standing alone, copyright protection extends to the original selection, coordination, and arrangement of those elements within a larger creative work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-59 (1991). Likewise, the Copyright Office recognizes that a work containing uncopyrightable material may nevertheless qualify for copyright protection where "the work as a whole contains other material that qualifies as an original work of authorship," including through the "selection, coordination, and/or arrangement" of otherwise uncopyrightable elements. U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313 (3d ed. 2021).

25

Accordingly, Defendant's copyrightability and filtration arguments do not provide a basis for dismissal at the pleading stage.

**D. Defendant Improperly Narrows the Scope of the Registered Work.**

Defendant further argues that Plaintiffs' copyright claims fail because the FAC references additional "Tenzing Materials" beyond the registered Tenzing Branding Guide, including "mood boards, logo iterations, color schemes, typography, brand voice/attributes, and naming development work." Def.'s Mot. To Dismiss at 13. According to Defendant, the claims therefore "fail as to all Tenzing Materials beyond the Tenzing Branding Guide." *Id*. at 14.

Plaintiffs' claims are based on Defendant's copying of protected expression embodied in Reg. No. TX 9-553-940, including the registered Tenzing Branding Guide and materials developed as part of the same creative project that are a derivative of the Tenzing Branding Guide. The Agreement between PHOS and Plaintiffs clearly states:

> PHOS agrees to transfer and assign, and hereby transfers and assigns, to the Client and its designees, without further compensation, the entire right, title and interest throughout the world in and to:
>
> (a) all Technical Information first produced by PHOS in the performance of this Agreement;
>
> (b) all Intellectual Property resulting from PHOS' activities under this Agreement;
> (c) all Intellectual Property relating to any Deliverables under this Agreement; and

26

(d) creations and inventions that are otherwise made through the use of the Client's or its affiliates' equipment, supplies, facilities, materials and/or Proprietary Information.

All such Technical Information and Intellectual Property that are protectable by copyright will be considered work(s) made by PHOS for hire for the Client (as "works made for hire" is defined in the United States Copyright Act, 17 U.S.C. § 101) and will belong exclusively to the Client.

Am. Compl. Ex. A.

Way himself admits that he "created several logo types to cover a range of uses and contexts and packaged them with an extensive brand guideline. You can see the mood boards, logo concepts, final logos, and some of the brand guidelines below" on his website. Am. Compl. Ex. G.

Whether the additional commentary and background information behind the design project fall within the scope of the registered work, are a derivative of the work or otherwise contain protected expression of Mr. Furlong are factual issues that cannot be resolved with a motion to dismiss.

**E. Defendant's *De Minimis* Argument Cannot Be Resolved on the Pleadings.**

Defendant Way further argues that, even assuming the Tenzing Materials contain protectable expression, his publication of them on his website was *de minimis* as a matter of law and therefore cannot support a finding of substantial similarity. Def.'s Mot. To Dismiss at 20–23. That argument is misplaced both procedurally and substantively.

27

Substantial similarity, and the related *de minimis* inquiry, are generally questions of fact for the trier of fact. *Leigh v. Warner Bros.*, 212 F.3d 1210, 1215 (11th Cir. 2000). Accordingly, even if that standard permits resolution of substantial similarity at summary judgment, dismissal at the pleading stage is nonetheless inappropriate here, where Plaintiffs allege literal reproduction of registered materials. *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999).

The *de minimis* doctrine requires the Court to assess copying "with respect to both the quantitative and qualitative significance of the amount copied to the copyrighted work as a whole." *Peter Letterese & Assoc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1307 (11th Cir. 2008). The Amended Complaint, on its face, plausibly alleges both quantitatively and qualitatively significant copying, including the literal reproduction of multiple pages of the Registered Tenzing Branding Guide, and therefore adequately states a claim for copyright infringement at the pleading stage. See Am. Compl. ¶¶ 45, 48, Ex. G.

