**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **FURLONG FINANCIAL GROUP, PLLC, TENZING FINANCIAL ADVISORS, PLLC and JERRY L. FURLONG, JR.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**PHOS CREATIVE, LLC and DUNCAN WAY,**<br><br>**Defendants.** | **Case No.: 1:26-cv-00006-MW-MJF** |

### DEFENDANT PHOS CREATIVE, LLC'S MOTION TO DISMISS ALL COUNTS OF PLAINTIFFS' SECOND AMENDED COMPLAINT

Defendant Phos Creative, LLC ("Phos"), by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respectfully moves this Court to dismiss Plaintiffs Tenzing Financial Advisors, PLLC's ("Tenzing Financial's") and Jerry L. Furlong, Jr.'s (collectively, "Plaintiffs") Second Amended Complaint ("SAC") in its entirety as against Phos. As grounds therefore, Phos states:

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   LEGAL STANDARDS .........................................................................4

III.  ARGUMENT .........................................................................................5

    A.    Claim 1 for Breach of Contract Should be Dismissed .........................5

        1.    The SAC Fails to Allege that Phos Has Breached Any
            Provision of the Engagement Contract ......................................5

        2.    The Engagement Contract Contains No Confidentiality or
            Non-Disclosure Obligation .......................................................8

        3.    The Alleged Breach is Entirely Outside the Scope of the
            Engagement Contract ...............................................................10

    B.    Claim 2 for Vicarious Copyright Infringement Should be
        Dismissed ...........................................................................................11

        1.    The SAC Does Not Plausibly Plead a Direct Financial
            Interest in the Alleged Infringement .......................................12

        2.    Plaintiffs Cannot Plead Phos Had Any Right or Control
            Over Mr. Way's Alleged Infringement....................................14

    C.    Even if Any Portion of the SAC Survives Dismissal, Prayer for
        Relief ¶D Should Be Dismissed and/or Stricken ..............................17

        1.    Phos Did Not Commit a "Wrong" to which the Wrongful
            Act Doctrine Can Attach..........................................................19

        2.    Neither But-For nor Proximate Causation Can Be
            Established ...............................................................................19

            a.    Multiple Independent Intervening Acts Break the
                Causal Chain.................................................................21

            b.    "Tenzing" Is a Historical Public Name and No
                 Other Allegations Corroborate ¶¶77-78 ........................23

        3.    The State Law Wrongful Act Doctrine Is Preempted by the
            Copyright Act...........................................................................24

i

4.      The Wrongful Act Doctrine Pleadings Are Not Ripe: Any
        Fees Incurred Remain Speculative.............................................25

D.      Alternatively, This Case Should Be Stayed Pending the Outcome
        of the Tenzing VA Litigation ............................................................28

IV.    **CONCLUSION** ................................................................................32

# TABLE OF AUTHORITIES

**CASES**

*Azalea Trace, Inc. v. Matos*,
249 So. 3d 699 (Fla. 1st DCA 2018)....................................................................18

*Banks v. Sec., Dept. of Health & Human Servs.*,
38 F.4th 86 (11th Cir. 2022)................................................................................26

*Burger King Corp. v. Weaver*,
169 F.3d 1310 (11th Cir. 1999)..............................................................................9

*Buschman v. Clark*,
583 So. 2d 799 (Fla. Dist. Ct. App. 1991)...........................................................19

*Canon Latin Am., Inc. v. Lantech (C.R.) S.A.*,
No. 08-21518-CIV, 2011 WL 240684 (S.D. Fla. Jan. 24, 2011).........................21

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*,
685 F.2d 1284 (11th Cir. 1982).............................................................................29

*DDB Techs., LLC v. MLB Advanced Media, L.P.*,
517 F.3d 1284 (Fed. Cir. 2008)...............................................................................6

*Erickson Prods., Inc. v. Kast*,
921 F.3d 822 (9th Cir. 2019)................................................................................12

*Frank Silvestri v. Hilltop Developers*,
418 So. 2d 1201 n.1 (Fla. Dist. Ct. App. 1982).....................................................19

*Hardwick Props. v. Newbern*,
711 So. 2d 35 (Fla. Dist. Ct. App. 1998)............................................... 18, 20, 23

*Ibarra v. Ross Dress for Less, Inc.*,
350 So.3d 465 (Fla. 3d DCA 2022)......................................................................16

*J&J Sports Prods., Inc. v. Arboleda*,
No. 6:09-cv-467, 2009 WL 3490859 (M.D. Fla. Oct. 27, 2009) ........................12

*Juno Therapeutics, Inc. v. Kite Pharma*,
No. CV 17-07639, 2018 WL 1470594 (C.D. Cal. Mar. 8, 2018) ................. 30, 31

*Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*,
  707 F. Supp. 2d 1287 (M.D. Fla. 2010) ............................................. 11, 12, 14, 16

*Medmarc Cas. Ins. Co. v. Fellows Labriola LLP*,
  No. 25-10837, 2025 WL 2886733 (11th Cir. 2025)..................................... 25, 27

*MV Senior Mgmt., LLC v. Redus Fla. Hous., LLC*,
  319 So. 3d 66 (Fla. Dist. Ct. App. 2020).................................................. 18, 19, 20

*Ortega Trujillo v. Conover & Co. Commc'ns*,
  221 F.3d 1262, 1264 (11th Cir. 2000)...................................................................29

*Perfect 10, Inc. v. Visa Int'l Sev. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ...............................................................................14

*Pierce v. State Farm Mut. Auto. Ins. Co.*,
  No. 14-22691-CIV, 2014 WL 7671718 (S.D. Fla. Dec. 17, 2014).......................5

*Pine Forest Assembly of God Church Inc. v. Church Mut. Ins. Co. SI*,
  No. 3:22-cv-6472, 2022 WL 22638970 ................................................................8

*Pine Forest Assembly of God Church Inc. v. Church Mut. Ins. Co. SI*,
  No. 3:22-cv-6472, 2022 WL 22638970, at *1 ........................................ 5, 8, 9, 11

*Prisua Eng'g Corp. v. Samsung Elecs. Co., Ltd.*,
  472 F. Supp. 3d 1183 (S.D. Fla. 2020)................................................................30

*State Farm Fire & Cas. Co. v. Palma*,
  629 So. 2d 830 (Fla. 1993) ..................................................................................18

*Sygma Photo News, Inc. v. High Society Magazine, Inc.*,
  778 F.2d 89 (2d Cir. 1985) ..................................................................................14

*Tarnoff v. iSolved, Inc.*,
  No. 6:25-cv-00955, 2025 WL 2432529 (M.D. Fla. Aug. 23, 2025). 13, 15, 22, 24

*Texas v. United States*,
  523 U.S. 296 (1998) .............................................................................................25

*Trump v. New York*,
  592 U.S. 125 (2020) .............................................................................................25

iv

**STATUTES**

17 U.S.C. § 301 ..........................................................................................................25

17 U.S.C. § 412 ..........................................................................................................25

17 U.S.C. § 504 ..........................................................................................................24

17 U.S.C. § 505 ..........................................................................................................25

## I.    INTRODUCTION

Plaintiffs have now filed three complaints.[1] Each time, Defendants identified glaring pleading deficiencies. Each time, Plaintiffs failed to cure them. The Second Amended Complaint ("SAC") is no different and should be dismissed with prejudice.

