**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

|  |  |
|---|---|
| TENZING FINANCIAL ADVISORS, PLLC and JERRY L. FURLONG JUNIOR, | ) ) ) ) |
|  | ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| PHOS CREATIVE, LLC and DUNCAN WAY, | ) ) ) |
| *Defendants*. | ) ) ) |

Civil No.: 1:26-cv-00006-MW-MJF

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF
DEFENDANT DUNCAN WAY'S MOTION TO DISMISS THE AMENDED
COMPLAINT**

1

TABLE OF CONTENTS

INTRODUCTION ...........................................................................................**8**

FACTUAL BACKGROUND..........................................................................**10**

   A. The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940........10

   B. Way's Infringement...................................................................................13

   C. Commencement of this Action....................................................................14

LEGAL STANDARD....................................................................................17

ARGUMENTS..............................................................................................**18**

   I.     Dismissal of Count I Against Way Is Improper Because the SAC

Plausibly Alleges Notice and Assent Despite the Absence of a Signature. ....18

   II.   Plaintiffs Plausibly Plead a Claim for Copyright Infringement against

      Way…....…………....…………….……….…….…….…………22

     A. The Plaintiffs Own a Valid Copyright, and Way Directly Infringes

     Plaintiffs' Copyright. ...............................................................................182

     B. Defendant Mischaracterizes Plaintiffs' Copyright Claims by Dissecting

     the Registered Work into Isolated Elements. .............................................27

     C. Defendant Improperly Narrows the Scope of the Registered Work.......30

D. Defendant's De Minimis Argument Cannot Be Resolved on the Pleadings.

........................................................................................................37

III. The SAC Pleads Recoverable Damages, Including Third-Party Enforcement

Expenses as Special Damages .................................................................35

IV. Plaintiffs' Third-Party Enforcement Damages Are Ripe ...................................38

V.  Plaintiffs Plausibly Allege Commercial Use Under Fla. Stat. § 540.08............46

VI. Plaintiffs' Third-Party Enforcement Expenses Are Special Damages, Not a

Basis to Stay This Action...................................................................51

VII. Plaintiffs Are Entitled to Recover Attorney's Fees Incurred in Responding to

This Motion…………………………………………………………………… 56

CONCLUSION ...............................................................................498

## TABLE OF AUTHORITIES

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ........................18

*Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308 (11th Cir. 2010); ..............9

*Bateman v. Mnemonics, Inc.*, 79 F.3d 1532 (11th Cir. 1996)..................................28

*Beal v. Paramount Pictures Corp.*, 20 F.3d 454 (11th Cir. 1994) ..........................40

*Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342 (S.D. Fla. 2018).......................53

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007)..........................18

*Benessere Investment Group, LLC v. Swider*, No. 24-CV-21104, 2025 U.S. Dist. LEXIS 167366 (S.D. Fla. Sep 4, 2025). ..............................................................44

*Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001)..................................................23

*Cesaire v. Tony*, No. 20-cv-61169, 2023 U.S. Dist. LEXIS 167366 (S.D. Fla. Sep. 20, 2023). ...............................................................................................................43

*CompuLife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020). .................27

*Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir. 1997). .......44

*Disney Enterprises, Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303 (S.D. Fla. 2011).39

*Eglin Fed. Credit Union v. Baird*, 400 So. 3d 643 (Fla. Dist. Ct. App. 2024). 19, 22

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007).......................................18

*Evans v. McClain of Ga., Inc.*, 131 F.3d 957 (11th Cir. 1997). .............................21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ..................... 23, 30

*Forman v. Morris*, No. 09-23029-CIV-MCALILEY, 2010 U.S. Dist. LEXIS 67434 (S.D. Fla. July 6, 2010) ......................................................................................30

*Fuentes v. Mega Media Holdings*, 721 F.Supp. 2d 1255 (S.D. Fla. 2010) ............48

*Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461 (Fla. Dist. Ct. App. 1971)...........................................................................................................19

*Hawthorne v. Mac Adjustment*, 140 F.3d 1367 (11th Cir. 1998) ...........................18

*Herzog v. Castle Rock Entm't*, 193 F.3d 1241 (11th Cir. 1999) ........................9, 35

*Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314 (11th Cir. 2016)................................................................................................................24

*Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404 (11th Cir. 2015).. 27, 31

*John Daly Enters., LLC v. Hippo Golf Co.*, 646 F. Supp. 2d 1347 (S.D. Fla. 2009) ........................................................................................................................49

*Keating v. City of Miami*, 598 F.3d 753 (11th Cir. 2010)........................................18

*Kirby Rambo Collections, Inc. v. Lee Cty.*, No. 2:18-cv-180-FtM-29CM, 2018 U.S. Dist. LEXIS 84709 (M.D. Fla. May 21, 2018). ...................................................30

*Leigh v. Warner Bros.*, 212 F.3d 1210 (11th Cir. 2000)..........................................35

*Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr.*, Inc., 130 F.4th 903 (11th Cir. 2025)....................................................................................................................44

*Live the Life Ministries, Inc. v. Pairs Found., Inc.*, No. 4:11cv194-WS/WCS, 2011 U.S. Dist. LEXIS 148499 (N.D. Fla. Sept. 27, 2011)................................... 30, 31

*Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641 (11th Cir. 2022) .. 51, 52, 53

*Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191 (11th Cir. 2009)................................................................................................. 52, 55

*Morali v. Mayan*, 377 So. 3d 1182 (Fla. 4th DCA 2024)................................. 20, 22

*MV Senior Mgmt.*, LLC v. Redus Fla. Hous., LLC, 319 So. 3d 66 (Fla. Dist. Ct. App. 2020)................................................................................................................40

*Oravec v. Sunny Isles Luxury Ventures*, L.C., 527 F.3d 1218 (11th Cir. 2008)23, 29

*Ounjian v. Globoforce, Inc.*, 89 F.4th 852 (11th Cir. 2023);...................................20

*Peter Letterese & Assoc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287 (11th Cir. 2008) ................................................................................................ 9, 36, 37

*Playboy Enters. v. Frena*, 839 F. Supp. 1552 (M.D. Fla. 1993) ...................... 26, 39

5

*Pony Exp. Courier Corp. of Fla. v. Zimmer*, 475 So. 2d 1316 (Fla. 2d DCA 1985). ..................................................................................................... 53, 54

*Rayburn v. Bright*, 163 So. 3d 735 (Fla. Dist. Ct. App. 2015 ). ..............................54

*Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342 (11th Cir. 2018). .................54

*Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371 (11th Cir. 2010) ...........................................................................................................................18

*Trujillo v. Conover & Co. Commc'ns*, Inc., 221 F.3d 1262 (11th Cir. 2000) . passim

*Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802 (Fla. 2005) .......... 46, 48, 50

**Statutes**

17 U.S.C § 410(c) ..................................................................................................21

17 U.S.C. § 101 .....................................................................................................31

17 U.S.C. § 102(a) .................................................................................................29

17 U.S.C. § 106(1) .................................................................................................24

17 U.S.C. § 106(5) .................................................................................................24

17 U.S.C. § 412. .....................................................................................................39

Fla. Stat. § 540.08 ........................................................................................... 41, 45

**Other Authorities**

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 313 (3d ed. 2021) ................................................................................................................29

**Rules**

Local Rule 7.1(F) ...................................................................................................51

N.D. Fla. Loc. R. 7.1(B) ........................................................................................13

**Regulations**

37 C.F.R. § 202.1(a) .............................................................................................. 29

**INTRODUCTION**

Jerry L. Furlong Junior ("Furlong") is a small business owner who set out to rebrand his financial advisory firm. The firm, previously named Furlong Financial Group, PLLC ("FFG"), engaged PHOS Creative ("PHOS") in January 2023 for the rebrand. The goal was to develop a unique brand identity for what would later become Tenzing Financial Advisors, PLLC ("Tenzing"), as outlined in the written agreement between FFG and PHOS (the "Agreement") in Plaintiffs Second Amended Complaint (the "SAC"). SAC ¶¶ 22–29, Ex. A.

