**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**GAINESVILLE DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| FURLONG FINANCIAL GROUP, | ) | Civil No.: 1:26-cv-00006-MW-MJF |
| PLLC, TENZING FINANCIAL | ) | |
| ADVISORS, PLLC, and JERRY L. | ) | |
| FURLONG JUNIOR, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PHOS CREATIVE, LLC and | ) | |
| DUNCAN WAY, | ) | |
| | ) | |
| *Defendants*. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION OF
DEFENDANT PHOS MOTION TO DISMISS THE SECOND AMENDED
COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................6

FACTUAL BACKGROUND ...............................................................................8

  A. Engagement with PHOS and The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940 ........................................................................................8

  B.  Ways Infringement ....................................................................................11

  C. Commencement of this Action...................................................................12

LEGAL STANDARD.........................................................................................15

ARGUMENTS.....................................................................................................15

  I.      Plaintiffs Establish a Plausible Claim for Breach of Contract Against PHOS.....................................................................................................................15

    A.    The SAC Adequately Identifies the Contractual Provision PHOS Breached.................................................................................................................16

    B.    PHOS Delivery-of-the-Work Argument Ignores the Continuing Effect of the Assignment .................................................................................................18

    C.    Plaintiffs Do Not Rely on a Standalone Confidentiality Clause.........19

D.      PHOS's  Argument That Way  Acted Alone Raises Factual Issues Not

Suitable for Dismissal ...................................................................................20

E.      The Breach of Contract Claim Is Not Duplicative of the Copyright

Claim .................................................................................................................21

II.      Plaintiffs Plausibly Allege Vicarious Copyright Infringement ..............23

A.      The SAC Plausibly Alleges that PHOS Derived a Financial Benefit

From Ways Infringement. .............................................................................23

B.      The SAC Plausibly Alleges that PHOS had the Right and Ability to

Supervise Way. ...............................................................................................25

III.      The Prayer for Relief ...............................................................................30

A.      If Any Portion of the SAC Survives Dismissal, Paragraph D of the

Prayer for Relief  Should Not Be Dismissed or Stricken ...................30super

B.      Paragraph D of the Prayer for Relief is Ripe .......................................34

IV.      This Action Should Not Be Stayed Pending the Tenzing VA

Litigation .................................................................................................................36

V. Plaintiffs Are Entitled to Recover Attorney's Fees Incurred in Responding

to This Motion ......................................................................................................39

CONCLUSION ...............................................................................................41

# TABLE OF AUTHORITIES

**CASES**

*A.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309 (11th Cir. 2024) .........................30

*Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519 (11th Cir. 1984). .......................................................................................... 37, 39

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230 (11th Cir. 2007)............40

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................... 23, 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................... 15, 23, 25

*Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104-RAR, 2025 WL 2549979 (S.D. Fla. Sept. 4, 2025)............................................................................35

*Benson v. Seestrom*, 409 So. 2d 172 (Fla. Dist. Ct. App. 1982)....................... 10, 21

*Browning-Ferris Indus. of Ala., Inc. v. Ala. Dep't of Env't Mgmt.*, 799 F.2d 1473 (11th Cir. 1986)..............................................................................................36

*Burger King Corp. v. Weaver*, 169 F.3d 1310 (11th Cir. 1999).............................20

*Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001)....................................................40

*Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341 (11th Cir. 2025) ....................................................................................... 16, 18

*Cesaire v. Tony*, No. 20-CV-61169, 2023 WL 7291005 (S.D. Fla. Sep. 20, 2023). ......................................................................................................................34

*CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284 (11th Cir. 1982). ................................................................................................................ 37, 38

*Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir. 1997) ........35

*Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197 (2007)......................................15

*Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105 (Fla. 2005). ................. 31, 33

*Hawthorne v. Mac Adjustment*, 140 F.3d 1367 (11th Cir. 1998) ...........................15

*Jackson v. Alto Experience, Inc.*, 716 F.Supp.3d 1327 (S.D. Fla. 2024). ...............30

*Klein & Heuchan, Inc. v. CoStar Realty Info., Inc.*, 707 F. Supp. 2d 1287 (M.D. Fla. 2010) ................................................................ 23, 25, 26, 29

*Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr., Inc.*, 130 F.4th 903 (11th Cir. 2025) ................................................................35

*Marti v. Iberostar Hoteles Y Apartamentos S.L.*, 54 F. 4th 641 (11th Cir. 2022)..37

*McDonough v. City of Homestead*, No. 17-23227-Civ, 2018 WL 11250006 (S.D. Fla. Sept. 25, 2018) ................................................................40

*MDS (Can.) Inc. v. RAD Source Techs., Inc.*, 720 F.3d 833 (11th Cir. 2013) ........19

*Medmarc Cas. Ins. Co. v. Fellows LaBriola LLP*, No. 25-10837, 2025 WL 2886733 (11th Cir. Oct 10, 2025) ................................................................36

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)..........23

*Michael Grecco Prods., Inc. v. RGB Ventures, LLC*, No. 3:16-cv-1335-J-34PDB, 2017 U.S. Dist. LEXIS 148820 (M.D. Fla. Sept. 14, 2017)................................22

*Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, 265 So. 3d 715 (Fla. Dist. Ct. App. 2019). ................................................................17

*Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241 (11th Cir. 2007)....... 16, 40

*Rayburn v. Bright*, 163 So. 3d 735 (Fla. 5th DCA 2015). ................................ 31, 33

*Robbins v. McGrath*, 955 So. 2d 633 (Fla. Dist. Ct. App. 2007) ..........................32

*S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs.*, 756 F.2d 801 (11th Cir. 1985). ................................................................ 23, 28

*Saregama India Ltd. v. Mosley*, 635 F.3d 1284 (11th Cir. 2011)..........................19

*Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n*, 169 So. 3d 197 (Fla. Dist. Ct. App. 2015) ................................................................19

*Story v. Sunshine Foliage World, Inc.*, 120 F.Supp.2d 1027 (M.D.Fla.2000) ........31

*Tarnoff v. iSolved, Inc.*, No. 6:25-cv-00955, 2025 WL 2432529 (M.D. Fla. Aug. 23, 2025) ................................................................24

*United Techs. Corp. v. Mazer*, 556 F.3d 1260 (11th Cir. 2009)..........................20

*Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys., L.L.C.*, 596 F.3d 1313 (11th Cir. 2010). ..................................................................................22

*Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266 (S.D. Fla. 2018). .......................................................................... 17, 18, 19


**STATUTES**

17 U.S.C. § 201(d) ..................................................................................23

28 U.S.C. § 1927 .......................................................................... 47, 49

**RULES**

Fed. R. Civ. P. 55(c)..................................................................................34

N.D. Fla. Loc. R. 7.1(B) ..................................................................................13

N.D. Fla. Local Rule 7.1(F) ..................................................................................50

# INTRODUCTION

Jerry L. Furlong Junior ("Furlong") owns a small financial advisory firm formerly known as Furlong Financial Group, PLLC ("FFG"). In January 2023, FFG engaged PHOS Creative, LLC ("PHOS" or "Defendant") to rebrand. The goal was to develop a unique brand identity for what would later become Tenzing Financial Advisors, PLLC ("Tenzing"), as outlined in the written agreement between FFG and PHOS (the "Agreement") in Plaintiffs' Second Amended Complaint (the "SAC") ¶¶ 22–29, Ex. A.