Quantitatively, Defendant concedes that he displayed the final Tenzing logo, three alternate logos, three mood boards, and most importantly, reproduced six pages from the Tenzing Branding Guide. Def.'s Mot. To Dismiss at 20. Defendant reproduced exact components of the Tenzing Branding Guide that communicate the "heart" of the Tenzing brand identity, the core brand-guideline pages related to the construction of the logo. *Harper & Row, Publrs. v. Nation Enters.*, 471 U.S. 539,

564–66 (1985) (finding copying qualitatively significant where the copied portion, though quantitatively small, captured "the heart of the book").

Boldly, Defendant attempts to persuade the Court that because the copied materials were "low-resolution" and used merely for "visual impact and layout," they are qualitatively insignificant, and copyright infringement is not concerned with intent. See *Disney Enterprises, Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) ("copyright is a strict liability statute"); *Playboy Enterprises, Inc.*, 839 F. Supp. At 1559 ("Intent to infringe is not needed to find copyright infringement. Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement"). It is simply illogical to imagine that a party may circumvent copyright infringement because the image appears in a different resolution. In any event, whether the "resolution" and "visual impact" rendered the use insignificant cannot be decided without the type of side-by-side comparison the case law contemplates, but only after a development of the record. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459-60 (11th Cir. 1994).

Drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, the FAC plausibly alleges more than *de minimis* copying.

**III. Plaintiffs Plausibly Allege Commercial Use Under Fla. Stat. § 540.08.**

Defendant's argument fails because it ignores the allegations of the FAC. Under § 540.08, the relevant inquiry is whether the Defendant used Furlong's name or identity to "directly promote the product or service of the publisher." *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 806 (Fla. 2005). In other words, the question is whether Way used Furlong's name to promote his design services. That answer is yes.

Notably, Defendant himself refers to his website as a professional portfolio more than 10 times in the MTD. Defendant repeatably states that Way "was proud of the work he had completed for FFG while at PHOS"; "he added the project to his portfolio website (the "Portfolio")"; and "The Portfolio was a professional website showcasing Way's design process across multiple client engagements." Def.'s Mot. To Dismiss at 1, 4.

Way's Tenzing "Portfolio" opened with "Jerry, the owner of Tenzing Financial Advisors, originally did not have a name or brand - he simply had a mission to help his clients overcome the perceived hurdles of planning their financial future. After meeting with Jerry and getting a full understanding of who he was and what he wanted his brand to achieve, I brought the name Tenzing to Jerry… inspired by Jerry describing how he tries to carry the load for his clients." Am. Compl. Ex. H.

Following this logic, the FAC plausibly alleges that Defendant used Furlong's name and business story on his personal website "portfolio" to advertise his design capabilities, attract prospective clients, and generate business, whether for himself personally or as an extension of PHOS.

Defendant's attempt to characterize the use as mere "attribution" fails, especially at the pleading stage. The website, by its own existence, functions as a marketing vehicle for Way's design business, featuring multiple projects intended to showcase his capabilities to prospective clients. Within Way's website, he describes Furlong's business goals, which were confidentially shared with him, the Tenzing brand strategy, and his own creative contributions in detail. Way repeatedly boasts about his own professional contributions, including: "*I* brought the Tenzing name to Jerry and *my* team"; "*I* presented three mood-boards"; "*I* explored logo concepts"; and "*I* explored mountain and letter based iconography," etc. Am. Compl. Ex. H. In this context, Furlong's story and business needs are necessarily tied to the promotion of Defendant's expertise and designed to attract similarly situated prospective clients.

Defendant's reliance on *Tyne* is misplaced because the facts alleged here are materially different from the case at hand. In *Tyne*, the court addressed the use of individuals' identities within a motion picture and emphasized that "merely using an individual's name or likeness in a publication is not actionable," because there was

31

no evidence that the identities were used to "directly promote the product or service of the publisher." *Tyne*, 901 So. 2d at 805–06.