The SAC does not cure the deficiencies identified in Defendants' prior motions to dismiss the FAC. ECF 37. And Plaintiffs cannot possibly amend their pleadings to cure the deficiencies identified here, which were also raised in Phos's prior motion to dismiss the FAC. This case is not ripe and the claims against Phos are implausible. The alleged harm has ceased: the materials at issue were removed from Mr. Way's website months before this case was filed. Plaintiffs' real dispute is with Tenzing Financial, LLC of Williamsburg, Virginia ("Tenzing VA"), an unrelated non-party against whom Plaintiffs filed suit for trademark and copyright infringement on March 24, 2026. Plaintiffs have inextricably tied the Tenzing VA

---

[1] Plaintiffs filed their original Complaint on January 7, 2026. ECF 1. Their First Amended Complaint ("FAC"), filed March 12, 2026, left numerous facial deficiencies unresolved. ECF 21; *see also* ECF 37. The day before Phos's deadline to respond to the FAC, Plaintiffs announced their intent to file a Second Amended Complaint. *See* ECF 29, ¶¶4-9. They then waited nearly three more weeks to do so, during which time this Court ordered Phos to respond to the FAC. *See* ECF 29-1, at 11; ECF 35-1, at 14; and ECF 32. Phos filed its motion to dismiss the FAC on May 15, 2026. EXF 37. The following week, Plaintiffs sought leave to file the SAC. ECF 38. This Court granted leave on May 20, 2026 and denied Phos's motions to dismiss as moot. ECF 41. Phos now moves to dismiss the SAC.

case to this one because they seek to recover their attorneys' fees, expenses, and costs from that litigation as "special damages" under Florida's wrongful act doctrine. SAC, Prayer for Relief ¶D. That theory requires actual and proximate causation. Plaintiffs do not and cannot plausibly plead either.

Plaintiffs' causation theory rests entirely on two paragraphs pleaded solely "on information and belief." SAC ¶¶77-78. The first alleges that although Tenzing VA was incorporated three years before Plaintiffs founding in 2023, that Tenzing VA allegedly "did not launch its brand until 2025 after hiring a third-party marketing firm to design the brand and website for Tenzing VA" and only after "Plaintiff Tenzing brand launch and after [Mr. Way's] unauthorized publication of the Tenzing Branding Guide [herein, the "Subject Materials"[2]]." The second makes the entirely unsupported new allegation that this third-party marketing agency, hired by Tenzing VA to develop its brand, found Mr. Way's website and "utilized the Tenzing Branding Guide to develop" the Tenzing VA brand. If it sounds implausible, that is because it is, and common sense forecloses any credibility being given to these entirely unsubstantiated allegations. Plaintiffs have been in direct contact with Tenzing VA since at least October 23, 2025. SAC ¶76. Yet despite nearly eight months of direct contact with Tenzing VA, Plaintiffs have managed only to pivot

---

[2] Plaintiffs have offered various definitions of the copyrighted material at issue in this case. ECF 37 at 11, n.5. As set forth here, in the "Subject Materials" are those materials posted on Mr. Way's personal website.

2

from one implausible theory to another even more implausible one: that Tenzing VA copied the Subject Materials, now replaced by the assertion that its marketing agency did.

The SAC also fails to cure two additional material pleading deficiencies that have persisted through the FAC. The contract between Plaintiffs and Phos was effectively terminated upon completion of performance and no provision was breached by Phos. Moreover, vicarious copyright liability is inadequately pleaded and implausible as to both financial benefit and supervisory control.

Plaintiffs' liability theory against Phos for both the breach of contract and vicarious copyright liability claims rests entirely on the premise that Mr. Way acted within the scope of his employment. The SAC forecloses that premise on its face. The portions of the Branding Guide appeared on a personal website operated under Mr. Way's own name and brand (duncanwaydesign.com). SAC ¶¶43-45. Phos's alleged knowledge of the publication is pleaded only "on information and belief" with little-to-no supporting facts and is directly contradicted by the evidence. SAC ¶60. While Phos holds no ill will towards Mr. Way, his decision to post confidential client materials to his personal portfolio was made without Phos's knowledge, authorization, or direction, and in direct violation of Phos's employment agreement, which explicitly prohibited the removal, publication, or use of confidential client information.

3

The SAC falls far below the plausibility standard of *Twombly* and *Iqbal* and should be dismissed in its entirety as to Phos. At minimum, Prayer ¶D should be dismissed without prejudice as unripe, because final resolution of that claim is impossible without first concluding the Tenzing VA litigation. Independently, Prayer ¶D should be stricken as legally insufficient and preempted. Should the Court decline both, this case should be stayed in its entirety pending the resolution of the Tenzing VA litigation.

## II.    LEGAL STANDARDS

To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Supreme Court's plausibility standard is not met by "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. Courts must disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. A complaint must be dismissed where "the plaintiffs [] have not nudged their claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 547.

4

## III.  ARGUMENT

### A.    Claim 1 for Breach of Contract Should be Dismissed

In attempting to remedy their previous lack of standing for their breach of contract claim, Plaintiffs added Furlong Financial Group, PLLC ("Furlong Financial") as a plaintiff in the SAC. Despite this amendment, Plaintiffs' breach of contract allegations remain implausible under *Twombly* and *Iqbal* and, therefore, Claim 1 should be dismissed with prejudice.

#### 1.    The SAC Fails to Allege that Phos Has Breached Any Provision of the Engagement Contract

The SAC does not, and cannot, allege that Phos breached any express obligation of the subject agreement (the "Engagement Contract.") "In order to allege a material breach in accordance with the pleading standards required under the Federal Rules of Civil Procedure, the plaintiff must allege which provision of the contract has been breached." *Pine Forest Assembly of God Church Inc. v. Church Mut. Ins. Co. SI*, No. 3:22-cv-6472, 2022 WL 22638970, at *2 (N.D. Fla. June 27, 2022) (quoting *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691-CIV, 2014 WL 7671718, at *4 (S.D. Fla. Dec. 17, 2014)).