PHOS assigned one of its employees, Duncan Way ("Way" or "Defendant"), to be the creative lead on the project. Furlong and Way met on several occasions, with Furlong sharing details about his journey, his business, and his vision with Way. Drawing on those discussions, and pursuant to the Agreement, Way and PHOS (collectively, the "Defendants") pitched the Tenzing brand, including the Tenzing Branding Guide.

Under the Agreement, the brand assets PHOS created for and pitched to Furlong and his business were owned by the Plaintiffs. As a work made for hire, use of any of Plaintiffs' assets by the Defendants should have ended after the Defendants delivered the Tenzing Branding Guide to Plaintiffs. Instead, Way willfully reproduced substantial portions of the Tenzing Branding Guide on his personal website without authorization, including descriptions of the creative process behind

the work, to promote his own branding and design services. This kind of unauthorized use was not contemplated by nor contracted for in the Agreement.

Defendant's Motion to Dismiss ("MTD" or "Motion") is a fictional story about what happened between Furlong, Way, PHOS, and Tenzing (the "Parties").

In the MTD, Defendant discards well-settled copyright law in an attempt to encourage the Court to isolate elements of the Tenzing Branding Guide and ignore the work as a whole. Defendant asks the Court to resolve, on the pleadings, fact-intensive issues of filtration, substantial similarity, and *de minimis* use, that Eleventh Circuit cases address only after careful review of the protected expression and the allegedly infringing use. *See Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1314–17 (11th Cir. 2010); *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247–48 (11th Cir. 1999). Any *de minimis* analysis must account for both the quantitative and qualitative significance of what was copied, not just Defendant's characterization of the amount taken. *See Peter Letterese & Assocs., Inc. v. World Inst. of Scientology Enters., Int'l*, 533 F.3d 1287, 1303, 1307 (11th Cir. 2008). Defendant asks the court to resolve on the pleadings fact-intensive issues in relation to commercial exploitation of Furlongs name and damages.

The MTD should be denied in its entirety. Accepting all well-pleaded factual allegations as true, there are no grounds upon which to dismiss the SAC. Defendant again makes the same arguments as the first motion to dismiss, arguments fraught

with factual defenses rather than arguments properly raised for a Rule 12 Motion. Therefore, dismissal is inappropriate and not supported by either the legal or factual realities of this case.

## FACTUAL BACKGROUND

### A. The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940

FFG entrusted PHOS, a professional creative and branding agency, to develop the new brand identity that became the TENZING brand. FFG invested substantial resources and shared confidential business information, strategic objectives, and proprietary concepts with the expectation that PHOS would create proprietary intellectual property that would belong exclusively to Plaintiffs. PHOS was retained not merely to design branding materials, but to create valuable brand assets that Plaintiffs would own and use as the foundation of their business.

Pursuant to the Agreement, PHOS delivered three categories of work product: (i) Name Identification and Selection; (ii) a Brand Plan; and (iii) Logo Design and a Brand Package. SAC ¶ 33, Ex. A. The Agreement provided that all deliverables, technical information, and intellectual property developed in connection with the project, are assigned to FFG. SAC ¶¶ 37, 89; Ex. A. FFG ultimately assigned the same to Tenzing. SAC ¶ 40 Ex. C. The Agreement contains no language granting PHOS or any employee a license to use, promote, or publish any of the intellectual

property created pursuant to the Agreement. SAC ¶ 90. PHOS retained no rights in the Intellectual Property assigned to Plaintiffs.

PHOS assigned Way as the lead employee responsible for the Tenzing rebrand. SAC ¶¶ 30–32. Way acted as PHOS's primary representative on the engagement and was entrusted by PHOS with responsibility for developing the Tenzing Branding Guide. Way personally presented logos and brand-design concepts to Furlong, routinely met with Furlong, was privy to Furlong's confidential business information, and was responsible for the creative design ultimately assigned to Plaintiffs. *Id*. As an employee of PHOS, Way had access to the registered Tenzing Branding Guide.[1]SAC ¶ 62.

PHOS delivered the brand identity in the spring of 2023, and Plaintiffs launched the TENZING brand later that year. SAC ¶¶ 38–39. Sometime thereafter, Way, without Plaintiffs' consent and in violation of the Agreement, published portions of the Tenzing Branding Guide on his personal website (the "Portfolio"). SAC ¶¶ 50, 56–67, Ex. G. Way's website featured the heart of the Tenzing Branding Guide, including the final Tenzing logo, three alternate logo designs, three mood boards, design language used to create the logo, and six reproduced pages from the Tenzing Branding Guide. Way's website also included commentary describing the brand-development process, the rationale behind the Tenzing name, and the design

10

process, color, and typographic choices, as well as confidential conversations between Way and Furlong about the reasons for Furlong's rebrand. SAC ¶¶ 47–53, Ex. G. Way's publication remained publicly available without Plaintiffs' knowledge or consent until Plaintiffs independently discovered the infringement in September 2025.

On October 13, 2025, Plaintiffs filed a copyright application for the Tenzing Branding Guide. Because October 1, 2025, through November 12, 2025, the Copyright Office was closed and was not reviewing new or current applications. Plaintiffs paid for special handling and expedited registration in anticipation of this litigation.

## B. Way's Infringement

In September 2025, while conducting an SEO search for Tenzing Financial, Furlong discovered the Tenzing Branding Guide, and his name and story, published on Way's website. Upon reviewing Way's website, including his resume and LinkedIn, Plaintiffs discovered that Way held himself out as a full-time employee at PHOS. SAC ¶ 106; Ex. J.

On October 23, 2025, Plaintiffs sent PHOS a cease-and-desist letter demanding that PHOS and employees, including Way, remove all Tenzing-related materials from Way's website. SAC ¶ 68; Ex. J. During this time, Way held himself out as an employee of PHOS, both on his LinkedIn and personal resume listed on

11

his website. SAC ¶ 106; Ex. J. PHOS, exercising control over Way, responded by email to Plaintiffs that they had instructed Way to remove the infringing use of Tenzing's Branding Guide from his personal website. SAC ¶¶ 69–70; Ex. K. PHOS did not indicate that Way acted outside the scope of his employment, lacked authority to direct him, or disclaim responsibility. Instead, PHOS exercised its authority by directing Way to remove the infringing content, thereby demonstrating that PHOS possessed and exercised authority over Way's conduct concerning the Tenzing Branding Materials.

Around the same time, Plaintiffs identified, Tenzing Financial, LLC ("Tenzing VA"), another financial-services firm operating under an identical company name, a nearly identical logo, and substantially similar colors, font, and design language. Accordingly, Plaintiffs since incurred substantial resources protecting their intellectual property in a separate enforcement action. SAC ¶¶ 72–76, 82.