PHOS assigned its employees, Duncan Way ("Way"), as the creative lead. Furlong and Way met several times, with Furlong sharing details about his journey, his business, and his vision. Drawing on those discussions, and pursuant to the Agreement, Way and PHOS (collectively, the "Defendants") pitched the Tenzing brand, including the Tenzing Branding Guide.

Under the Agreement, the brand assets PHOS created for Plaintiffs belonged to Plaintiffs. As a work made for hire, use of any of Plaintiffs' assets by the Defendants should have ended after the Defendants delivered the Tenzing Branding Guide to Plaintiffs. Instead, Way willfully reproduced substantial portions of the Tenzing Branding Guide on his personal website without authorization, including descriptions of the creative process, to promote his own branding and design

services. That unauthorized use was not contemplated by, or permitted under, the Agreement.

Defendant's Motion to Dismiss ("MTD" or "Motion") is its second attempt to delay this case unnecessarily by arguing factual defenses during the pleading stage. The Complaint is properly pled.

In the MTD, Defendant improperly asks the Court to resolve, on the pleadings, fact-intensive issues of breach of contract, vicarious copyright infringement, and damages, without allowing the Plaintiffs the opportunity for discovery to properly establish their case. At this stage, the proper standard for the Court is whether the Complaint establishes a plausible claim if all the facts are taken as true. The Plaintiff has properly pled the claims in the SAC; accordingly, the MTD should be denied in its entirety. Accepting all well-pleaded factual allegations as true, there are no grounds upon which to dismiss the SAC.

## FACTUAL BACKGROUND

### A. Engagement with PHOS and The Creation of the Tenzing Branding Guide, Reg. No. TX 9-553-940

FFG entrusted PHOS, a professional creative and branding agency, to develop a new brand identity that would become the foundation of the Tenzing brand. In doing so, FFG invested substantial resources and shared confidential business information, strategic objectives, and proprietary concepts with the expectation that PHOS would create intellectual property that would belong exclusively to Plaintiffs.

PHOS was retained not merely to design branding materials, but to create valuable brand assets that Plaintiffs would own and use as the foundation of their business.

Pursuant to the Agreement, PHOS delivered three categories of work product: (i) Name Identification and Selection; (ii) a Brand Plan; and (iii) Logo Design and a Brand Package. SAC ¶ 33, Ex. A. In exchange for Plaintiffs' payment, PHOS agreed that all deliverables, technical information, and intellectual property developed in connection with the project, including all derivative works, would be assigned to FFG. FFG subsequently assigned those rights to Tenzing. SAC ¶¶ 37, 40, 89, 98– 99. The Agreement contains no language granting PHOS a license to use, promote, or publish any of the intellectual property created pursuant to the Agreement. Thus, PHOS retained no rights in the intellectual property assigned to Plaintiffs.

PHOS's own MTD confirms that PHOS recognized the importance of protecting client confidential information and intellectual property. Specifically, PHOS alleges that Way was subject to confidentiality obligations contained in PHOS's employee handbook and related employment policies that prohibited the disclosure of client confidential information and proprietary materials. By PHOS's own account, such restrictions were implemented to protect client assets and Intellectual Property. These facts demonstrate that PHOS understood the risk that employees entrusted with client information could improperly disclose or misuse those materials and took steps to regulate employee conduct accordingly.

PHOS assigned Way as the lead employee responsible for the Tenzing rebrand. SAC ¶¶ 30–32. In that role, Way acted as PHOS's primary representative on the engagement and was entrusted by PHOS with responsibility for developing the Tenzing Branding Guide. Under Florida law, "a principal is responsible for the acts of his agent. Even where an agent's act is unauthorized, the principal is liable if the agent had the apparent authority to do the act and that apparent authority was reasonably relied upon by the third party dealing with the agent." *Benson v. Seestrom*, 409 So. 2d 172, 173 (Fla. Dist. Ct. App. 1982). Way personally presented logos and brand-design concepts directly to Furlong, routinely met with Furlong, was privy to Furlong's confidential business information, and was responsible for the creative design ultimately assigned to Plaintiffs. SAC ¶¶ 30-32. As a result of the authority and access granted to him by PHOS, Way had complete access to the registered Tenzing Branding Guide.  SAC ¶ 62.

PHOS delivered the brand identity in the spring of 2023, and Plaintiffs launched the Tenzing brand later that year. SAC ¶¶ 38–41. Sometime thereafter, Way, without Plaintiffs' consent and in violation of the Agreement, published portions of the Tenzing Branding Guide on his personal website (the "Portfolio"). SAC ¶¶ 47–60, Ex. G. Way's website prominently featured the heart of the Tenzing Branding Guide, including the final Tenzing logo, three alternate logo designs, three mood boards, the design language used to create the logo, and six reproduced pages

10

from the Tenzing Branding Guide. Way's website also included narrative commentary describing the brand-development process, the rationale behind the Tenzing name, and the design process, including the color and typographic choices, as well as confidential conversations between Way and Furlong regarding the reasons for Furlong's rebrand. SAC ¶¶ 50-55, 63, Ex. G. Way's publication remained publicly available without Plaintiffs' knowledge or consent until Plaintiffs independently discovered the infringement in September 2025. SAC ¶¶ 47–60.

On October 13, 2025, Plaintiffs filed a copyright application for the Tenzing Branding Guide. SAC ¶¶ 42–43. Plaintiffs paid for special handling and expedited registration in anticipation of this litigation. SAC ¶ 44.

## B. Ways Infringement

In September 2025, Furlong conducted an SEO search for Tenzing Financial, and discovered the Tenzing Branding Guide, and his name and story, published on Way's website. Upon reviewing Way's website, including his resume and LinkedIn, Plaintiffs discovered that Way held himself out as a full-time employee at PHOS. SAC. ¶ 106, Ex. J.