Defendant also relies on *Faulkner Press, LLC, v. Class Notes, LLC* in which the words "Professor Moulton" were listed on the cover of note packages that were, in fact, used to identify Professor Moulton's course, not to promote the notes themselves. 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010).

Defendant's reliance on *Fuentes v. Mega Media Holdings* is no different. In *Fuentes*, the Court dismissed the §540.08 claim because the plaintiff alleged only that his identity merely appeared during a television broadcast, not that it was used to advertise or promote separate goods or services. *Fuentes v. Mega Media Holdings*, 721 F. Supp. 2d 1255, 1259–60 (S.D. Fla. 2010). The court specifically noted the absence of allegations that the defendant used the plaintiff's identity "for the purposes of trade or for any commercial or advertising purpose." *Id*. at 1260. In contrast, courts applying § 540.08 have recognized claims where a plaintiff's identity is used to promote a defendant's goods or services on a commercial website. *See John Daly Enters., LLC v. Hippo Golf Co.*, 646 F. Supp. 2d 1347, 1351 (S.D. Fla. 2009).

This is not a case of movie characters and labeled notes. Way used Furlong's identity on his portfolio website to promote his design services. Am. Compl. ¶¶ 49-62, Unlike *Tyne*, *Faulkner Press* and *Fuentes*, and Defendant's website, by his own

32

admission, functioned as a marketing tool designed to solicit prospective clients, and Furlong's story was used as part of that promotional effort to attract prospective clients who find themselves similarly situated. At a minimum, whether Defendant's use was sufficiently commercial under § 540.08 is a factual inquiry. Accordingly, Plaintiffs plausibly allege a violation of § 540.08, and dismissal is unwarranted.

## IV. Leave to Amend Should be Granted.

Leave to amend should be granted. Under Fed. R. Civ. P. 15, "leave to amend pleadings should be freely given when justice so requires." *Ramey v. Interstate Fire & Cas. Co.*, 32 F. Supp. 3d 1199, 1203 (S.D. Fla. 2013). Amendments may only be denied only for undue delay, bad faith, prejudice, repeated failures to cure, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The parties met pursuant to Local Rule 7.1(c) to discuss their pending motions. The Defendants notified Plaintiffs, outlining arguments for their potential motion to dismiss, and Plaintiffs responded outlining proposed amendments for a Second Amended Complaint. Notwithstanding these discussions, and prior to their deadline to respond, Defendant Way filed his Motion to Dismiss. Defendant PHOS has already consented to the Second Amended Complaint.

As set forth herein, Defendant Way would not be prejudiced by the filing of a Second Amended Complaint.

## CONCLUSION

33

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Duncan Way's Motion to Dismiss Plaintiffs' Amended Complaint in its entirety. To the extent the Court identifies any deficiency in the Amended Complaint, Plaintiffs respectfully request leave to amend.

DATED this 11th day of May 2026

Respectfully submitted,

STUDIOIP LAW, LLC

By: /s/ Jessie L. Pellant
**Jessie L. Pellant** (admission
*pro hac vice* forthcoming)
Colorado Attorney Reg. No. 42096
jpellant@studioiplaw.com
**Vincent Merenda** *pro hac vice*
Colorado Attorney Reg. No. 60774
vmerenda@studioiplaw.com
**Tatum Barton**
Florida Attorney Reg. No. 1058793
tbarton@studioiplaw.com

3000 Lawrence Street
Denver, CO 80205
Telephone: (303) 563-5360

*Attorneys for Plaintiffs*
Tenzing Financial Advisors, PLLC
and Jerry L. Furlong Junior

34

## CERTIFACTE OF COMPLIANCE

Pursuant to Local Rule 7.1(F), the undersigned counsel of record for Plaintiffs certifies the total word count is 6699.

*/s/ Tatum Barton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of May 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Tatum Barton*

35