In January 2023, Phos and Furlong Financial entered into an agreement for Phos to prepare three discreet deliverables: (1) name identification and selection, (2) Phos brand plan, and (3) logo design and brand package (*i.e.*, the Tenzing Branding Guide). ECF 42-1, at 19, 22-23 (Engagement Contract). The two-page Engagement

5

Contract further included a work made for hire clause to assign these contemplated deliverables to Furlong Financial. *Id.* at 22. Other than a right of refusal, changes, timeline and termination, and data breach waiver provisions, the Engagement Contract contained no other affirmative obligations of either Phos or Furlong Financial. *Id.* at 22-23.

Under the Engagement Contract, Phos's only affirmative obligations were to create the three contemplated deliverables, including the Tenzing Branding Guide, and transfer ownership to Plaintiff Furlong Financial. [3] Plaintiffs *admitted* that Phos fulfilled those obligations. *E.g.*, ECF 31 at 8 ("Pursuant to the Agreement, PHOS *delivered* [the Tenzing Branding Guide]," and "PHOS *retained no rights* in the intellectual property *assigned* to Plaintiffs.") (emphasis added); *see also* SAC ¶3 ("The branding materials assigned to Plaintiff under the Agreement . . ."); ECF 42-15, at 2 ("Phos provided me with brand deliverables for Tenzing, including an email signature, business card design, my professional bio, letterhead, and the 'Tenzing Compass' graphic, all designed by Phos."). Because there is no dispute that Phos

---

[3] Should Plaintiffs allege that the Engagement Contract contained an ongoing obligation regarding the use or ownership of any intellectual property rights, the Federal Circuit has made clear that use of the phrase "hereby transfers and assigns" operates as a *present-tense* grant of an assignment, *not* a continuing covenant. *See, e.g.*, *DDB Techs., LLC v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008).

fulfilled its obligations under the Engagement Contract, the agreement was discharged by performance, with no future obligations remaining.

The Engagement Contract specifies the deliverables and rights Plaintiffs received, but, contrary to Plaintiffs' amendments, does not independently obligate Phos to do anything more than transfer those rights. The SAC does not plead that Phos challenged Tenzing's ownership of any intellectual property rights or that Phos claimed to be the owner of any of the intellectual property at issue—because Phos has not. The SAC similarly does not plausibly plead breach of any other provision of the Engagement Contract, because none exists. Instead, Phos's duty to deliver and assign ownership of the deliverables was discharged immediately upon receipt of those deliverables. SAC ¶¶89-90. Accordingly, because the Engagement Contract contained no forward-looking obligations, that contract was effectively terminated once performance was completed.

In an apparent attempt to remedy this deficiency and rewrite the Engagement Contract, Plaintiffs plead (for the first time) in the SAC that Phos "materially breached the Agreement by failing to maintain control over Plaintiff [sic] Intellectual Property and permitting the unauthorized use, disclosure, and dissemination of the assigned Intellectual Property[.]" SAC ¶93. Again, the Engagement Contract contains no provision requiring Phos *affirmatively* protect the rights assigned. Plaintiffs do not point to such a clause in the Engagement Contract because no such

7

clause exists. Moreover, the evidence shows that Phos *did* have a safe-guard in place to protect the dissemination of any confidential client information—Phos's employment agreement, which included strict confidentiality clauses prohibiting the removal, publication, or use of confidential information. *See* Ex. B1, at 21 and 33.

To the extent Plaintiffs have complaints about Phos or Mr. Way's alleged post-assignment use of the Subject Materials, that complaint sounds in copyright, not contract. Unable to find any express provision of the Engagement Contract that could possibly have been breached, Plaintiffs are left alleging a breach of a lack of contract, which is not a plausible cause of action under any reading of Florida contract law. *Pine Forest*, 2022 WL 22638970, at *2.

### 2. The Engagement Contract Contains No Confidentiality or Non-Disclosure Obligation

"For purposes of a Rule 12(b)(6) motion, the Court accepts as true the factual allegations of the complaint and considers whether the facts alleged are sufficient 'to state a claim to relief that is plausible on its face.'" *Pine Forest*, 2022 WL 22638970, at *1 (quoting *Iqbal*, 556 U.S. at 678). As stated in the SAC, "[n]*one of the terms*, provisions, conditions, or exclusions in the Agreement give consent to Duncan to publish the Tenzing Branding Guide." SAC ¶91 (emphasis added).[4] The absence of a permission is not the presence of a prohibition.

---

[4] In the FAC, this pleading read: "[n]one of the terms, provisions, conditions, or exclusions in the Agreement give consent to *Defendant* to publish the Tenzing

Under Florida law, a breach of contract claim requires identification of the specific contractual provision that was breached. *See Pine Forest*, 2022 WL 22638970 at *2*. Plaintiffs' breach of contract theory depends on Mr. Way's having violated some implied obligation not to publish the Tenzing Branding Guide. But the Engagement Contract's Intellectual Property clause (SAC ¶37) is solely an ownership transfer and work-for-hire provision; it contains no confidentiality covenant, non-disclosure obligation, or prohibition on Phos discussing or displaying its work. Likewise, no other term in the Engagement Contract conveys any confidentiality or non-disclosure obligation.[5]

To the extent Plaintiffs seek to allege a breach of the implied covenant of good faith and fair dealing, this fails because "[w]here a party to a contract has in good faith performed the express terms of the contract, an action for breach of the implied covenant of good faith will not lie." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317-18 (11th Cir. 1999). Thus, "a cause of action for breach of the implied covenant cannot be maintained . . . in the absence of breach of an *express term* of the underlying contract." *Id.* (emphasis added).

---

Materials." FAC ¶83 (emphasis added). Plaintiffs' amended the word "Defendant" to be "Duncan" effectively admitting the implausibility of Plaintiffs' theory—no alleged breach was committed by *Phos*.

[5] Again, the only confidentiality agreement obligation relevant to this case is the one contained in Phos's employment agreement. Ex. B ¶8; *see also* Ex. B1 at 32.