## C. Commencement of this Action

Plaintiffs filed the original Complaint on January 7, 2026, while their copyright application was pending and during a federal government shutdown that delayed Copyright Office processing. Nonetheless, Plaintiffs paid for expedited processing in anticipation of this litigation. On January 16, 2026, the Copyright Office issued Registration No. TX 9-553-940 for the Tenzing Branding Guide,

claiming both "text" and "artwork." SAC ¶ 45, Ex. D. Plaintiffs thereafter filed the First Amended Complaint ("FAC") on March 12, 2026, after the registration issued, asserting claims for breach of contract, copyright infringement, and unauthorized publication of name or likeness. Following the Court's grant of leave to amend, Plaintiffs filed the operative Second Amended Complaint ("SAC") on May 20, 2026, asserting the same causes of action and incorporating amendments intended to address the deficiencies identified by Defendants during the meet and confer prior to the filing of their prior motions to dismiss. ECF No. 42.

After the SAC was filed, Plaintiffs anticipated that Defendants would answer the operative pleading. Instead, on June 2, 2026—the eve of their responsive pleading deadline—Defendants initiated another meet-and-confer concerning a new motion to dismiss the SAC. Way subsequently filed the instant Motion, raising many of the same arguments asserted in their prior motion despite Plaintiffs' amendments and the Court's Order granting leave to amend and denying the prior motions to dismiss. Plaintiffs are now again required to respond to arguments that largely mirror those already raised. To date, Defendants have not answered any version of Plaintiffs' Complaint. At this stage, Plaintiffs need only plausibly allege their claims, and they have done so.

## LEGAL STANDARD

13

To survive a Fed. R. Civ. P. 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The court generally is limited in its review to the "four corners of the complaint," *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) and must accept all well-pleaded factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007). The court does not make factual determinations in evaluating a motion to dismiss. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). If the complaint's allegations are plausible under the alleged facts, then the court must view them in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). In reviewing a 12(b)(6) motion, the court must draw all reasonable inferences in the plaintiff's favor. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

## ARGUMENTS

### I.    Dismissal of Count I Against Way Is Improper

Plaintiffs allege, and the Agreement reflects, that PHOS assigned to Plaintiffs the entire right, title, and interest in all Intellectual Property resulting from PHOS's activities under the Agreement, including the creation of Intellectual Property relating to the deliverables and copyrightable works made for the client. SAC ¶ 37, 89-90. Plaintiffs further allege that Tenzing is the exclusive owner of the Tenzing

14

Branding Guide and associated derivative works. SAC ¶ 97. Way, without authorization, admittedly reproduced and publicly displayed substantial portions of those client-owned materials on his personal website to promote his own design services. SAC ¶¶ 50, 53, 56-60, 63-64, Ex. G.

Way argues Count I fails because he is not named in the Agreement, did not sign it, and was merely a PHOS employee. Def.'s MTD at 10–13. But that argument takes too narrow a view of Plaintiffs' theory and asks the Court to resolve factual inferences against Plaintiffs at the pleading stage. Under Florida law, mutual assent may be shown not only by signatures, but also by the parties' acts, conduct, and performance. *See Eglin Fed. Credit Union v. Baird*, 400 So. 3d 643, 646–47 (Fla. Dist. Ct. App. 2024); *see also Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461, 463–64 (Fla. Dist. Ct. App. 1971). A written contract may be enforceable despite the absence of a party's signature where other facts and circumstances establish assent. *Gateway*, 253 So. 2d at 463–64.

Plaintiffs do not seek to hold Way liable merely because he worked for PHOS, nor do they contend that every PHOS employee assumed PHOS's contractual obligations. Def.'s MTD at 13. Rather, the SAC alleges that Way was directly involved in the contractual relationship. He met with Furlong about the rebrand, presented logos, design concepts, and the brand style guide, directed the PHOS team, obtained access to the Tenzing Branding Guide through that engagement, and later

15

reproduced and displayed those same materials on his personal website for promotional benefit. SAC ¶¶ 30–32, 50, 58–63. Way's MTD also acknowledges that PHOS apprised its design team, including Way, of the deliverables due under the Agreement. Def.'s MTD at 4. That context supports a reasonable inference that Way had notice of the client-specific deliverables and restrictions on their use.

Taking those allegations as true and drawing reasonable inferences in Plaintiffs' favor, the Court should not resolve against Plaintiffs at the pleading stage whether Way's conduct, knowledge, and use of the client-owned deliverables are sufficient to support a contract-based theory of liability. *See Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 857 (11th Cir. 2023); s*ee also Morali v. Mayan*, 377 So. 3d 1182, 1184–85 (Fla. 4th DCA 2024) (explaining that a motion to dismiss is limited to the four corners of the complaint, reasonable inferences must be drawn in the plaintiff's favor, and assent may be shown by facts, circumstances, words, conduct, or performance despite the absence of a signature).

Way's employee-liability authorities do not resolve the issue presented here and are rather defenses that are to be flushed out with factual evidence discovered during the discovery phase of litigation. The cases cited by Defendant Way also argues that the SAC fails because Plaintiffs do not plead a separately labeled "alternative theory of personal liability." Def.'s MTD at 11–13. But Rule 8 does not require Plaintiffs to plead the "precise theory giving rise to recovery." *Evans v.*

16

*McClain of Ga., Inc.*, 131 F.3d 957, 964 n.2 (11th Cir. 1997). It is enough that the complaint gives Way notice of the claim asserted against him and the grounds on which it rests. *Id*. The SAC does so by alleging Way's direct involvement in the PHOS engagement and his later unauthorized use of the same branding deliverables for his own promotional benefit. SAC ¶¶ 30–32, 50, 58–63.

Way is correct that mutual assent cannot exist unless the offeree had notice of the offer. *Eglin*, 400 So. 3d at 646. But that principle does not entitle Way to dismissal based on his own factual assertion that he "did not even know the essential terms of the Agreement until he was served with the Complaint." Def.'s MTD at 11. At a minimum Plaintiff is entitled to challenge this theory, as Way was seemingly in charge of this the negotiated "offer" and according to PHOS in their MTD there is an employee handbook also giving rise to certain obligations of Way as an employee not to infringe on rights of clients. In weighing Rule 12(b)(6), the Court tests the sufficiency of the SAC, not Way's competing factual account or unevidenced defenses, and where a complaint alleges facts from which assent may be inferred despite the absence of a signature, dismissal is improper. *See Morali*, 377 So. 3d at 1184–85.

At minimum, if the Court concludes the SAC still does not allege Way's personal notice of and assent to the Agreement's restrictions with sufficient

17

specificity, dismissal should be without prejudice and with leave to amend, not with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163–65 (11th Cir. 2001).

## II.    Plaintiffs Plausibly Plead a Claim for Copyright Infringement against Way

### A. The Plaintiffs Own a Valid Copyright, and Way Directly Infringes Plaintiffs' Copyright.

Taking Plaintiffs' allegations as true, as the Court must, the SAC plausibly states a claim for direct copyright infringement against Way. To state such a claim, a plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1223 (11th Cir. 2008).