On October 23, 2025, Plaintiffs sent PHOS a cease-and-desist letter demanding that PHOS and its employees, including Way, immediately remove all Tenzing-related materials from Way's website. SAC ¶ 68, Ex. J. At that time, Way continued to hold himself as a PHOS employee on both his LinkedIn profile and the

resume posted on his website. SAC Ex. J. After receiving the cease-and-desist letter, PHOS did not respond that it lacked the ability to contact Way or address the publication. Instead, PHOS instructed Way to remove the Tenzing Branding Guide from his website, and PHOS then emailed Furlong confirming that, "everything on Duncan's website has been down since last Friday" and apologizing for what occurred. SAC Ex. K. PHOS did not indicate that Way was acting outside the scope of his employment, suggesting that it lacked authority to direct his conduct, or otherwise disclaim responsibility for the publication of Plaintiffs' Tenzing Branding Guide. Def.'s MTD at 16-17 n.6.

Around the same time Plaintiffs discovered Way's unauthorized publication, Plaintiffs also identified another financial-services firm, Tenzing Financial, LLC ("Tenzing VA"), operating under an identical company name and using a nearly identical logo, color palette, font selections, and overall brand presentation. As a result, Plaintiffs have been forced to expend substantial time and resources protecting and enforcing their intellectual-property rights in a separate enforcement action, further compounding the harm caused by the unauthorized dissemination of Plaintiffs' proprietary branding materials. SAC ¶¶ 72–78, 95.

## C. Commencement of this Action

Plaintiffs filed the original Complaint on January 7, 2026, while their copyright application was pending and during a federal government shutdown that

delayed Copyright Office processing. Plaintiffs paid for expedited processing in anticipation of this litigation. On January 16, 2026, the Copyright Office issued Registration No. TX 9-553-940 for the Tenzing Branding Guide, claiming both "text" and "artwork." SAC Ex. D. Plaintiffs thereafter filed the First Amended Complaint ("FAC") on March 12, 2026, after the registration issued, asserting claims for breach of contract, copyright infringement, and unauthorized publication of name or likeness. Following the Court's grant of leave to amend, Plaintiffs filed the operative Second Amended Complaint ("SAC") on May 20, 2026, asserting the same causes of action and incorporating amendments intended to address the deficiencies identified by Defendants in their prior motions to dismiss. ECF No 41-42.

On April 23, 2026, the Parties conducted a meet-and-confer pursuant to N.D. Fla. Loc. R. 7.1(B) regarding Defendants' anticipated motions to dismiss and alleged pleading deficiencies in the FAC. The following day, Plaintiffs provided Defendants with a detailed explanation of the amendments they intended to make in a proposed Second Amended Complaint ("SAC"), including amendments designed to address several of the deficiencies identified by Defendants. Plaintiffs further advised Defendants that they would not oppose an extension of Defendants' response deadline if Defendants consented to the filing of the SAC. That consent was later withdrawn.

Before any motion to dismiss was filed, Defendants were on actual notice that Plaintiffs intended to seek leave to amend and that the contemplated FAC would address several of the issues raised by Defendants. Defendants nevertheless proceeded with motions directed at the FAC. ECF Nos. 28 and 37. As a result, Plaintiffs were forced to expend substantial time and resources both responding to those motions and preparing the SAC.

On May 18, 2026, Plaintiffs moved for leave to file the SAC. ECF No. 38. On May 20, 2026, the Court granted Plaintiffs' Motion for Leave and simultaneously denied Defendants' motions to dismiss directed at the FAC. ECF No. 41. Later that same day, Plaintiffs filed the SAC. ECF No. 42.

Following the filing of the SAC, Plaintiffs reasonably anticipated that Defendants would answer the operative pleading. Instead, on June 2, 2026—the eve of their responsive pleading deadline—Defendants initiated another meet-and-confer concerning a new motion to dismiss directed at the SAC. PHOS subsequently filed the instant MTD, raising many of the same arguments asserted in its earlier motion to dismiss, notwithstanding Plaintiffs' filing of the SAC to address the alleged deficiencies raised by Defendants and the Court's Order granting leave to amend and denying Defendants' prior motions to dismiss. During the meet and confer, Defendant stated the arguments are "largely the same" and when pushed as to why the need for another Motion to Dismiss rather than a later Summary

Judgement motion once discovery was completed, as the arguments are instead presented as factual defenses, the Defendant had no response and simply stood their position that they would file the current MTD anyway. As a result, Plaintiffs are once again required to expend significant resources responding to arguments that largely mirror those raised in the Defendant's earlier motion.

## LEGAL STANDARD

To survive a Fed. R. Civ. P. 12(b)(6) motion, the complaint must include "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The court generally is limited in its review to the "four corners of the complaint," *Speaker v. United States HHS CDC & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) and must accept all well-pleaded factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007). The court does not make factual determinations in evaluating a motion to dismiss. *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). If the complaint's allegations are plausible under the alleged facts, then the court must view them in the light most favorable to the plaintiff. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). In reviewing a motion to dismiss, the court must draw all reasonable inferences in the Plaintiffs' favor. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

## ARGUMENTS

## I. Plaintiffs Establish a Plausible Claim for Breach of Contract Against PHOS

PHOS's renewed attack on Claim I fails because it asks the Court to treat Plaintiffs' breach-of-contract theory as pleading defect when, at most, PHOS raises a merits dispute over the meaning and effect of the Agreement's Intellectual Property clause. The operative SAC now alleges that FFG entered into the Agreement with PHOS and is entitled to enforce it. *See Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007).

At this stage, the Court need only decide whether the SAC plausibly alleges a breach, not whether Plaintiffs disprove PHOS's competing interpretation of the Agreement. Rule 8 requires only a plausible breach-of-contract claim, it does not impose a heightened pleading requirement. *Caterpillar Fin. Servs. Corp. v. Venequip Mach. Sales Corp.*, 147 F.4th 1341, 1348–49 (11th Cir. 2025) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face"; "[a] breach of contract plaintiff . . . need not allege anything with particularity.") Because the SAC does so, dismissal of Claim I, especially with prejudice, is unwarranted.

### A. The SAC Adequately Identifies the Contractual Provision PHOS Breached

PHOS argues that Claim I should be dismissed because Plaintiffs fail to identify a contractual provision that PHOS breached. But the SAC does exactly that.

Under Florida law, a breach-of-contract claim requires "(1) a valid contract; (2) a material breach; and (3) damages." *Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, 265 So. 3d 715, 719 (Fla. Dist. Ct. App. 2019). At the pleading stage, Plaintiffs need only allege sufficient facts that, accepted as true, give PHOS notice of the breach theory. *See Wistar v. Raymond James Fin. Servs., Inc.*, 365 F. Supp. 3d 1266, 1269–70 (S.D. Fla. 2018).