Claim 1 of the SAC should therefore be dismissed because it fails to identify any express continuing duty that Phos breached. The "entire right, title and interest" in the contemplated deliverables, including the Tenzing Branding Guide, were transferred to Plaintiffs, meaning Phos fulfilled its duties and obligations under the Engagement Contract. Again, any alleged violation of Tenzing's rights as owner of the Tenzing Branding Guide is a property tort, not a breach of contract. Accordingly, Claim 1 of the SAC is incurably deficient and should be dismissed with prejudice.

### 3. The Alleged Breach is Entirely Outside the Scope of the Engagement Contract

Finally, as admitted by Plaintiffs, Phos completed its contractual performance in April 2023. *See* SAC ¶38; *see also* ECF 31, at 6-7. Taking Plaintiffs' allegations as true, Mr. Way allegedly posted the Subject Materials as early as September 30, 2024, nearly a year and a half after Phos completed its performance. Even accepting that an implied publication restriction or obligation for Phos to affirmatively protect Plaintiffs' copyrights existed (neither of which did), Phos cannot have breached these obligations through conduct of which it was not aware, did not authorize, and did not take. Mr. Way's posting the Subject Materials to his personal website was a breach of the confidentiality provision of the employment agreement he signed when he began working for Phos. Ex. B ¶¶8-10; *see also* Ex. B1 at 32; *see also* §III.B, *infra*. The unauthorized actions of an employee cannot constitute a breach of the Engagement Contract by Phos.

10

Accordingly, Plaintiffs cannot allege any contractual provision has been breached by Phos, and Claim 1 should be dismissed with prejudice. *See Pine Forest*, 2022 WL 22638970 at *2.

### B. Claim 2 for Vicarious Copyright Infringement Should be Dismissed

Claim 2 of the SAC fails to state a claim for vicarious copyright infringement against Phos and, therefore, should be dismissed. As acknowledged in the FAC, vicarious copyright infringement requires a plaintiff to plead "(1) 'the right and ability to supervise,' and (2) 'a direct financial interest' in the profits from the infringing activity." *Klein & Heuchan, Inc. v. Costar Realty Information, Inc.*, 707 F. Supp. 2d 1287, 1296-97 (M.D. Fla. 2010) (citation omitted); *see also* SAC ¶¶95, 103 (quoting *Joe Hand Promotions, Inc. v. Hart*, No. 9:11-cv-80971, 2012 WL 1289731 (S.D. Fla. April 16, 2012)). Failure to plead either element renders a complaint subject to dismissal.

To cure the earlier deficiencies of the FAC (ECF 37 at 12-16), Plaintiffs added several paragraphs pleaded solely "[o]n information and belief" to satisfy the elements of vicarious copyright infringement liability. Those additions, however, are little more than conclusory statements and formulaic recitations of the elements of vicarious copyright infringement and are not entitled to the assumption of truth. *See Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. Because the SAC fails to nudge

11

Plaintiffs' vicarious liability claim across the line from conceivable to plausible, it should be dismissed with prejudice. *Id.*

### 1. The SAC Does Not Plausibly Plead a Direct Financial Interest in the Alleged Infringement

The SAC does not plausibly plead that Phos received a direct financial benefit from Mr. Way's alleged infringement. For vicarious copyright infringement to attach, the direct financial benefit must arise from the infringement. *See Klein & Heuchan*, 707 F. Supp. 2d at 1296-97; *see also Erickson Prods., Inc. v. Kast*, 921 F.3d 822, 829 (9th Cir. 2019) (analyzing whether a defendant had a direct financial interest in the *infringing activity*); *see also Joe Hand Promotions*, 2012 WL 1289731, at *3 (quoting *J&J Sports Prods., Inc. v. Arboleda*, No. 6:09-cv-467, 2009 WL 3490859, at *5 (M.D. Fla. Oct. 27, 2009)) (explaining that the correct legal standard for vicarious liability analyzes whether "the individual defendant had the 'right and ability to supervise the *violations*, and that he had a strong financial interest *in such activities*.'") (emphasis added).

The SAC pleads that "[o]n information and belief, Phos derived a direct financial benefit from the unauthorized publication of the Tenzing Branding Guide." SAC ¶105. This is precisely the type of "formulaic recitation of a cause of action's elements" against which *Iqbal/Twombly* warns. *Twombly*, 550 U.S. at 545 (2007). The sole factual support offered is equally conclusory: "[o]n information and belief, Phos knew that Duncan's promotion of the Tenzing Branding Guide was appealing

and effective marketing, and Phos would benefit from the promotion of the Tenzing Branding Guide." SAC ¶67. These new allegations pleaded on information and belief without supporting facts do not cure the prior deficiencies of the FAC. *See, e.g.*, *Tarnoff v. iSolved, Inc.*, No. 6:25-cv-00955, 2025 WL 2432529, at *3 (M.D. Fla. Aug. 23, 2025) (allegations made upon information and belief "are generally not taken as true if not supported by sufficient facts.")

The allegations are also facially implausible. *See Twombly*, 550 U.S. at 548 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Phos derives no benefit from an employee advertising himself on a personal website to obtain other employment. More to the point, nowhere on the page of Mr. Way's website containing the Subject Materials was Phos mentioned. SAC, Ex. G. Phos appeared only on a separate subdirectory containing Mr. Way's resume. *Id.*, Ex. J at 11 (Ex. H to Plaintiffs' cease and desist letter). The page containing the Subject Materials bore no reference to when or where they were created.

Plaintiffs' theory requires the following sequence: a potential Phos customer views Mr. Way's personal portfolio, finds the undated Subject Materials compelling, navigates to his separate resume, sees his prior employment at Phos, and contacts Phos hoping he created those materials while still employed there. That Phos condoned or believed such a sequence would constitute effective advertising, in

13

violation of Mr. Way's employment agreement, is beyond speculative. It is facially implausible.

Because the SAC cannot plausibly allege a direct financial benefit to Phos arising from Mr. Way's alleged infringement, Claim 2 is deficient as to Phos and should be dismissed with prejudice.

### 2. Plaintiffs Cannot Plead Phos Had Any Right or Control Over Mr. Way's Alleged Infringement

Even if the Court finds that the SAC plausibly alleges Phos had a direct financial interest in Mr. Way's alleged infringement, the SAC is still deficient for failing to plausibly allege that Phos had any right or control over it. The "right and ability" prong of vicarious copyright infringement requires that the defendant "exercise control over" the direct infringer. *Klein & Heuchan*, 707 F. Supp. 2d at 1297 (quoting *Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985)). According to the SAC, Mr. Way posted the Subject Materials on his own *personal* website, outside the scope of Phos's supervisory control. SAC ¶¶47-49.