First, in any judicial proceeding, the certificate of registration made before or within five years after first publication of the work constitutes *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate. 17 U.S.C § 410(c). No party disputes that Plaintiffs possess a valid copyright registration for the Tenzing Branding Guide, Reg. No. TX 9-553-940.

The second element may be shown either through direct proof of copying or, if direct proof is unavailable, by showing that the defendant had access to the copyrighted work and that the works are substantially similar. *Home Design Servs. v. Turner Heritage Homes, Inc.*, 825 F.3d 1314, 1321 (11th Cir. 2016).

This is a case of direct copying, and the SAC makes that clear. SAC ¶¶ 50, 53, 59–60, 100; Ex. G. Consider the following:

| Plaintiffs' Copyright Reg. TX 9-553-940 | Material Published on Way's Website |
|---|---|
|  | |





Way admittedly reproduced pages of the Tenzing Branding Guide on his own personal website in direct violation of Plaintiffs' exclusive rights, including the right to reproduce and display those works. 17 U.S.C. § 106(1), (5); *see also Playboy Enters. v. Frena*, 839 F. Supp. 1552, 1556-7, 1559 (M.D. Fla. 1993) (unauthorized uploading and display of copyrighted photographs infringed the copyright owner's rights). Accordingly, Plaintiffs plausibly allege direct copyright infringement, and dismissal is inappropriate.

Defendant invokes the Eleventh Circuit's abstraction-filtration-comparison framework and asks this Court to filter out the vast majority of the Tenzing Branding Guide at the pleading stage. Def.'s MTD at 15–20. Defendant's framing materially overstates copyright law and ignores the procedural posture of this case.

It is well settled in the Eleventh Circuit that "[w]hether a work is sufficiently original to merit copyright protection is a question of fact." *Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, 1409 (11th Cir. 2015). Originality is a "low bar," requiring only "independent creation" and "a modicum of creativity." *Id*. And, as the Supreme Court has explained, "the requisite level of creativity is extremely low; even a slight amount will suffice." *Id*. It is incorrect to resolve the "originality" of the Tenzing Branding Guide and related brand materials in Defendant's favor at the pleading stage.

The same principle applies to filtration. Although Defendant cites *CompuLife Software Inc. v. Newman* for the proposition that filtration may be a question of law or, at least mix question of law or fact it does not support dismissal at the pleading stage In *CompuLife*, the Eleventh Circuit reviewed a judgment entered after a bench trial, not a Fed. R. Civ. P. 12(b)(6) dismissal, and remanded because the court had failed to make necessary findings regarding factual copying, filtration, protectability, and substantial similarity. *CompuLife Software Inc. v. Newman*, 959 F.3d 1288, 1309 & n.12 (11th Cir. 2020).

The determination of what aspects of a creative work constitute protectable expression, the scope of any resulting protection, and whether allegedly copied material is substantially similar to protected expression are fact-intensive, or at minimum mixed law-and-fact, inquiries not suitable for resolution on a motion to

22

dismiss. *See Bateman v. Mnemonics, Inc.*, 79 F.3d 1532, 1543–46 (11th Cir. 1996); *see also CompuLife*, 959 F.3d at 1303–04 & n.7.

## B. Defendant Mischaracterizes Plaintiffs' Copyright Claims by Dissecting the Registered Work into Isolated Elements.

As stated above, the Defendant argues that the components of the Tenzing Branding Guide are uncopyrightable as a matter of law because they allegedly consist of "colors, typography, ideas, short phrases, concepts, and branding attributes." Def.'s MTD at 20. But Plaintiffs' claim is based on Way's unauthorized reproduction and public display of protected expression from the registered Tenzing Branding Guide assigned to and incorporated into or reflected in the Registered Work. SAC ¶¶ 47, 50, 53, 56-60, 89-90, 97, 100.

Way's infringement is not merely substantial similarity; it is the unauthorized, exact reproduction of the heart of the Tenzing Branding Guide. Plaintiffs' claim is much simpler than Defendant contents. Specifically, as alleged in the SAC and shown in the table above, Way posted exact pages from the Tenzing Branding Guide, including the Tenzing Brand Style Guide, Color Palette, Brand Attributes, Whitespace, Typography, and Voice & Tone pages, as well as portions of the Logo Lockups, mood boards, and logo iterations created for Plaintiff and derived from the Tenzing Branding Guide. SAC ¶ 53, Ex. G. Those materials are contained within the deposit submitted to the Copyright Office and falls within the scope of Registration No. TX 9-553-940. SAC ¶¶ 42-45; Ex. D.

23

Defendant attempts to evade this straightforward claim by zooming out from the Registration as far as possible and improperly isolating individual elements from the Registration rather than evaluating the Registration as a whole. The SAC does not allege that Way copied isolated elements of the Registration; it alleges that he copied and publicly displayed the heart of the Tenzing Branding Guide by reproducing exact pages and branding materials assigned to Plaintiffs under the Agreement and the registered work. SAC ¶¶ 3, 50, 53, 61, 106. Accordingly, the relevant inquiry is whether the materials posted on Way's website are contained within the Tenzing Branding Guide and therefore fall within the scope of the Registration. They are.

It is fundamental copyright law that even where certain elements may not qualify for protection standing alone, copyright protection may extend to the original selection, coordination, and arrangement of those elements within a larger creative work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348-59 (1991). In applying that rule, this District has recognized that "a work may be copyrightable even though it is entirely a compilation of unprotectible elements," and that "a combination of non-protectible common geometric shapes and other common features may be sufficiently original to be appropriate for copyright protection." *Live the Life Ministries, Inc. v. Pairs Found., Inc.*, No. 4:11cv194-WS/WCS, 2011 U.S. Dist. LEXIS 148499, at *24 (N.D. Fla. Sept. 27, 2011). There, the court found

protectable expression in the plaintiff's selection and arrangement of common graphic and textual elements, including the "choice of silhouettes coupled with the arrangement of the concepts" between them. *Id*. at *28.

The Copyright Office likewise recognizes that a work containing uncopyrightable material may nevertheless qualify for copyright protection where "the work as a whole contains other material that qualifies as an original work of authorship," including through the "selection, coordination, and/or arrangement" of otherwise uncopyrightable elements. U.S. Copyright Office, *Compendium of U.S. Copyright Office Practices* § 313 (3d ed. 2021); *see also* 17 U.S.C. § 102(a); 37 C.F.R. § 202.1(a). Even if certain elements of the Tenzing Branding Guide are not protectable in isolation, that does not defeat protection for the registered work as a whole. *See Home Legend, LLC v. Mannington Mills, Inc.*, 784 F.3d 1404, (11th Cir. 2015).

Accordingly, Way's copyrightability and filtration arguments do not provide a basis for dismissal at the pleading stage.

## C. Defendant Improperly Narrows the Scope of the Registered Work.

Defendant separately argues that Plaintiffs' claims fail as to the mood boards and logo iterations because those works were not separately registered with the Copyright office, either individually or as part of the Tenzing Branding Guide registration. Def.'s MTD at 17.  That argument rest on a disputed factual premise.