The SAC satisfies that standard. Plaintiffs identify the Agreement, attach and reference it, and specifically point to the Agreement's Intellectual Property clause. SAC ¶¶ 37, 89–90. That provision assigned to FFG "the entire right, title and interest" in all Intellectual Property resulting from PHOS's work under the Agreement and all Intellectual Property relating to the Agreement's deliverables. SAC ¶¶ 37, 89. The same provision further states that copyrightable materials created under the Agreement are works made for hire and "will belong exclusively" to FFG. Id. Read with that provision, Paragraph 93 alleges that PHOS breached the Agreement by allowing an employee of PHOS to infringe Plaintiffs assigned Intellectual Property and permitting its unauthorized use, disclosure, and dissemination, when the Agreement clearly assigns ownership of that Intellectual Property to the Plaintiff SAC ¶ 93.

Those allegations are enough to identify the contractual provisions and the alleged breach. PHOS assertion that the SAC "does not and cannot" allege a breach

depends on PHOS competing interpretation of the Agreement, namely, that the Intellectual Property clause imposed no obligation after delivery of the work. Def.'s MTD at 5. But a motion to dismiss tests the legal sufficiency of the complaint, not whether PHOS's interpretation of the contract will ultimately prevail. *See Wistar*, 365 F. Supp. 3d at 1269–70; *Caterpillar.*, 147 F.4th 1341 at 1350. Because Plaintiffs identify the Agreement's Intellectual Property clause and allege that PHOS acted inconsistently with the exclusive rights assigned under that clause, Claim I should not be dismissed for failure to identify a breached contractual provision.

### B. PHOS Delivery-of-the-Work Argument Ignores the Continuing Effect of the Assignment

PHOS argues that because it delivered the branding materials in April 2023, its contract obligations were fully discharged, and no breach could have occurred afterward. But that argument treats the Agreement's Intellectual Property clause as though it ended the moment the files were delivered. The SAC plausibly alleges otherwise.

The point is not merely that PHOSs delivered files to Plaintiffs. The point is that PHOS transferred and assigned the "entire right, title and interest" in the relevant Intellectual Property and agreed that copyrightable works created under the Agreement would "belong exclusively" to FFG. SAC ¶¶ 37, 89. That assignment did not become meaningless after delivery. Once PHOS transferred exclusive ownership of the deliverables and related Intellectual Property, PHOS could not later act

inconsistently with that transfer by unauthorized use, disclosure, or dissemination of the same assigned materials.

PHOS's contrary reading would reduce the Intellectual Property clause to a one-time file handoff. Florida law requires courts to read contracts as a whole and avoid interpretations that render contractual language meaningless. *Silver Shells Corp. v. St. Maarten at Silver Shells Condo. Ass'n*, 169 So. 3d 197, 203 (Fla. Dist. Ct. App. 2015); *Wistar*, 365 F. Supp. 3d at 1270. Under Plaintiffs' plausible reading, the assignment and exclusivity language had continuing effect, leaving PHOS with no right to use, publish, disclose, or permit dissemination of the materials it had assigned exclusively to FFG. SAC ¶ 90.

### C. Plaintiffs Do Not Rely on a Standalone Confidentiality Clause

PHOS's mischaracterizes Plaintiffs' theory. The absence of a separate confidentiality clause does not defeat Claim I. Plaintiffs' breach theory is based on ownership, assignment, and exclusivity, not merely secrecy. Once PHOS transferred the "entire right, title and interest" in the Intellectual Property and agreed that the copyrightable works would "belong exclusively" to FFG, PHOS retained no contractual right to continue using, publishing, disclosing, or disseminating those materials absent an express reservation or license-back. Under Florida law, an assignment transfers the rights assigned. *MDS (Can.) Inc. v. RAD Source Techs., Inc.*, 720 F.3d 833, 855 (11th Cir. 2013). And copyright law likewise permits

ownership of exclusive rights to be transferred in whole or in part. *Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1292 (11th Cir. 2011); 17 U.S.C. § 201(d). PHOS's interpretation would make the assignment less than exclusive by allowing PHOS to keep an unstated right to use or publish the same materials it assigned to FFG.

Plaintiffs do not assert an implied-covenant claim untethered to an express term. Instead, Plaintiffs rely on the Agreement's express assignment and exclusive-ownership language and allege that PHOS breached those rights by permitting Way to published and disseminate the assigned materials without authorization. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316–17 (11th Cir. 1999).

### D. PHOS's Argument That Way Acted Alone Raises Factual Issues Not Suitable for Dismissal

PHOS cannot defeat Claim I by recasting Way's conduct as personal and unauthorized, because the SAC plausibly alleges that Way accessed and published the assigned materials through his role with PHOS and that PHOS failed to maintain control over Plaintiffs' Intellectual Property.

The Eleventh Circuit has allowed claims to proceed at the pleading stage where the complaint plausibly tied the misuse of proprietary materials to an employee's position and access. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271–73 (11th Cir. 2009). Here, the SAC alleges that Way was employed by PHOS when the Tenzing Branding Guide was created and when the heart of the Tenzing Branding Guide was published online. SAC ¶¶ 61, 106. It further alleges that Way

had access to the Tenzing Branding Guide because he was employed by PHOS and worked under PHOS's "direction, control, and supervision" in creating the materials. SAC ¶ 62. Furthermore, the court in *Benson* held that employers were liable for the actions of their employees in regard to breach of contract claims when acting in the scope of their employment. *See Benson*, 409 So. 2d 172.

Those allegations plausibly connect Way's conduct to PHOS and raise factual issues that cannot be resolved on a motion to dismiss. Whether Way acted with authorization, within the scope of his employment, using PHOSs-related access, or in a way PHOS had the right and ability to control are factual questions for discovery. At this stage, the Court must accept the SAC's well-pleaded allegations as true and draw reasonable inferences in Plaintiffs' favor. *See Speaker*, 623 F.3d at 1379.

PHOS's reliance on Way's separate employment agreement does not change the result. That agreement is not the contract at issue, rather it is necessary to review during discovery to understand the relationship between the Defendants, and PHOS cannot use it at the pleading stage to negate Plaintiffs' allegation that PHOS, through its agents, representatives, and employees, failed to keep its employees from infringing on Plaintiffs' assigned Intellectual Property and permitted its unauthorized use, disclosure, and dissemination. SAC ¶ 93.