An employer has no right or ability to supervise what an employee posts on his personal website on his own time. The "right and ability to supervise" prong requires the practical ability to control the specific infringing activity. *See Klein & Heuchan*, 707 F. Supp. 2d at 1297; *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 805-6 (9th Cir. 2007) (the accused must have "the right and ability to

14

*supervise* and *control* the infringement, not just affect it[.]") (emphasis in original). The SAC admits that Mr. Way used the Subject Materials to promote "his own branding services." SAC ¶58 (emphasis added). That admission confirms his activity was independent of his employment at Phos.

Further, Phos's employment agreement, which Mr. Way signed, includes a confidentiality clause prohibiting the disclosure of confidential client materials. Ex. B1 ("I understand that information I come into contact with during my employment is proprietary to PHOS and accordingly, *I agree to keep it confidential, which means I will not use it other than in the performance of my duties or disclose it to any person or entity outside PHOS*.") (emphasis added). Mr. Way's posting of the Tenzing Branding Guide on his personal website was in direct violation of that agreement and outside the scope of his employment.

To bridge this gap, the SAC alleges "[o]n information and belief, Phos knew that the Tenzing Branding Guide were [sic] published on Duncan's website." SAC ¶65. But no facts support that assertion, and it is not accurate. *See, e.g.*, *Tarnoff*, 2025 WL 2432529, at *3. Phos had no knowledge of the contents of Mr. Way's website. *See* Ex. B ¶10. Plaintiffs fare no better with their allegation that Phos "knew that Duncan's promotion of the Tenzing Branding Guide was appealing and effective marketing, and Phos would benefit from the promotion of the Tenzing Branding Guide." SAC ¶67. As discussed above, that allegation does not "nudge[] [Plaintiffs']

15

claims across the line from conceivable to plausible[,]" *Twombly*, 550 U.S. at 547, and it says nothing about whether Phos actually controlled Mr. Way's alleged infringement. Knowledge of a benefit is not control. Because Plaintiffs cannot plausibly allege that Phos had the right to supervise or control that infringement, the deficiency remains.

Florida *respondeat superior* law confirms as much. Liability attaches only where "(1) the conduct is of the kind [the employee] was employed to perform, (2) the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) the conduct is activated at least in part by a purpose to serve the master." *Ibarra v. Ross Dress for Less, Inc.*, 350 So.3d 465, 467 (Fla. Dist. Ct. App. 2022) (citation omitted); *Klein & Heuchan*, 707 F. Supp. 2d at 1295-96 (explaining that vicarious liability may arise "under general agency principles of *respondeat superior*."). Mr. Way's conduct meets none of these criteria. He was hired to create branding materials and deliver them to Phos's clients. His decision to retain the Subject Materials after the engagement concluded, build a personal portfolio entry from confidential work product, and post it publicly for his own career advancement was not the work he was employed to perform, occurred outside his employment, and served no purpose of Phos. [6]

---

[6] Plaintiffs' also preview an alternative theory of control that should likewise be rejected. SAC ¶108. Specifically, Plaintiffs contend that Phos, after having received Plaintiffs' cease and desist letter, "exercis[ed] control over [Mr.] Way" when it

16

Plaintiffs cannot plead around these facts. They cannot plausibly allege that Phos had the right to supervise or control Mr. Way's personal website, and they cannot plausibly allege that his independent conduct served Phos. Because no amendment can cure those defects, Claim 2 should be dismissed with prejudice as to Phos.

### C.      Even if Any Portion of the SAC Survives Dismissal, Prayer for Relief ¶D Should Be Dismissed and/or Stricken

Prayer for Relief ¶D should be dismissed and/or stricken under Rule 12(f) because it fails as a matter of law with respect to Phos, is not ripe, and, should Claim 1 be dismissed, is preempted by the Copyright Act. Prayer for Relief ¶D of the SAC ("SAC Prayer ¶D") asks this Court to award "all fees, expenses, and costs associated with enforcement of their Intellectual Property rights against third parties as a result of Defendant's conduct." SAC Prayer ¶D.[7] This request is premised on Florida's wrongful act doctrine.

---

requested that Mr. Way take down those materials. ECF 31, at 10. By the time Plaintiffs sent the cease and desist letter in October 2025, Mr. Way had not been employed by Phos for nearly seven months. That Mr. Way took down the Subject Materials has no bearing on any plausible control that Phos may have had (which it did not). *See* Ex. B, ¶12. Phos cannot plausibly be considered to have control over a former employee that left the company months prior.

[7] Because Plaintiffs have not alleged any actual monetary damages from Mr. Way's posting, and because Plaintiffs are not entitled to statutory damages, Plaintiffs are not entitled to any significant monetary damages under their breach of contract and/or copyright infringement claims. As a result, the damages sought via the wrongful act doctrine constitute a vast majority of the damages they seek.

17

Under Florida state law, the wrongful act doctrine provides a "narrow exception" to the "American rule" when "the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as *makes it necessary* to incur expenses to protect its interest." *MV Senior Mgmt., LLC v. Redus Fla. Hous., LLC*, 319 So. 3d 66, 67 (Fla. Dist. Ct. App. 2020) (emphasis added); *see, e.g.*, *State Farm Fire & Cas. Co. v. Palma*, 629 So. 2d 830, 832 (Fla. 1993) (Florida courts adhere to the American rule); *Azalea Trace, Inc. v. Matos*, 249 So. 3d 699, 701 (Fla. Dist. Ct. App. 2018) (similar). There must be some underlying "tortious conduct" for the wrongful act doctrine to attach. *MV Senior Mgmt.*, 319 So. 3d at 67.

Necessary to a party's burden of proof under the wrongful act doctrine is showing that "*but for the breaching party's tortious conduct*, the non-breaching party would not have been required to expend attorneys' fees to defend litigation against a third party." *Id.* (internal quotation omitted). Any relief for special damages under the wrongful act doctrine requires the downstream harm be a proximate and foreseeable result of the alleged breach. *See, e.g.*, *Hardwick Props. v. Newbern*, 711 So. 2d 35, 40 (Fla. Dist. Ct. App. 1998) (consequential damages "stem from losses incurred by the non-breaching party in its dealings, often with third parties, which were a proximate result of the breach, and which were reasonably foreseeable by the breaching party at the time of contracting.") (internal quotations omitted); *Buschman*

18

*v. Clark*, 583 So. 2d 799, 800 (Fla. Dist. Ct. App. 1991) (consequential damages "must be a natural and proximate result of the breach."); *Frank Silvestri v. Hilltop Developers*, 418 So. 2d 1201, 1203 n.1 (Fla. Dist. Ct. App. 1982) (similar). Put differently, the alleged wrongful act does not make it "*necessary . . .* to protect [one's] interest" without proximate causation. *MV Senior*, 319 So. 3d at 67 (emphasis added). The SAC fails to adequately plead both but-for or proximate causation, and therefore, Plaintiffs' plea for recovery under the wrongful act doctrine should be stricken.