25

The SAC expressly alleges that Way "created the branding materials while employed by Phos" and that the "branding materials assigned to Plaintiff under the Agreement are registered with the United States Copyright Office as Registration No. TX9-553-940 (collectively, the 'Tenzing Branding Guide')." SAC ¶ 3. Defendant ignores this definition and substitutes its own narrow definition of the Tenzing Branding Guide. At the pleading stage, however, the Court must accept Plaintiffs' allegations regarding the scope of the registered work as true and draw all reasonable inferences in Plaintiffs' favor. Defendant's contrary assertion—that the Registration excludes branding materials like the logo iterations and mood boards identified in the SAC raises a factual dispute that cannot be resolved on a motion to dismiss.

The definition of the Tenzing Branding Guide as alleged in the SAC and noted above is reinforced by the Agreement. The Agreement broadly assigns all intellectual property to Plaintiffs "all Intellectual Property resulting from PHOS' activities under this Agreement" and "all Intellectual Property relating to any Deliverables under this Agreement." SAC ¶¶ 37, 89; Ex. A. These provisions of the Agreement (incorporated therein below) are consistent with Plaintiffs' allegation that the Tenzing Branding Guide encompasses the branding materials created during the engagement, including logo concepts, iterations, and related branding assets. SAC ¶¶ 37, 89; Ex. A.

26

Way himself admits that he "created several logo types to cover a range of uses and contexts and packaged them with an extensive brand guideline." SAC ¶ 63; Ex. G.  He further represented on his website that viewers could see "the mood boards, logo concepts, final logos, and some of the brand guidelines below." *Id.* These admissions directly contradict Defendant's attempt to separate the mood boards and logo iterations from the Tenzing Branding Guide. By Defendant's own description, the materials posted on Way's website were created as part of the same branding package and were displayed together with the brand guidelines. Those admissions plausibly support Plaintiffs' allegation that the mood boards and logo iterations were embodied in, incorporated into, or derivative of the registered Tenzing Branding Guide.

Moreover, as shown in the chart below, several of the logo iterations Defendant claims were not registered as part of the Tenzing Branding Guide appear within the deposit materials submitted with Registration and correspond directly to logos displayed on Ways' website. At a minimum, the chart plausibly supports Plaintiffs' allegation that the challenged logo iterations fall within the scope of the Registered Work.

| Plaintiffs' Copyright Reg. TX 9-553-940<br><br>SAC Ex. D | Material Published on Ways Website<br><br>SAC Ex. G |
|---|---|
| | |
| | |
| | |

28






HORIZONTAL LOCKUP



Display the Format Pane



RAYMOND JAMES

STACKED LOGO LOCKUP



Although the SAC describes aspects of the branding process, it does not establish that the specific mood boards and logo iterations displayed on Defendant's website are the same preliminary materials originally presented to Plaintiff. Defendant therefore asks the Court to infer that the displayed materials necessarily predated—and could not have been derived from—the Registered Work. That inference is not compelled by the SAC. The timing, development, and relationship of those materials to the Tenzing Branding Guide are factual matters that Plaintiff must determine through discovery. Whether the materials displayed on Defendant's website are embodied in, incorporated into, derivative of, or otherwise fall within the scope of the Tenzing Branding Guide presents factual questions that cannot be resolved on a motion to dismiss. *See Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1229-30 (11th Cir. 2008).

Defendant's contrary position asks the Court to construe the scope of the Registration and draw inferences in Defendant's favor, all of which are improper under Rule 12(b)(6).

### D. Defendant's De Minimis Argument Cannot Be Resolved on the Pleadings.

Defendant Way argues that, even assuming the Tenzing Branding Guide contains protectable expression, his publication was *de minimis* as a matter of law

and therefore cannot support a finding of substantial similarity. Def.'s MTD at 19–23. That argument is misplaced.

Substantial similarity, and the related *de minimis* inquiry, are generally questions of fact. *Leigh v. Warner Bros.*, 212 F.3d 1210, 1215 (11th Cir. 2000). Accordingly, even if that standard permits resolution of substantial similarity at summary judgment, dismissal at the pleading stage is nonetheless inappropriate here, where Plaintiffs allege literal reproduction of registered materials. *See Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1247 (11th Cir. 1999). Defendant's de minimis argument depends on disputed issues regarding filtration, protectability, quantitative significance, qualitative significance, and whether the copied materials constitute the "heart" of the Tenzing Branding Guide. Those issues cannot be resolved against Plaintiffs on a Rule 12(b)(6) motion and are properly raised after discovery in a factual evidenced defense argument.

The *de minimis* doctrine requires the Court to assess copying "with respect to both the quantitative and qualitative significance of the amount copied to the copyrighted work as a whole." *Peter Letterese*, 533 F.3d at 1307. The SAC plausibly alleges both quantitatively and qualitatively significant copying of the heart of the Tenzing Branding Guide. SAC ¶¶ 3, 50, 53, 61, 106; Ex. G. Defendants' competing assertion that the copied materials were not the heart of the work merely raises a factual dispute inappropriate for resolution on a motion to dismiss.

Quantitatively, Defendant concedes that he displayed the final Tenzing logo, three alternate logos, three mood boards, and reproduced six pages from the Tenzing Branding Guide. Def.'s MTD at 20.  Defendant attempts to minimize that copying by arguing that six pages represent less than one quarter of the Branding Guide and by reducing the work to purportedly "protectable" sentences and words. Def.'s MTD at 19–20. But Defendant's percentages depend on Defendant's own filtration analysis and assumptions about what should be excluded. The relevant inquiry is not arithmetic alone, but whether the copied material was quantitatively and qualitatively significant to the copyrighted work as a whole. *See* Peter Letterese, 533 F.3d at 1307.

Defendant also contends that Plaintiffs have not plead facts supporting their allegation that the "heart" of the Tenzing Branding Guide was copied. That is incorrect. The SAC identifies the copied materials, including the final logo, alternate logo designs, mood boards, design language, brand attributes, color palette, name-development narrative, and six reproduced pages from the Guide. SAC ¶¶ 50–55, 59–61, 63, 106; Exs. D, G. Those materials are alleged to define the Tenzing brand identity; they are not incidental pieces of the Guide.

From those allegations and exhibits, Plaintiffs have plausibly alleged that Defendant reproduced the very branding materials PHOS was retained to create for Plaintiffs. Way then displayed those same materials on his commercial website to

showcase the Tenzing rebrand and the branding work performed for Plaintiffs. In that context, the copied materials were not incidental or insignificant; they embodied the creative work product Plaintiffs commissioned and paid for and formed the foundation of the new Tenzing brand identity. These allegations plausibly support the fact that Way copied the qualitative heart of the work. *See Harper & Row, Publrs. v. Nation Enters.,* 471 U.S. 539, 564‑66 (1985) (finding copying qualitatively significant where the copied portion, though quantitatively small, captured "the heart of the book").

Defendant argues that the presence of "[CLIENT]" in the registered deposit demonstrates that the Tenzing Branding Guide language is generic or boilerplate. But the placeholder appears only on pages 22 and 23 of the Tenzing Branding Guide—pages that Defendant did not reproduce or display on his website. SAC ¶ 53; Ex. G. The existence of placeholder language on non-copied pages has no bearing on whether the six pages reproduced by Defendant contain original expression or constitute the qualitative heart of the copyrighted work. Nor may Defendant defeat Plaintiffs' allegations by speculating that the copied materials "likely appear in branding guidelines for multiple PHOS clients." Def.'s MTD at 21.