**E. The Breach of Contract Claim Is Not Duplicative of the Copyright Claim**

21

PHOS's suggestion that the breach of contract claim "sounds only in copyright" is incorrect. Def.'s MTD at 8. Plaintiffs are entitled to plead both copyright infringement and breach of contract where the same conduct violates separate legal duties. *See Michael Grecco Prods., Inc. v. RGB Ventures*, LLC, No. 3:16-cv-1335-J-34PDB, 2017 U.S. Dist. LEXIS 148820, at *16-20, *33-34 (M.D. Fla. Sept. 14, 2017). The copyright claim is based on Defendants' unauthorized reproduction and display of protected materials. Claim I is different. It is based on PHOS's contractual promise to assign the "entire right, title and interest" in the Intellectual Property to FFG and the Agreement's express statement that the copyrightable works would "belong exclusively" to FFG.

That contractual undertaking supplies a duty independent of the Copyright Act. In the Eleventh Circuit, breach-of-contract claims enforcing a two-party intellectual-property agreement are not preempted merely because the same conduct may also infringe copyright; the contractual promise is an "extra element" that makes the claim qualitatively different from copyright infringement. *Utopia Provider Sys., Inc. v. Pro-Med Clinical Sys.*, L.L.C., 596 F.3d 1313, 1326–27 (11th Cir. 2010). The contract supplies an extra element of Pho's agreement to assign exclusive ownership rights and Plaintiffs' right to enforce that bargain.

Claim I is not duplicative of Plaintiffs' copyright claims. It enforces a separate contractual obligation arising from the Agreement's assignment and exclusive-

22

ownership provisions, and it should not be dismissed on the theory that Plaintiffs also plead copyright infringement.

## II.     Plaintiffs Plausibly Allege Vicarious Copyright Infringement

Vicarious infringement occurs "when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster*, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005). Knowledge of the infringement is not necessary to a finding of vicarious infringement. *S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publrs.*, 756 F.2d 801, 809 (11th Cir. 1985).

### A. The SAC Plausibly Alleges that PHOS Derived a Financial Benefit From Ways Infringement.

PHOS improperly asks the Court to draw factual inferences in their favor regarding the financial benefit arising from the infringement. At the pleading stage, Plaintiffs are not required to prove that the infringement generated actual revenue, customers, or a quantifiable financial gain, this is information sought through discovery. Rather, Plaintiffs need only allege facts supporting a plausible inference that PHOS derived, or reasonably expected to derive, an economic benefit from the infringing activity. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570. Allegations of a direct financial benefit are sufficient where there is a causal connection between the infringing activity and the financial benefit the

defendant receives. *See Klein & Heuchan, Inc. v. CoStar Realty Info.*, Inc., 707 F. Supp. 2d 1287, 1299 (M.D. Fla. 2010).

Plaintiffs plausibly allege a causal connection between Way's publication of the Tenzing Branding Guide and PHOS's financial benefit. The SAC alleges that Way created the Tenzing Branding Guide during the PHOS-Tenzing engagement, while employed by PHOS, and later displayed it publicly to market branding services while identifying himself as a PHOS employee. SAC ¶¶ 30–32, 50, 53, 58–64, 100, 106–07. The SAC further alleges that PHOS knew the publication served as effective marketing and would benefit from the promotion of the Tenzing Branding Guide. SAC ¶¶ 65, 67, 105. These allegations support a plausible inference that the publication enhanced the visibility and marketability of work performed through PHOS and created business opportunities or economic benefits for PHOS. Whether PHOS actually derived those benefits is a factual issue not proper for resolution on a motion to dismiss.

PHOS challenge to Plaintiffs' allegations pleaded "upon information and belief" likewise fails. PHOS relies on *Tarnoff* for the proposition that allegations made upon information and belief are generally not accepted as true when unsupported by sufficient facts. *See*, e.g., *Tarnoff v. iSolved, Inc.*, No. 6:25-cv-00955, 2025 WL 2432529, at *3 (M.D. Fla. Aug. 23, 2025). However, PHOS omits that *Tarnoff* also recognized that the phrase "upon information and belief" does not

24

automatically permit a court to disregard an allegation. *Id*. at *1. Rather, the inquiry is whether the allegation is supported by sufficient factual content to render the inference plausible.

Here, unlike the allegations at issue in *Tarnoff*, Plaintiffs' allegations are supported by specific factual allegations concerning Way's employment relationship with PHOS, his access to and use of materials created through that relationship, his public promotion of those materials, and his identification of himself as a PHOS employee on the same website that the Tenzing Branding Guide was published. These factual allegations provide a sufficient basis for the reasonable inference that PHOS benefitted from the infringing activity. Accordingly, Plaintiffs' allegations are not the type of unsupported, conclusory assertions contemplated by *Tarnoff*, but rather are supported by factual content that renders the claim plausible under *Twombly* and *Iqbal*.

PHOS reliance on *Klein & Heuchan* is misplaced. In *Klein*, the court addressed vicarious copyright liability after the development of a factual record and found no evidence that K&H received any benefit, financial or otherwise, from the alleged infringement. *See Klein & Heuchan*, 707 F. Supp. 2d at 1296-97. Unlike *Klein*, this case comes before the Court on a Rule 12(b)(6) motion, where the Court must accept Plaintiffs' well-pleaded allegations as true and draw all reasonable inferences in Plaintiffs' favor.

**B. The SAC Plausibly Alleges that PHOS had the Right and Ability to Supervise Way.**

PHO's control argument improperly narrows the inquiry to whether PHOS controlled Way's personal website. The relevant question is not limited to ownership or control of the website itself, but whether PHOS had the right and ability to supervise Way's conduct giving rise to the infringement. *Klein* 707 F. Supp. 2d 1287 at 1296-97.

The SAC plausibly alleges that PHOS possessed such authority. PHOS entered into the Agreement, employed Way, assigned him to the Tenzing project, and supervised the work performed on that project. Way created the Tenzing Branding Guide in the course of his employment using materials and resources made available through PHOS, and PHOS reviewed, managed, and delivered the final guide to Plaintiffs. SAC ¶¶ 30–32, 50, 53, 58–64, 100, 106–07. The alleged infringement did not arise from unrelated conduct wholly outside Way's employment. It arose from Way's access to client materials obtained through his PHOS employment. These allegations plausibly support an inference that PHOS had the right and ability to supervise Way's access to, use, retention, disclosure, and publication of the Tenzing Branding Guide. That inference is further supported by PHOS's own acknowledgment that use of client work in professional portfolios is common in the creative industry and that PHOS implemented safeguards governing such use. Def.'s MTD at 8, 15.

PHOS's reliance on the employment agreement and confidentiality obligations does not defeat Plaintiffs' claim. To the contrary, PHOS's own materials support a reasonable inference that it had authority to control employees' access to, use, retention, and disclosure of client materials—the conduct giving rise to the alleged infringement. PHOS relies on provisions prohibiting employees from using confidential information outside the performance of their duties or disclosing it outside PHOS. Def.'s MTD Ex. B-1. Those restrictions show that PHOS exercised authority over employee use of client materials. The Employee Handbook further supports Plaintiffs' supervisory-authority allegations. It requires departing employees to return all company property, work product, documents, files, records, and information in their possession or control, including information stored on personal computers or other devices. Def.'s MTD Ex. B-1. PHOS cannot rely on policies controlling employee use and retention of client materials while also arguing it lacked the ability to supervise or control that same conduct.