### 1. Phos Did Not Commit a "Wrong" to which the Wrongful Act Doctrine Can Attach

First and foremost, without an underlying "wrong," relief cannot be awarded under the wrongful act doctrine. *Id.* As discussed above in §III.A-B, the SAC fails to adequately plead that Phos breached any contract with Plaintiffs or infringed Plaintiffs' copyright. Therefore, the SAC fails to plead the predicate "wrongful act" to which the wrongful act doctrine could attach.

### 2. Neither But-For nor Proximate Causation Can Be Established

Next, SAC Prayer ¶D should be dismissed or stricken because Plaintiffs cannot plausibly plead but-for or proximate causation stemming from any alleged "wrongful act" of Phos. The wrongful act doctrine requires that "but for the breaching party's tortious conduct, the non-breaching party would not have been

19

required to expend attorneys' fees to defend litigation against a third party." *MV Senior*, 319 So. 3d at 67 (internal quotation omitted). Similarly, those costs must be "a proximate result of the breach, and [must be] reasonably foreseeable by the breaching party at the time of contracting." *Hardwick Props.*, 711 So.2d at 40 (internal quotation omitted). In other words, there must be some causal nexus between the alleged wrongful act and the fees a plaintiff was forced to incur. No such nexus exists here.

The causal chain Plaintiffs must establish is: (1) Phos's alleged breach of contract → (2) Duncan Way independently published the Subject Materials on his personal website resulting in copyright infringement → (3) Tenzing VA independently decided to develop its Tenzing brand five years after having secured the name in 2020 → (4) Tenzing VA hired a third-party marketing agency → (5) the third-party marketing agency discovered the Subject Materials on Mr. Way's website → (6) the third-party marketing agency independently decided to copy the brand name, color scheme, narrative, and logo and proposed that copied branding to Tenzing VA → (7) Tenzing VA adopted the proposed similar brand name, color scheme, narrative, and logo in its business → (8) Plaintiffs incurred fees in stopping Tenzing VA's alleged trademark and copyright infringement. Each step involves the entirely independent conduct of multiple third parties that severs any causal chain leading to Phos.

> **a.**     **Multiple Independent Intervening Acts Break the Causal Chain**

The wrongful act doctrine does not extend through multiple independent intervening causes. *See, e.g.*, *Canon Latin Am., Inc. v. Lantech (C.R.) S.A.*, No. 08-21518-CIV, 2011 WL 240684, at *16 (S.D. Fla. Jan. 24, 2011) ("a wrongful act by these Defendants must have precipitated [Plaintiff]'s involvement in the prior actions."). Here, Plaintiffs do not, and cannot, allege that any copying was a legal consequence of any act by Phos. As discussed above, Mr. Way's decision to post the Subject Materials to his personal portfolio violated his employment agreement and fell outside the scope of his employment. Ex. B ¶¶8-10; *see also* Ex. B1 at 32. That independent act alone severs the causal chain.  The independent conduct of Tenzing VA and its third-party marketing agency, to the extent any wrongful conduct occurred, severs that chain a second time.

Even if the but-for causal chain can be established—an extraordinarily generous reading—the requisite *foreseeability* cannot be established *as a matter of law*. This portion of Plaintiffs' damages theory is fatally deficient and cannot be remedied by any other further amendments or discovery. The SAC does not allege any facts showing that the alleged copying *necessarily* resulted from Tenzing VA or its marketing agency viewing Mr. Way's website. Nor could it.

The entirety of Plaintiffs' damages theory is pleaded "[o]n information and belief" in two paragraphs. SAC ¶¶77-78. These allegations are unsubstantiated and

entitled no weight. *See, e.g., Tarnoff*, 2025 WL 2432529, at \*3; *see also Twombly*, 550 U.S. at 551, 557 (declining to take as true the conclusory allegation "upon information and belief.").

Paragraph 77 of the SAC alleges that although "Tenzing VA filed its Articles of Incorporation in 2020, prior to Tenzing founding in 2023, Tenzing VA did not launch its brand until 2025 after hiring a third party marketing firm to design the brand and website for Tenzing VA." Paragraph 78, again without any supporting facts, introduces a major pivot[8] in Plaintiffs theory: that "the third-party marketing agency hired by Tenzing VA utilized Tenzing's Materials[9] to develop their own brand." In other words, after apparently learning that Tenzing VA had retained *yet another third-party* to develop its brand, Plaintiffs now allege this *additional third-party* must have copied the Subject Materials. SAC ¶78. These speculative allegations do not pass muster under *Twombly* and *Iqbal*. 556 U.S. at 678.

---

[8] The FAC previously alleged "[o]n information and belief, Tenzing VA utilized Tenzing's materials to develop their own brand." FAC ¶72. The pivot in the SAC is telling. In the nearly eight months of direct contact with Tenzing VA (*see* SAC ¶76) Plaintiffs evidently learned that the answer to the linchpin question of their damages theory, whether Tenzing VA ever visited or relied upon Mr. Way's personal website, is no. Undeterred, Plaintiffs now pivot to an even more attenuated theory: that some unnamed third-party marketing agency did so instead. As before, they offer nothing beyond a naked "on information and belief" assertion to support this.

[9] "Tenzing's Materials" is never defined in the SAC. For the sake of this motion, it is assumed "Tenzing's Materials" refers to the Subject Materials posted on Mr. Way's personal website.

Even accepting SAC ¶¶77-78 as true for purposes of this motion, the third-party marketing agency's alleged independent decision to utilize the Subject Materials was in no way a foreseeable consequence of any act by Phos. Foreseeability is assessed at the time of contracting, *Hardwick Props.*, 711 So. 2d at 40. No reasonable party executing a standard creative services engagement in January 2023 could have anticipated the chain Plaintiffs now allege: that an employee would later post confidential client materials to his personal portfolio, that a marketing agency retained by a Virginia competitor would discover those materials eighteen months later, that the agency would then suggest a similar brand, and that the competitor would ultimately adopt it.

Even if the Court were to find that the SAC plausibly establishes but-for causation, which Phos does not concede, the pleadings remain facially deficient as to proximate causation. None of the downstream events would have been a reasonably foreseeable consequence of any action by Phos, or foreseeable at the time the parties entered the Engagement Contract.