Defendant attempts to persuade the Court that the copied pages were qualitatively insignificant, because they were displayed as small thumbnails and

were allegedly of "low resolution," "low clarity" and "low readability." That argument is unavailing and not supported by law. The relevant inquiry is whether the copied materials were quantitatively and qualitatively significant to the copyrighted work, not whether Defendant displayed them in a particular size or resolution on his website or the purpose for which Defendant chose to display them in that manner. Copyright infringement turns on the authorized reproduction of protected expression, not on a defendant's intent or purpose in reproducing protected expression. *See Disney Enterprises, Inc. v. Hotfile Corp.*, 798 F. Supp. 2d 1303, 1307 (S.D. Fla. 2011) ("copyright is a strict liability statute"); *Playboy Enter., Inc.*, 839 F. Supp. at 1559 ("Intent to infringe is not needed to find copyright infringement. Intent or knowledge is not an element of infringement, and thus even an innocent infringer is liable for infringement"). It is simply illogical to imagine that a party may circumvent copyright infringement because the image appears in a different resolution. In any event, whether the "resolution" rendered the use insignificant cannot be decided without the type of side-by-side comparison the case law contemplates, but only after a development of the record. *See Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 459-60 (11th Cir. 1994).

Drawing all reasonable inferences in Plaintiffs' favor, as the Court must at this stage, the SAC plausibly alleges more than *de minimis* copying.

34

### III. The SAC Pleads Recoverable Damages

Way's request to dismiss Plaintiffs' damages theory should be denied. Plaintiffs do not assert the wrongful-act doctrine as a standalone cause of action. Rather, Plaintiffs seek third-party enforcement fees, costs, and expenses as special damages flowing from Way's alleged wrongful conduct.

Under Florida law, the wrongful-act doctrine does not create a separate cause of action; it permits recovery of third-party litigation expenses as an element of damages where a defendant's wrongful conduct causes the plaintiff to become involved in litigation with a third party to protect its interests. *See James Ventures, L.P. v. Timco Aviation Servs., Inc.,* No. 06-60420-CIV, 2007 U.S. Dist. LEXIS 5102, at *1 (S.D. Fla. Jan. 24, 2007); *MV Senior Mgmt., LLC v. Redus Fla. Hous., LLC,* 319 So. 3d 66, 67 (Fla. Dist. Ct. App. 2020).

Rule 12(b)(6) does not permit dismissal of a listed category of potential damages where the facts pled plausibly support that relief. The SAC pleads facts supporting those damages. Plaintiffs allege that Way reproduced and publicly displayed Plaintiffs' proprietary branding materials without authorization, including portions of the Tenzing Branding Guide, logo concepts, mood boards, design language, and narrative explanation of the Tenzing brand. SAC ¶¶ 47–60, 100, Ex. G. The SAC further alleges that, after Way's unauthorized publication, Plaintiffs discovered Tenzing VA operating under an identical name and using substantially

similar branding, and that Tenzing VA's third-party marketing agency used Plaintiffs' materials in developing Tenzing VA's brand. SAC ¶¶ 72–82. As a result, Plaintiffs allege they were forced to expend substantial time, resources, fees, and costs enforcing their intellectual-property rights in a separate action against Tenzing VA. SAC ¶¶ 82, 95; Paragraph D of the Prayer for Relief.

Way's causation arguments, intervening third-party conduct, and the ultimate recoverability of those fees are factual and damages issues. They are not grounds to dismiss or strike a category of damages under Rule 12(b)(6). At this stage, Plaintiffs need not prove that Tenzing VA or its agency copied Plaintiffs' materials after viewing Way's website. The question is whether the SAC plausibly alleges that Way's conduct caused Plaintiffs to incur third-party enforcement expenses. It does. Whether Plaintiffs can ultimately prove that causal connection is a factual issue for discovery, not dismissal.

Florida law recognizes that third-party litigation expenses may be recoverable as damages where a defendant's wrongful conduct causes the plaintiff to become involved in litigation with a third party to protect its interests. *See Pony Exp. Courier Corp. of Fla. v. Zimmer*, 475 So. 2d 1316, 1318 (Fla. 2d DCA 1985). Florida courts treat those expenses as special damages, not as a separate cause of action or ordinary prevailing-party fee request. *See Rayburn v. Bright*, 163 So. 3d 735, 736–37 (Fla. 5th DCA 2015). Here, Plaintiffs pled the substance of that

36

special-damages theory: they identified the Tenzing VA dispute, alleged that Way's unauthorized publication contributed to the circumstances requiring third-party enforcement, and expressly requested the resulting fees, costs, and expenses as special damages.

Way's § 412 argument does not justify dismissal of Plaintiffs' special-damages request. Paragraph D of the Prayer for Relief does not seek statutory damages or prevailing-party fees under the Copyright Act; it seeks third-party enforcement expenses as special damages caused by Way's alleged wrongful conduct. Section 412 limits statutory damages and § 505 fees for certain preregistration infringements, but it does not bar independent special damages. 17 U.S.C. § 412.

The SAC plausibly alleges that Way publicly disseminated Plaintiffs' protected materials, that Tenzing VA later used substantially similar branding, and that Plaintiffs incurred third-party enforcement expenses as a result. SAC ¶¶ 73–87. Those allegations are sufficient at the pleading stage. *Cesaire v. Tony*, No. 20-cv-61169, 2023 U.S. Dist. LEXIS 167366, at *5 (S.D. Fla. Sep. 20, 2023).

Accordingly, because the SAC plausibly pleads third-party enforcement expenses as special damages tied to Plaintiffs' substantive claims, Way's request to dismiss that damages theory should be denied.

## IV. Plaintiffs' Third-Party Enforcement Damages Are Ripe

Ripeness turns on whether the dispute is fit for judicial decision and whether withholding review would work hardship. *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir. 1997). A claim is unripe only when it rests on contingent future events that may not occur. *Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.,* 130 F.4th 903, 910 (11th Cir. 2025).

Way's ripeness argument confuses uncertainty about the amount and recoverability of damages with uncertainty about present injury. Plaintiffs do not seek recovery for a hypothetical future obligation. They allege that Way's conduct already forced them to expend time and resources, including fees and expenses, enforcing their intellectual property rights against Tenzing VA. SAC ¶¶ 72–82, 95; Paragraph D of the Prayer for Relief. That is a present economic injury, not a speculative future harm.

The pending Tenzing VA litigation affects only the amount of Plaintiffs' damages, not whether a live controversy exists now. At the pleading stage, allegations that Plaintiffs have already incurred third-party enforcement expenses are sufficient. *See Benessere Investment Group, LLC v. Swider*, No. 24-CV-21104, 2025 U.S. Dist. LEXIS 167366, at *27-29 (S.D. Fla. Sep 4, 2025).

Ripeness does not depend on Plaintiffs' ultimate success in the Tenzing VA litigation. Plaintiffs ask only to preserve a damages category allegedly caused by

Way's conduct, not to have this Court decide the Virginia action. Whether Plaintiffs can prove causation, amount, or recoverability is for a later stage.

Paragraph D of the Prayer for Relief is ripe because it is based on present, already-incurred economic loss, not a future contingency. The remaining uncertainties concern the amount and proof of damages, which are not grounds for dismissal.