PHOS further argues that it "[could] not plausibly be considered to have control over a former employee that left the company months prior." Def.'s MTD at 16-17 & n.3. In support, PHOS relies on extrinsic evidence, specifically the declaration of PHOS CEO Brandon West. Ex. B ¶¶ 6-12. Mr. West states that, as CEO of PHOS, he was personally involved in developing the company's employment policies, employee handbook, and employment agreements, and that he

27

had regular personal interactions with Way during his employment. Ex. B ¶¶ 6-7. Far from negating Plaintiffs' allegations, those assertions further demonstrate the supervisory relationship between PHOS and Way and PHOS's authority to govern employee access to, use of, retention of, and disclosure of client materials.

PHOS's reliance on Mr. West's declaration is similarly unavailing. Mr. West states that he had "no record, recollection, or knowledge" that Way posted the Tenzing Branding Guide on his personal website, that no one at PHOS gave Way permission to do so, and that he first learned of the posting upon receiving Plaintiffs' October 2025 cease-and-desist letter. Ex. B ¶¶ 10–12. Those assertions do not warrant dismissal. Knowledge of the infringement is not required for vicarious copyright liability. *S. Bell Tel. & Tel. Co*, 756 F.2d at 811. In any event, the SAC alleges that the Tenzing Branding Guide was publicly displayed on Way's website as early as September 20, 2024, while Way was still employed by PHOS. SAC ¶ 60, Ex. H; Def.'s MTD Ex. B ¶ 12. The allegedly infringing materials therefore remained publicly available for more than six months during Way's employment. Because the infringement began during the employment relationship and involved materials Way created and obtained through that relationship, PHOS's characterization of the conduct as wholly outside its supervisory authority fails at the pleading stage.

PHOS reliance on *Klein* is misplaced. In *Klein*, the court concluded that the defendant exercised sufficient control to be vicariously liable "regardless of its classification of *Bell* as an 'independent contractor.'" *Klein & Heuchan*, 707 F. Supp. 2d at 1297. Specifically, the court found sufficient supervisory control because the defendant "provided *Bell* office space, held weekly sales meetings, controlled his listings, and in general exercised supervisory control." Id. Notably, the court found the "right and ability" requirement satisfied even though the alleged infringer was not an employee. Here, Plaintiffs allege an even more direct supervisory relationship. PHOS employed Way, assigned him to the Tenzing project, entrusted him with access to Plaintiffs copyrighted materials, maintained policies governing his use and disclosure of those materials, and ultimately delivered the final Tenzing Branding Guide to Plaintiffs. Accepting those allegations as true, Plaintiffs have plausibly alleged a supervisory relationship sufficient to satisfy the "right and ability to supervise" element at the pleading stage.

Finally, the SAC alleges that, after receiving notice of the infringement through Plaintiffs' cease-and-desist letter, the infringing materials were removed. At a minimum, those allegations support a reasonable inference that PHOS possessed the practical ability to supervise, direct, prevent, or stop the challenged conduct. Whether PHOS in fact exercised such authority presents a factual issue that cannot be resolved on a motion to dismiss. Accepting the SAC's allegations as true and

drawing all reasonable inferences in Plaintiffs' favor, Plaintiffs have plausibly alleged that PHOS possessed the right and ability to supervise Way and the infringing conduct at issue.

### III. The Prayer for Relief

### A. Paragraph D of the Prayer for Relief Should Not Be Dismissed or Stricken

Defendant's request to dismiss or strike Paragraph D of the Prayer for Relief ("Paragraph D") should be denied. Paragraph D is not a standalone cause of action. It is a request for a category of damages. Specifically, Plaintiffs seek special damages, including the fees, costs, and expenses incurred enforcing their intellectual property rights against third parties because of Defendant's conduct.

A request for an improper remedy is not a basis to dismiss an otherwise viable claim. *A.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024). Rule 54(c) likewise confirms that final relief is not limited by the precise demand in the pleadings. Fed. R. Civ. P. 55(c). Thus, even if the Court later narrows the scope of recoverable damages, that merits issue does not justify dismissing or striking Paragraph D at the pleading stage.

Defendant also fail to satisfy Rule 12(f). Motions to strike are "generally disfavored and denied 'unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Jackson v. Alto Experience, Inc.*, 716 F.Supp.3d 1327, 1333 (S.D. Fla. 2024).

A motion to strike will "usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Story v. Sunshine Foliage World*, Inc., 120 F.Supp.2d 1027, 1030 (M.D.Fla.2000).

Paragraph D plainly relates to the controversy because it seeks damages Plaintiffs allege were caused by the Defendant's conduct, including fees, expenses, and costs incurred enforcing Plaintiffs' intellectual property rights against third-parties. SAC ¶¶ 73-87. PHOS's objections go to causation, foreseeability, ripeness, and proof of damages. Those are not proper grounds to strike the prayer for relief at the pleading stage. *See Goldberg v. Fla. Power & Light Co.*, 899 So. 2d 1105, 1116 (Fla. 2005). Florida law treats wrongful-act litigation expenses as special damages, not as a separate cause of action. In *Rayburn v. Bright*, the court explained that "litigation expenses under the wrongful-act doctrine are damages as part of a cause of action" and that such fees are special damages that must be specifically pleaded. *Rayburn v. Bright*, 163 So. 3d 735, 736–37 (Fla. 5th DCA 2015). Plaintiffs pled the substance of that special-damages theory here. The SAC alleges that Defendants' conduct caused third-party copying of Plaintiffs' intellectual property and forced Plaintiffs to incur fees, costs, and expenses to protect and enforce their rights. SAC ¶¶ 73–87. Paragraph D is therefore a pleaded damages theory, not an independent claim for prevailing party attorneys' fees.

Defendant may argue that the SAC does not expressly use the phrase "wrongful act doctrine." But the SAC pleads the substance of the doctrine and the special damages sought. It identifies the Tenzing VA dispute, alleges that Defendants' conduct caused Plaintiffs to incur fees and expenses in that third-party matter, and expressly requests those fees and expenses as special damages. That is enough at the pleading stage to place Defendants on notice of the damages sought and the factual basis for them. In *Robbins v. McGrath*, where the plaintiffs sought fees under § 57.105, Florida Statutes, and raised the wrongful-act doctrine for the first time in a trial brief immediately before trial. 955 So. 2d 633, 634 (Fla. Dist. Ct. App. 2007). Here, Plaintiffs did not wait until trial to identify the damages theory; they pled the third-party enforcement fees and expenses in the SAC itself.