### b.  "Tenzing" Is a Historical Public Name and No Other Allegations Corroborate ¶¶77-78

The SAC concedes that the name "Tenzing" was inspired by Tenzing Norgay, the celebrated Sherpa who summited Mount Everest in 1953. SAC ¶52. Tenzing Norgay is a historical figure. *See, e.g.*, Ex. A1 (Tenzing Norgay Wikipedia). Plaintiffs do not own the history of Tenzing Norgay. The possibility that Tenzing

23

VA independently arrived at a similar name and narrative is entirely plausible, and it weighs against any credibility being given to SAC ¶78, which asserts only "[o]n information and belief" that Tenzing VA's third-party marketing agency used the Subject Materials to develop Tenzing VA's brand. *See Tarnoff*, 2025 WL 2432529, at *3.

Likewise, SAC ¶¶78-80 do little more than allege mere coincidence: a shared name, logos that both incorporate the letter T, and blue color schemes that are not even the same shade. These coincidences do not reach beyond speculation, and they fall well short of the plausibility threshold set by *Twombly* and *Iqbal.* The SAC does not plausibly plead that Tenzing VA or its marketing agency copied anything from Mr. Way's personal portfolio, rather than independently arriving at the same historical inspiration that Plaintiffs themselves chose. SAC ¶¶77-78 are therefore not entitled to the assumption of truth, because Plaintiffs have not alleged facts making copying more plausible than independent creation.

### 3. The State Law Wrongful Act Doctrine Is Preempted by the Copyright Act

To the extent SAC Prayer ¶D seeks damages for Claim 2, Phos's alleged vicarious copyright infringement, the theory seeks consequential copyright damages through a state law vehicle. Damages for copyright infringement are governed by federal statutory and common law and are generally limited to actual or statutory damages—consequential damages are not available. *See generally* 17 U.S.C. § 504.

Section 301 of the Copyright Act expressly preempts state law claims equivalent in substance to federal copyright rights. 17 U.S.C. § 301.

The Copyright Act already addresses the recovery of attorneys' fees. Section 505 provides that a court "*may*" award fees to the prevailing party "in its discretion." 17 U.S.C. § 505 (emphasis added). And § 412 limits the availability of those fees, barring them for works not registered *before* the infringement commenced. 17 U.S.C. § 412. Plaintiffs cannot use the Florida wrongful act doctrine as a back door to recover attorneys' fees they could never recover under the Copyright Act itself— a point Plaintiffs have conceded. 17 U.S.C. § 412(2); ECF 29-1 at 11.

### 4. The Wrongful Act Doctrine Pleadings Are Not Ripe: Any Fees Incurred Remain Speculative

Plaintiffs' claim for special damages under the wrongful act doctrine is not ripe. *See* Fed. R. Civ. P. 12(b)(1). It is entirely predicated on a separate, later-filed lawsuit in its infancy. *See generally* Tenzing VA Compl. (filed March 24, 2026). For a claim to be justiciable under Article III, the "case must be 'ripe' and not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). A claim may sometimes be "decided before contingent facts are resolved, but the 'practical likelihood' of those contingent facts should be 'almost inevitable.'" *Medmarc Cas. Ins. Co. v. Fellows Labriola LLP*, No. 25-10837, 2025 WL 2886733, at *4 (11th Cir. 2025) (dismissal appropriate where

25

issue of whether an insurer would "ultimately have to indemnify [insureds] depends on the resolution of the underlying [injury] case, so the question is not ripe until that case is resolved."). Prayer ¶D comes nowhere close to that standard. Its outcome depends on the resolution of the Tenzing VA litigation in at least two independent respects, neither of which can be known now.

First, the fees Plaintiffs seek to recover cannot be calculated at this time. The Tenzing VA lawsuit was filed on March 24, 2026. *See generally* Tenzing VA Compl. Tenzing VA moved to dismiss on May 4, 2026, raising serious questions about the merits of Plaintiffs' case there. Tenzing VA MTD. The trajectory of that case—its duration, its cost, and its outcome—is entirely unknown. The amount of any recoverable fee is a matter of pure speculation, contingent on the future conduct of Tenzing VA, its counsel, and the Eastern District of Virginia. *See Banks v. Sec., Dept. of Health & Human Servs.*, 38 F.4th 86, 95 (11th Cir. 2022) (collecting cases) ("The Supreme Court has consistently expressed 'reluctance to endorse standing theories that rest on speculation about the decisions of independent actors.'").

Second, Plaintiffs' entitlement to recover anything in the Tenzing VA case is unresolved and depends on unsettled questions that case must answer first. Plaintiffs seek recovery of fees incurred in prosecuting a seven-count trademark and copyright infringement action that faces its own pleading defects. The two primary trademark counts rest on pending applications, as Tenzing VA's motion to dismiss explains.

26

Tenzing VA has asserted common law priority based on its own use of the "Tenzing" name dating to its formation in June 2020, a date Plaintiffs themselves acknowledged. Tenzing VA Compl. ¶41 (quoting Tenzing VA's counsel), *id.* at Ex. F; *see also* SAC ¶77. Tenzing VA has also signaled its intent to oppose Plaintiffs' trademark applications outright. Tenzing VA Compl. at Ex. F ("We are amenable to coexistence, but in the event of further threatened action, we will file an opposition to [Tenzing]'s registration."). Whether Plaintiffs prevail, and the extent of any fees the doctrine might ultimately permit them to recover, are open questions that turn entirely on how the Virginia litigation unfolds. Those questions cannot be answered here and now. They can only be answered there, later.

Both contingencies are independently fatal to ripeness, and together they compound one another. The amount of fees and the likelihood of any recovery both remain unknown, and each depends on the trajectory and outcome of a separate case in another district that has barely begun. Whether Phos owes anything under the wrongful act doctrine, and if so how much, "depend[s] on the resolution of the underlying [Tenzing VA] case, so the question is not ripe until that case is resolved." *Medmarc Cas. Ins.*, 2025 WL 2886733, at *4. Dismissal, or striking, of the claim is therefore appropriate. *Id.* Nor SAC allege any ongoing harm that would require the claim to be resolved now. The Subject Materials were removed from Mr. Way's website long ago. SAC ¶70.