## V. Plaintiffs Plausibly Allege Commercial Use Under Fla. Stat. § 540.08.

Defendant's argument fails because it ignores the allegations of the SAC Under § 540.08, the relevant inquiry is whether the Defendant used Furlong's name or identity to "directly promote the product or service of the publisher." *Tyne v. Time Warner Entm't Co., L.P.*, 901 So. 2d 802, 806 (Fla. 2005). That answer is yes. At this stage, Plaintiffs need not prove that Defendant's use ultimately violated § 540.08; Plaintiffs need only plausibly allege facts supporting a reasonable inference that Defendant used Furlong's identity for a commercial or advertising purpose. The SAC does exactly that.

Defendant himself refers to his website as a professional portfolio. Def.'s MTD at 28. Defendant states that "Way was proud of the work he had done on the Tenzing project, so sometime after Tenzing's rebrand went live, Way included the project on his portfolio website, explaining in greater detail his design process for Tenzing" and "The Portfolio was a professional website showcasing Way's design

39

process across multiple client engagements." Def.'s MTD at 1, 4-5. Defendant thus effectively concedes that the Portfolio was intended to showcase his professional capabilities to prospective clients.

The SAC alleges that Way featured Furlong's identity, business story, and project narrative on that Portfolio. SAC ¶¶ 50-55, 58; Ex. G. The "Portfolio" introduced "Jerry, the owner of Tenzing Financial Advisors," described his mission and the development of the Tenzing name, and detailed Way's branding process and creative contributions. *Id*. It was not a private archive; it was a professional website showcasing Way's branding and design work to prospective clients and included a contact page for branding services. SAC ¶¶ 59–64; Ex. I. Within the Portfolio, Way described Furlong's business goals, the Tenzing brand strategy, and his own creative contributions in detail. Way repeatedly highlighted his role in the project, including that "I brought the Tenzing name to Jerry and my team," "I presented three mood-boards," "I explored logo concepts," and "I explored mountain and letter-based iconography." SAC ¶¶ 50–55, 58, 63; Ex. G. Viewed in context, Way did not merely identify Furlong as a former client; he used Furlong's identity, business story, and project narrative to demonstrate his expertise, advertise his design capabilities, attract prospective clients, and generate business. These allegations plausibly support an inference that Way used Furlong's identity for a commercial or advertising purpose under § 540.08.

40

Defendant's attempt to characterize the use as mere "attribution" fails, especially at the pleading stage. Defendant repeatedly asserts that Furlong's identity was included only to identify a participant in a historical project. But that assertion is not found in the SAC and instead reflects Defendant's preferred interpretation of the facts. Plaintiffs specifically allege that Defendant featured Furlong's identity, business story, and project narrative on a professional portfolio website to advertise Defendant's design capabilities, attract prospective clients, and generate business. The Court must accept those allegations as true.

Defendant's reliance on *Tyne* is misplaced because the facts alleged here are materially different from the case at hand. In *Tyne*, the court addressed the use of individuals' identities within a motion picture and emphasized that "merely using an individual's name or likeness in a publication is not actionable," because there was no evidence that the identities were used to "directly promote the product or service of the publisher." *Tyne*, 901 So. 2d at 805–06.  Likewise, Defendant's reliance on Faulkner Press and Fuentes is unavailing. In Faulkner Press, the words "Professor Moulton" appeared on the cover of course materials only to identify Professor Moulton's course, not to promote the defendant's services. *Faulkner Press, LLC, v. Class Notes,* 756 F. Supp. 2d 1352, 1360 (N.D. Fla. 2010).  Similarly, in *Fuentes*, the court dismissed the § 540.08 claim because the plaintiff alleged only that his identity merely appeared during a television broadcast, not that it was used to

41

advertise or promote separate goods or services. *Fuentes v. Mega Media Holdings*, 721 F. Supp. 2d 1255, 1259–60 (S.D. Fla. 2010).  The court specifically noted the absence of allegations that the defendant used the plaintiff's identity "for the purposes of trade or for any commercial or advertising purpose." *Id*. at 1260.

Here, by contrast, this is not a case involving the passive inclusion of a name in a motion picture, television broadcast, course identifier, or other expressive work. Rather, Plaintiffs expressly allege that Defendant used Furlong's identity, business story, and project narrative on his commercial website to market Defendant's professional branding services. Defendant deliberately selected and curated that content for inclusion in a professional portfolio whose purpose was to showcase his work and obtain future clients. The Portfolio itself was the promotional vehicle. Accordingly, Plaintiffs allege precisely the type of commercial purpose absent from *Tyne, Faulkner Press,* and *Fuentes*. This case presents the question *Tyne* preserved: whether Furlong's identity was used to directly promote Defendant's services. Plaintiffs plausibly allege that it was. SAC ¶¶ 49–63, 67.

Courts have recognized § 540.08 claims where a plaintiff's identity is used on a commercial website to promote a defendant's goods or services. *See John Daly Enters., LLC v. Hippo Golf Co.*, 646 F. Supp. 2d 1347, 1351 (S.D. Fla. 2009). Defendant's factual distinctions do not warrant dismissal because § 540.08 does not require a photograph, full legal name, express endorsement, or ongoing commercial

relationship. The question is whether Defendant used Furlong's identity to promote Defendant's services, and the SAC plausibly allege that he did.

Defendant's policy argument fares no better. Defendant contends that recognizing Plaintiffs' claim would mean that professionals could no longer reference prior projects on portfolio websites, LinkedIn profiles, blogs, or similar platforms without violating § 540.08. But Plaintiffs advance no such sweeping theory. Plaintiffs do not challenge a professional's ability to identify former clients, employers, collaborators, or projects. Rather, unlike a typical artist portfolio or LinkedIn profile that merely identifies prior work, Defendant's Portfolio used Furlong's story and confidential information as the centerpiece of a marketing vehicle designed to promote Defendant's services. Construing the SAC's allegations in Plaintiffs' favor, this claim does not implicate the sweeping First Amendment concerns addressed in *Tyne. Tyne,* 901 So.2d at 806. Plaintiffs do not seek to impose liability for the publication of news, commentary, scholarship, or other protected expressive content. The infringed materials were specifically contractually assigned to the Plaintiff. Plaintiffs challenge the commercial exploitation of Furlong's identity and Intellectual Property for promotional purposes.

Defendant's motion ultimately asks the Court to choose between competing factual inferences, Defendant's inference that Furlong's identity was included solely for attribution purposes and Plaintiffs' inference that Defendant featured Furlong's

identity as party of a commercial marketing effort. Rule 12(b)(6) requires the Court to accept Plaintiffs' well-pled allegations and draw reasonable inferences in Plaintiffs' favor. Under that standard, dismissal is improper.

## VI. Plaintiffs' Third-Party Enforcement Expenses Are Special Damages, not a Basis to Stay This Action.

Way's alternative request for a stay should be denied. Even where a court has discretion to stay proceedings, that discretion is limited. A stay pending related litigation must be properly cabined, may not be "immoderate," and cannot rest on judicial economy alone where the requested pause is indefinite or open-ended. *Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264–65 (11th Cir. 2000); *Marti v. Iberostar Hoteles y Apartamentos S.L.*, 54 F.4th 641, 648–51 (11th Cir. 2022).