Defendant also argues there is no underlying "wrong" to support the wrongful-act doctrine. Def.'s MTD at 19. But at this stage, the question is whether Plaintiffs plausibly allege wrongful conduct that, if proven, could support those damages. If Plaintiffs have adequately pleaded breach of contract, copyright infringement, or other wrongful conduct, Defendant's argument fails.

Defendant's causation argument likewise raises factual issues improper for Rule 12 resolution. The SAC alleges that Defendants' conduct caused the publication and dissemination of Plaintiffs' protected branding materials, that Tenzing VA's marketing firm later used those materials, and that Plaintiffs incurred

fees and expenses enforcing their rights against Tenzing VA. SAC ¶¶ 73–87. Defendant may dispute causation, but that dispute turns on evidence. At this stage, the SAC's well-pleaded allegations must be accepted as true.

Florida law treats proximate cause and intervening causation as factual issues unless the facts permit only one reasonable inference. Where reasonable persons could differ as to whether the facts establish proximate causation, the issue must be left to the factfinder. *Goldberg*, 899 So. 2d at 1116. Defendants' assertion that intervening third-party conduct severs causation as a matter of law asks the Court to resolve factual disputes prematurely.

Under Rule 12(b)(6), Plaintiffs need not prove that Tenzing VA or its agency copied Plaintiffs' materials after viewing Way's website. The question is only whether the SAC plausibly alleges that Defendants' conduct set in motion the events that forced Plaintiffs into third-party enforcement litigation. It does. The SAC alleges the factual basis for Plaintiffs' special damages, including the Virginia action and Tenzing VA's later use of Plaintiffs' materials. Whether Plaintiffs can prove causation is a factual issue for discovery.

Defendant's Copyright Act and § 412 arguments do not justify striking Paragraph D at the pleading stage. Wrongful-act damages are special damages pled separately from any fees or remedies that may be recoverable under the Copyright Act. *See Rayburn*, 163 So. 3d at 737. Plaintiffs are not asking the Court, on this

Motion, to determine the ultimate basis for any fee recovery or to decide whether any category of fees will ultimately be awarded. Rather, Plaintiffs have pled third-party enforcement expenses as special damages arising from Defendants alleged wrongful conduct, separate from any prevailing-party fees or statutory remedies that may later be available under the Copyright Act.

Paragraph D is also requested in the alternative. Depending on the facts developed in discovery and the claims that survive, Plaintiffs may be entitled to recover fees or expenses under one or more available theories, including wrongful-act special damages, Copyright Act remedies, or another applicable basis. Whether those damages are recoverable, limited, preempted, or otherwise subject to a statutory restriction is for the Court to determine at a later stage based on the factual record. At this stage, it would be premature to strike an entire category of damages simply because PHOS disputes the ultimate legal basis or scope of recovery. *See Cesaire v. Tony*, No. 20-CV-61169-Ruiz/McCabe, 2023 WL 7291005, at \*4-5 (S.D. Fla. Sep. 20, 2023).

Accordingly, because Paragraph D is tied to Plaintiffs' substantive claims and seeks a recognized category of special damages, the request to dismiss or strike it should be denied.

**B. Paragraph D of the Prayer for Relief is Ripe**

Ripeness turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding review. *Digital Props., Inc. v. City of Plantation,* 121 F.3d 586, 589 (11th Cir. 1997). A claim is "not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Liberty Surplus Ins. Corp. v. Kaufman Lynn Constr*., Inc., 130 F.4th 903, 910 (11th Cir. 2025).

Paragraph D does not rest on a hypothetical future injury. The SAC alleges that Defendants' conduct has already forced Plaintiffs to expend time and resources, including attorneys' fees and expenses, enforcing their intellectual property rights against Tenzing VA. SAC ¶¶ 73-87, 95. That is a present economic injury, not a speculative harm.

Defendant's ripeness argument confuses the existence of injury with the final amount of damages. Even if the Tenzing VA litigation remains ongoing, the fact that Plaintiffs may incur additional fees goes to the number of damages, not whether a live controversy exists now. *See Benessere Inv. Grp., LLC v. Swider*, No. 24-CV-21104-RAR, 2025 WL 2549979, at *10 (S.D. Fla. Sept. 4, 2025). Once Plaintiffs have already incurred fees and expenses allegedly caused by Defendants' conduct, the injury exists.

Defendant's reliance on *Medmarc Casualty Insurance Co. v. Fellows LaBriola LLP* is misplaced because *Medmarc* involved an insurer's duty-to-

indemnify claim, which depended on whether the future judgement would ever trigger an indemnity obligation. No. 25-10837, 2025 WL 2886733, at *10 (11th Cir. Oct 10, 2025). Plaintiffs allege that Defendants' conduct has already forced them into litigation with Tenzing VA and that they have already incurred fees and expenses in that litigation. SAC ¶¶ 73-87.

Plaintiffs' eventual success or failure in the Tenzing VA litigation does not determine ripeness. Plaintiffs need not know the final endpoint of that litigation before alleging that they have already suffered defense and enforcement costs because of Defendants' conduct. *See Browning-Ferris Indus. of Ala., Inc. v. Ala. Dep't of Env't Mgmt.*, 799 F.2d 1473, 1478–79 (11th Cir. 1986). Defendants' position would make any claim for ongoing litigation expenses unripe until the secondary case ended, even where the Plaintiff had already incurred fees. That is not what Article III requires.

Paragraph D is ripe because it is based on present, already-incurred economic loss, not on a future contingency that may never happen. The only uncertainty is how much more Plaintiffs may spend and whether the Court will allow recoverability. Those are merits and damages questions for a later stage, not a basis for dismissal under Rule 12.

**IV. This Action Should Not Be Stayed Pending the Tenzing VA Litigation**

PHOS's alternative request for a stay should be denied. PHOS does not contend that the Virginia litigation will determine liability or entitlement in this case. Def.'s MTD at 28. The concession is fatal to its request. Although a district court has discretion to stay litigation pending a related proceeding, that discretion is not boundless. A stay must be properly limited in scope and duration. A stay is improper if it is "immoderate," meaning it is not framed so that its force will be spent within reasonable limits. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288–89 (11th Cir. 1982). PHOS's request for a stay rests largely on judicial economy, but "in a case like this one, the interests of judicial economy alone are insufficient to justify such an indefinite stay." *Trujillo v. Conover & Co. Commc'ns., Inc.,* 221 F.3d 1262, 1265 (11th Cir. *v.* 2000)." *v. Conover & Co. Commc'ns., Inc.*, 221 F.3d 1262, 1265 (11th Cir. 2000).