27

Because the claim is unripe, the Court lacks jurisdiction over it, and the proper disposition is dismissal without prejudice under Rule 12(b)(1). Such a dismissal prejudices no one. If Plaintiffs prevail in the Tenzing VA litigation and actually incur recoverable fees, they remain free to seek leave to replead at that time, on a record that would for the first time make the claim ripe. In the alternative, should the Court decline to dismiss for lack of ripeness, Prayer ¶D should be stricken under Rule 12(f), or dismissed under Rule 12(b)(6) to the extent it is construed as part of Plaintiffs' claims, for the independent reasons that it fails as a matter of law and is preempted, as set forth above. Should the Court decline both, Prayer ¶D should be stayed pending the resolution of the Tenzing VA litigation.

**D.    Alternatively, This Case Should Be Stayed Pending the Outcome of the Tenzing VA Litigation**

Should the Court decline to dismiss Claims 1 and 2 against Phos or strike Prayer ¶D and instead allow it to stand, Phos alternatively requests that the Court stay this case in its entirety pending the resolution of the Tenzing VA litigation. In seeking a stay in the alternative, Phos does not concede that the outcome of the Virginia litigation governs any question of liability or entitlement in this case. For the reasons set forth above, Prayer ¶D fails as a matter of law. *See* §III.C.2, *supra*. The stay analysis below addresses only the efficiency of deferring further proceedings should the claim survive. "The inherent discretionary authority of the district court to stay litigation pending the outcome of [a] related proceeding . . . is

28

not questioned." *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). "A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." *Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264 (11th Cir. 2000). And "a variety of circumstances may justify a district court stay pending the resolution of a related case in another court." *Id.* A stay is warranted under these circumstances.

Phos's limited discovery efforts to date are fully consistent with, and underscore the need for, a stay. Pursuant to this Court's order directing the parties to commence discovery (ECF 30) Phos served narrow third-party subpoenas on Tenzing VA directed at the threshold question: whether Tenzing VA or its marketing agency accessed or used the Subject Materials. That targeted inquiry, is the kind of discrete, potentially dispositive discovery that may resolve or substantially narrow this case. A stay of the proceedings would allow that limited inquiry to run its course, and allow resolution of the Virginia litigation to clarify the amount of Plaintiffs' alleged damages, before the parties are forced into full and burdensome discovery, including expert discovery, that would otherwise follow. A stay does not halt the efficient development of the dispositive issues. It prevents the wasteful litigation of everything else before those issues are resolved.

29

Courts weigh three factors in deciding whether to grant a stay: the stage of the litigation, undue prejudice to the nonmoving party, and simplification of the issues. *E.g., Prisua Eng'g Corp. v. Samsung Elecs. Co., Ltd.*, 472 F. Supp. 3d 1183, 1185 (S.D. Fla. 2020). All three favor a stay.

The stage of the litigation favors a stay. This case is in its infancy. Defendants have not answered the SAC, and, as of the filing of this motion, Plaintiffs have served no discovery on either Phos or Mr. Way. The only discovery Phos has pursued is limited third-party discovery directed at the causation question. Because virtually no substantive activity has taken place, this factor weighs in favor of a stay. *See Juno Therapeutics, Inc. v. Kite Pharma*, No. CV 17-07639, 2018 WL 1470594, at *6 (C.D. Cal. Mar. 8, 2018) (this factor favors a stay where "no significant discovery or trial preparation has taken place" and the parties have not invested substantial time or expense).

The absence of prejudice favors a stay. There is no ongoing or prospective harm for *this* litigation to redress. The only conduct at issue in this case is Mr. Way's posting of the Subject Materials; which ceased months ago when the materials were removed from his website. *See* §III.C.4, *supra.* The SAC does not seek injunctive relief and identifies no continuing harm. The operative facts are fixed. Plaintiffs' claims will be neither stronger nor weaker, and no easier or harder to prove, after the Tenzing VA litigation concludes. Plaintiffs lose nothing of substance by waiting,

30

and a "[m]ere delay in the litigation does not establish undue prejudice." *Juno*, 2018 WL 1470594, at *8.

Simplification of the issues favors a stay. Prayer ¶D seeks to recover the fees, expenses, and costs of the Tenzing VA litigation. The amount of those fees turns directly on the trajectory and outcome of the Virginia case, and the questions bearing on whether Plaintiffs may ultimately recover any such fees remain unresolved and depend on how that litigation develops. Most of the claimed fees have yet to accrue. *See* §III.C.4, *supra*. Resolution of the Tenzing VA litigation will clarify or eliminate the central damages question underlying this case—potentially opening a path to settlement. That path becomes more remote the more resources are expended litigating this case.

Even if the Court treats the factual predicate of Prayer ¶D as a live and material issue, that predicate remains entirely undeveloped. The causal nexus Plaintiffs need between any access to the Subject Materials and Phos's alleged wrongful act finds no support in the SAC. *See* §III.C.2, *supra*. Phos's pending subpoenas are directed at that very question, and the limited discovery they may yield, together with the development of the Virginia litigation, will show whether Plaintiffs' theory has any factual basis at all. Until then, requiring full litigation of this case would be premature and wasteful.

For these reasons, should Prayer ¶D be allowed to stand, judicial efficiency warrants a stay of this case in its entirety pending the outcome of the Tenzing VA litigation.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Phos Creative, LLC respectfully requests that this Court:

(a)    Dismiss Claims 1-2 of the SAC with prejudice, with respect to Phos;

(b)    In the alternative, dismiss and/or strike SAC Prayer for Relief ¶D;

(c)    In the alternative, dismiss the SAC as not ripe;

(d)    In the alternative, stay this case in its entirety pending the outcome of the Tenzing VA litigation; and

(e)    Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

June 3, 2026

/s/ *Philipp Ruben*

Philipp Ruben (6324579)
**MCANDREWS, HELD & MALLOY, LTD.**
500 West Madison Street, 34th Floor
Chicago, Illinois 60661
(312) 775-8000
RSpuhler@mcandrews-ip.com
PRuben@mcandrews-ip.com

**Attorney for Defendant, Phos Creative, LLC**

32

## CERTIFICATION OF ATTORNEY CONFERENCE

Pursuant to N.D. Fla. Local Rule 7.1(B), I hereby certify that I have conferred

with counsel for Plaintiffs on June 2, 2026, regarding the relief requested.

/s/ *Philipp Ruben*
Philipp Ruben

33

## <u>WORD COUNT CERTIFICATE</u>

I certify that the above motion contains 7,761 words and complies with Local

Rule 7.1(F).

/s/ *Philipp Ruben*
Philipp Ruben

34

## CERTIFICATION OF SERVICE

I hereby certify that on June 3, 2026, the foregoing document was electronically filed and served via the CM/ECF system to all counsel of record.

*/s/ Philipp Ruben*
Philipp Ruben