That is the kind of stay Way seeks here. Way asks the Court to stay this case until "resolution" or "outcome" of the Tenzing VA litigation, but Way identifies no concrete endpoint, no reasonably foreseeable timetable, and no event in the Virginia case that would resolve the merits of Plaintiffs' claims here. Def.'s MTD at 32-33. That is improper because, "a stay dependent on the complete discretion of a third party is almost definitionally indefinite" because "it has no exact or even reasonably foreseeable limits." *Marti*, 54 F.4th at 648.

Nor has Way shown that the Virginia action will control or substantially narrow the issues in this case. By Way's own telling, the Virginia case matters

44

because it may affect Plaintiffs' damages theory. But that is not enough. A stay is problematic where it creates indefinite delay pending an outside proceeding that is unlikely to control or substantially narrow the unresolved claims. *Marti*, 54 F.4th at 648–49; *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1197 (11th Cir. 2009).

This case presents independent liability questions regarding Defendants' access to, publication of, and exploitation of Plaintiffs' branding materials and Furlong's identity. SAC ¶¶ 50-82. The possibility that another case may affect the amount of special damages does not justify staying Plaintiffs' independent liability claims here.

Way also understates the prejudice from delay. Prejudice is not limited to ongoing injunctive harm. Delay itself creates litigation prejudice, including fading memories and potential loss of evidence, and a court's interest in having one less active case is not a sufficient reason to stop litigation already commenced. *Becker v. HBN Media, Inc.*, 314 F. Supp. 3d 1342, 1346 (S.D. Fla. 2018); *see also Marti*, 54 F.4th at 651.

The requested stay is unwarranted because the SAC does not turn entirely on the future outcome of the Virginia action. The SAC alleges present injury because Defendants' conduct forced Plaintiffs to expend significant time and resources, including attorneys' fees, to protect and enforce their intellectual-property rights

45

against others, including in the separate action against Tenzing VA. SAC ¶¶ 72-82, 95. Under Florida's wrongful-act doctrine, where a defendant's wrongful-act causes a plaintiff to litigate with third parties or incur expenses necessary to protect its interests, those expenses "may be recovered as damages." *Pony Exp.*, 475 So. 2d at 1318. Those fees are not treated like ordinary prevailing-party fees because Florida courts distinguish "pure attorney's fees" from fees recoverable as "special damages to compensate for the wrong done." *Id*. Florida courts likewise treat wrongful-act expenses as "damages as part of a cause of action," and an "additional element of damages," not merely as a collateral post-judgment fee request. *Rayburn v. Bright*, 163 So. 3d 735, 736–37 (Fla. Dist. Ct. App. 2015 ).

To the extent the Court concludes that some portion of Plaintiffs' third-party enforcement damages may depend on future developments in the Virginia action, that issue can be addressed later through damages discovery, proof of causation, or, if necessary, a targeted limitation on damages. It does not justify staying Plaintiffs' independent liability claims now. Liability and damages are "often severable" and "[t]rial of damages alone after liability is an established practice." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1356 (11th Cir. 2018). Nor is a stay justified where the related proceeding will not decide the issues presented in the federal case and the stay would merely delay, rather than avoid, later resolution of those issues.

*Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524–26 (11th Cir. 1984).

Because Way seeks an open-ended stay, has not shown that the Virginia action will control or materially narrow the core liability issues here, and has not shown that any efficiency gain outweighs the prejudice of delay, the request for a stay should be denied. *Trujillo*, 221 F.3d at 1264–65; *Miccosukee*, 559 F.3d at 1197; *Becker*, 314 F. Supp. 3d at 1346.

### VII. Plaintiffs Are Entitled to Recover Attorney's Fees Incurred in Responding to This Motion

Section 1927 permits an award of excess costs, expenses, and attorneys' fees where counsel unreasonably and vexatiously multiplies proceedings. 28 U.S.C. § 1927; *see Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–42 (11th Cir. 2007). Courts have applied § 1927 where counsel, after notice of pleading defects, caused unnecessary motion practice through substantially indistinguishable filings. *See McDonough v. City of Homestead*, No. 17-23227-Civ-SCOLA/Torres, 2018 WL4620173, at *4-7 (S.D. Fla. Sept. 25, 2018). Separately, the Court has inherent authority to award attorneys' fees where a party or counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

47

Here, Way's MTD required Plaintiffs to respond to arguments that ask the Court to accept Way's factual narrative, draw inferences against Plaintiffs, and resolve merits issues not properly decided on a Rule 12(b)(6) motion. The SAC alleges that Way reproduced and publicly displayed the heart of Plaintiffs' registered work on his personal website, used Furlong's name and business narrative to promote his own design services, and did so without authorization. SAC ¶¶ 3–4, 50–64, 100–02, 111–14. The SAC further alleges that Way's publication caused Plaintiffs to incur enforcement-related damages, including fees and expenses associated with protecting Plaintiffs' Intellectual Property rights against third parties. SAC ¶¶ 6, 72–82, 95; Prayer for Relief ¶ D.

Rather than accept those allegations as true, Way's MTD repeatedly asks the Court to adopt Way's preferred characterization of the facts. For example, Way characterizes the portfolio publication as standard designer practice, contends that the use of Furlong's name was merely attribution, and argues that the publication was *de minimis* or legally insufficient. Def.'s MTD at 1–4, 13–26, 26–32. Those arguments depend on factual inferences about the purpose, effect, commercial nature, and significance of Way's publication. At the pleading stage, well-pleaded factual allegations must be accepted as true in assessing whether the complaint plausibly states a claim or relief, not Way's. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

48

Way also asks the Court to reject Plaintiffs' damages allegations by resolving causation, recoverability, and factual issues that are not properly decided on the pleadings. The SAC alleges that Way made Plaintiffs' protected branding materials publicly available, that third parties could access and exploit those materials, that Tenzing VA's third-party marketing agency used Plaintiffs' materials, and that Plaintiffs incurred enforcement expenses as a result. SAC ¶¶ 66, 72–82, 95. Way's disagreement with those allegations, and his competing view of what caused Plaintiffs' damages is not a basis for dismissal at this stage.

To the extent the Court concludes that Way's MTD unreasonably forced Plaintiffs to respond to objectively unsupported arguments, fact-dependent, or was not properly resolved on a Rule 12(b)(6) motion or otherwise multiplied the proceedings, Plaintiffs respectfully request recovery of the fees and costs incurred in responding to those portions of the MTD under the Court's inherent authority and 28 U.S.C. § 1927. Alternatively, Plaintiffs request leave to submit a targeted fee application identifying the specific fees and costs incurred in responding to those arguments.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant Duncan Way's Motion to Dismiss Plaintiffs' SAC in its entirety.

DATED this 17th day of June 2026

Respectfully submitted,

STUDIOIP LAW, LLC

By: /s/ Jessie L. Pellant

**Jessie L. Pellant** (admission
*pro hac vice* forthcoming)
Colorado Attorney Reg. No. 42096
jpellant@studioiplaw.com

**Tatum Barton**
Florida Attorney Reg. No. 1058793
tbarton@studioiplaw.com

3000 Lawrence Street
Denver, CO 80205
Telephone: (303) 563-5360

*Attorneys for Plaintiffs*
Tenzing Financial Advisors, PLLC
and Jerry L. Furlong Junior

## <u>CERTIFACTE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(F), the undersigned counsel of record for Plaintiffs

certifies the total word count.

*/s/ Tatum Barton*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Tatum Barton*

52