A stay is improper where it creates indefinite delay pending another proceeding that is unlikely to control or substantially narrow the unresolved issues in the stayed case. *Marti v. Iberostar Hoteles Y Apartamentos S.L.*, 54 F.4th 641, 648 (11th Cir. 2022); *see also Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1524-26 (11th Cir. 1984). The early stage of this case does not change that conclusion because the Virginia litigation does not resolve Plaintiffs' claims against PHOS.

PHOS's own argument confirms that a complete stay is unnecessary. If the Tenzing VA subpoenas are as narrow and potentially useful as PHOS claims, that discovery can proceed without staying the entire action. Targeted discovery is a case-management tool, not a reason to halt litigation on claims and issues the Virginia litigation will not decide.

Nor does the possibility that the Virginia case may affect one component of damages justify staying this case "in its entirety." Def.'s MTD at 28. *CTI* rejects the overbroad stay PHOS requests here. There, the court held that the district court abused its discretion by staying the entire action when the narrower course was to sever and stay only the affected third-party claims while allowing the principal claims to proceed. *CTI*, 685 F.2d 1284 at 1290.The same result reasoning applies here. Even if the Virginia litigation later bears on some portion of Plaintiffs' damages theory, it does not justify freezing discovery and adjudication on liability, causation, or the remaining damages issues in this case.

PHOS argues that Plaintiffs "lose nothing of substance by waiting" because the challenging postings have been removed. Def.'s MTD at 30. But removal of the Subject Materials does not eliminate prejudice. Plaintiffs still seek relief for past misconduct and resulting damages. Staying the entire action would delay adjudication of those claims even though the Virginia litigation will not decide PHOS's liability.

A wholesale stay would improperly postpone this Court's exercise of jurisdiction based on speculation that the Virginia litigation may later affect one category of damages. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them, and a stay in favor of another proceeding is warranted only in exceptional circumstances. *Am. Mfrs.*, 743 F.2d at 1525. Those circumstances are not present here. The Virginia litigation will not resolve the merits of Plaintiffs' claims against PHOS, and any later effect on a narrow damages issue can be addressed through targeted scheduling or phased discovery. *See* Def.'s MTD at 29; *see also Trujillo*, 221 F.3d at 1265. PHOS's request to stay this action in its entirety should therefore be denied.

## V. Plaintiffs Are Entitled to Recover Attorney's Fees Incurred in Responding to This Motion.

Plaintiffs' request recovery of the reasonable attorneys' fees and costs incurred in responding to this Motion to the extent authorized by the Court's inherent authority and 28 U.S.C. § 1927. This request is independent from Plaintiffs' request for third-party enforcement fees under Paragraph D and separate from any later requests for prevailing-party fees under the Copyright Act. A federal court may require an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" to personally satisfy the excess costs, expenses, and attorneys' fees reasonably incurred because of that conduct. 28 U.S.C. § 1927. The Eleventh Circuit has recognized that sanctions-based fee shifting may be appropriate where litigation

conduct forces an opponent to respond to objectively unsupported or needlessly repetitive arguments. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239–42 (11th Cir. 2007). Courts applying § 1927 have awarded fees where counsel, after notice of pleading defects, causes unnecessary additional motion practice by advancing substantially indistinguishable arguments or filings. *See McDonough v. City of Homestead*, No. 17-23227-Civ, 2018 WL 11250006, at \*12–16, \*23–24 (S.D. Fla. Sept. 25, 2018). Separately, the Court has inherent authority to award attorneys' fees where a party or counsel acts in bad faith, vexatiously, wantonly, or for oppressive reasons. *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

Here, PHOS's Motion requires Plaintiffs to respond to arguments that attack superseded pleadings, repeat arguments mooted by amendment, or depend on factual defenses improper on a motion to dismiss. An amended complaint supersedes the prior pleading. *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007). PHOS acknowledges that its prior motion to dismiss the FAC was denied as moot after Plaintiffs filed the SAC yet frames the present Motion as raising deficiencies also asserted in its prior motion. Def.'s MTD at 1 & n.1.

That matters because the SAC materially changed the operative pleading. It added and clarified allegations regarding the parties to the Agreement, the Intellectual Property clause, Plaintiffs' ownership rights in the deliverables, and PHOS's alleged responsibility for the unauthorized use, disclosure, and

dissemination of Plaintiffs' assigned Intellectual Property. SAC ¶¶ 28, 37, 88–95. PHOS nevertheless seeks dismissal with prejudice by repeating arguments not fairly directed to the operative allegations.

PHOS also asks the Court to resolve factual defenses at the pleading stage. PHOS argues that Way acted without its knowledge, authorization, or direction, relying on an employee handbook and declaration to characterize his conduct as outside PHOS's control. Def.'s MTD at 3, 7–10, 14–16; West Decl. ¶¶ 10–12. But the SAC alleges that Way created the branding materials while employed by PHOS, that PHOS had authority to control him, that PHOS knew or should have known of the infringing conduct, that PHOS failed to implement reasonable safeguards, and that PHOS later contacted Way to remove the infringing content. SAC ¶¶ 3, 5, 65–67, 108. PHOS's contrary factual defenses go beyond the SAC and are improper at this stage.

To the extent the Court concludes that PHOS's Motion unreasonably forced Plaintiffs to respond to stale, mooted, or objectively unsupported arguments, Plaintiffs respectfully request recovery of the fees and costs incurred in responding to those portions of the Motion under the Court's inherent authority and 28 U.S.C. § 1927. Alternatively, Plaintiffs request leave to submit a targeted fee application identifying the specific fees and costs incurred in responding to those arguments.

# **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny PHOS Motion to Dismiss Plaintiffs' SAC in its entirety.

DATED this 17th day of June 2026

Respectfully submitted,

STUDIOIP LAW, LLC

By: /s/ Jessie L. Pellant
**Jessie L. Pellant** *pro hac vice*
Colorado Attorney Reg. No. 42096
jpellant@studioiplaw.com
**Tatum Barton**
Florida Attorney Reg. No. 1058793
tbarton@studioiplaw.com

3000 Lawrence Street
Denver, CO 80205
Telephone: (303) 563-5360

*Attorneys for Plaintiffs*
Furlong Financial Group, PLLC
Tenzing Financial Advisors, PLLC
and Jerry L. Furlong Junior

42

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of June 2026 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Tatum Barton*

## <u>CERTIFICATION OF WORD LIMIT</u>

Pursuant to N.D. Fla. Local Rule 7.1(F), I certify that this motion complies with the required word limit.

*<u>/s/ Tatum Barton</u>*