# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

| | |
|---|---|
| TENZING FINANCIAL ADVISORS, PLLC and JERRY L. FURLONG JR., <br><br> Plaintiffs, <br><br> v. <br><br> PHOS CREATIVE, LLC and DUNCAN WAY, <br><br> Defendants. | Case No. 1:26-cv-00006-MW-MJF |

**DECLARATION OF PHILIPP RUBEN IN SUPPORT OF DEFENDANT PHOS CREATIVE, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

I, Philipp Ruben, declare the following:

1.     I am a member of the Bar of Illinois, admitted to this Court *pro hac vice*. I am an attorney at McAndrews, Held & Malloy Ltd. My office is located at 500 West Madison Street, Chicago, Illinois, 60661.

2.     I represent Defendant Phos Creative, LLC ("Phos") in the above-captioned action.

3.     I submit this declaration in support of Phos's Reply in Support of its Motion to Dismiss. I have personal knowledge of the matters recited herein, and if

1

called upon to testify concerning them under oath, I could and would testify competently thereto.

4.     Attached as Exhibit A1 is a true and correct de-designated excerpt of the rough transcript of the deposition of Consociate Media, LLC's corporate representative Rudolph Heinatz, taken on June 23, 2026.

5.     Attached as Exhibit A2 is a true and correct copy of a responsive letter from counsel for Tenzing Financial, LLC to counsel for Plaintiffs regarding *Tenzing Fin. Advisors, PLLC v. Tenzing Fin., LLC*, No. 4:26-cv-00044 (E.D. Va.) on April 20, 2026, produced on June 26, 2026 and bates stamped TF0000016-TF000020.

I declare under penalty of perjury that the foregoing is true and correct. Executed on:

June 29, 2026                                          */s/ Philipp Ruben*
                                                       Philipp Ruben

# EXHIBIT A1

CONFIDENTIAL/ROUGH DRAFT

RUDOLPH BEVERLY HEINATZ, III, called herein as a witness, first being sworn, testified as follows:

EXAMINATION BY MR. RUBEN:

Q.    Good morning, Mr. Heinatz. Thanks for your time today.  Sorry you had to deal with the traffic mess.  I know this deposition takes you away from your real work, so we appreciate your cooperation.

My name is Philipp Ruben.  I'm an attorney for McAndrews, Held & Malloy. I represent Phos Creative, LLC, one of the defendants in the Tenzing Florida lawsuit. Joining me here today are my colleagues, Hank Spuhler and Christian Hallerud.

Also on the call is Tatem Baron and Jessie Pellant who represent the plaintiffs Tenzing Florida, and Cecillia Xie who represents co-defendant Duncan Way.

The initial logistics I think is I'm going to ask my questions first and then hand it over to those guys to see if

CONFIDENTIAL/ROUGH DRAFT
a quick break just to look at my notes, and then I have a few more, about two or three more exhibits, to run through and then I'll finish up my initial time.

Ten minutes?  Does that work for everybody?

Can we go off the record please, Tammy?

(Recess taken.)

BY MR. RUBEN:

Q.    A couple more exhibits, Mr. Heinatz.  Thank you for bearing with us here.  We appreciate it.

A.    Sure.

MR. RUBEN:  I'm going to mark as Deposition Exhibit 12.  This is the Tenzing VA website screenshot attached to Plaintiff's Complaint as Exhibit M, ECF 42-13.

(Exhibit No. 12 - SAC Exhibit M ECF 41-13 Tenzing VA Deployed Website Screenshot - marked for identification.)

Q.    I'll flash it on the screen

71

CONFIDENTIAL/ROUGH DRAFT
here.  Starting on page -- is there a page here on Exhibit 12?

Mr. Heinatz, do you recognize this website?

A.    Yes.

Q.    Is this the website that Consociate built for Tenzing Financial?

A.    Yes.

Q.    And it's not deployed on the client's site, correct?

A.    I'm sorry.  I don't understand the question.

Q.    Is this an accurate representation of what your client, Tenzing Financial's, website looks like?

A.    Yes.

Q.    On the very bottom it says, "Created by Consociate."

Is that you guys?

A.    It is.

Q.    All right.  And the colors, logo story, the tag line here, they all come from the work we walked through today; is that correct?

CONFIDENTIAL/ROUGH DRAFT

A.    Yes.

Q.    Taking any kind of step back from the initial questionnaire to the concepts to the selection of the logo, brand guide, collateral, this was Consociate's own process from start to finish; is that correct?

A.    Yes.

Q.    All right.  I think we touched on it briefly, but other than the questionnaire we looked at in, I believe it was Exhibit 5, did the client give you any other reference materials or examples of things that they liked?

A.    No, not that I'm aware of.

Q.    Did the client ever point you to another financial advisor's branding to look at to borrow from?

A.    No.

Q.    Did anyone ask you to look at any other company's website for this project?

A.    No.

Q.    So everything we walked

CONFIDENTIAL/ROUGH DRAFT

through today, the concepts, the logo, the pallets, the story, did that come from your own team's work?

A.    Yes.

Q.    And with the client's input?

A.    Yes.

Q.    We touched on this briefly already, but the logo selection has a "T" in the logo.

For a company that starts with the letter T, is that a fairly natural design idea to include the logo of the company name, or include the letter of the company name in the logo?

A.    Yes.  It's not uncommon.

Q.    That's consistent with other logos that you guys have designed?

A.    Depends on the logo.  Our own logo is a "C" so...

Q.    Right.  And we've touched on this as well, but Tenzing Norgay's story is public history, right?

A.    Yes.

Q.    As for blue I think you had

CONFIDENTIAL/ROUGH DRAFT

mentioned that Navy blue is one of the most common colors in the world; is that correct?

A.    Yes.

Q.    Does the color blue by itself tell you anything about where a specific logo or brand came from?

A.    A generic branded logo?  No.

Q.    Did any of those three things, the blue, the "T" with the Norgay story come from anybody else's website?

A.    No.

Q.    Before you ever learned about this lawsuit, had you ever heard of the name, Duncan Way?

A.    No.

Q.    Before this lawsuit had you ever heard of the designer company called, Duncan Way Designs?

A.    No.

Q.    About how many weeks ago did you learn about this lawsuit involving Tenzing Florida and Phos?

A.    Four, I would guess.

75

CONFIDENTIAL/ROUGH DRAFT

Q.    And is that the first time you learned about Duncan Way and this website?

A.    Yes.

Q.    Was it only after this lawsuit that you became aware of this lawsuit?

A.    Yes.

MR. RUBEN:  I'm marking as Deposition Exhibit 13 a capture of the website duncanway.com/tenzing.

(Exhibit No. 13 - SAC Exhibit G ECF 42-7 Duncan Way Website Capture Tenzing Page - marked for identification.)

Q.    This is Exhibit G attached to Plaintiff's Second Amended Complaint. I'll share it on the screen here.  I'll scroll down here a couple different pages.

Mr. Heinatz, setting aside anything that you've been shown in connection with this case, have you ever seen this website before you learned about this lawsuit?

A.    No.

Q.    At any time while you were actually working on the Tenzing VA brands,

CONFIDENTIAL/ROUGH DRAFT

you know, early 2025 to mid-2025, did you ever see this website?

A.    No.

Q.    Before this lawsuit, had anyone at Consociate ever shown it to you?

A.    No.

Q.    That would include all those eight people that we had listed in Exhibit 4?

A.    No one has ever shown me this website prior to this lawsuit.

Q.    This website was captured, just for reference in the record, October 8, 2025.

One more exhibit, Mr. Heinatz, then I'll end my questions.

MR. RUBEN:  I'll mark as Deposition Exhibit 14 a second capture of the website from the internet archives.  It's attached to Plaintiff's Second Amended Complaint, Exhibit H.

(Exhibit No. 14 - SAC Exhibit H ECF 42-8 Duncan Way Website Internet Archive

CONFIDENTIAL/ROUGH DRAFT

Capture - marked for identification.)

Q. Do you see ECF 42-8? Scrolling down here. If we zoom in on the top, it looks like there's a capture date of September 20, 2024, just for reference and clarification. Plaintiff's at the startup believe that the document, Way website, was active as roughly that time period.

Same questions. Before you knew anything about this lawsuit, had you ever seen this page?

A. No.

Q. Same questions as during the time you were developing the Tenzing VA brand.

You had never seen this page, correct?

A. No.

Q. And the first time you saw this website was either now or after you were made aware of this lawsuit; is that correct?

A. Yes.

CONFIDENTIAL/ROUGH DRAFT

Q.    All right.  So I'm almost finished.  Thanks again for bearing with me through all of this.

I'm going to ask you a series of questions about Mr. Ways lawsuit here.  For each of these I'm going to ask you about the time you were developing the Tenzing VA brand before you were aware of this litigation.

Does that make sense?

THE WITNESS:  Yes.

Q.    During the time Consociate was developing the Tenzing VA brand, did you ever visit the website duncanwaydesigns.com?

A.    No.

Q.    During that work did you ever view any page of Duncan Way's website?

A.    No.

Q.    During that time period when you were developing the Tenzing VA brand, are you aware of anyone at Consociate who ever visited Duncan Way's website?

A.    No.

CONFIDENTIAL/ROUGH DRAFT

Q.    Did anybody on the Consociate team ever mention Duncan Way's website in connection with the Tenzing VA project?

A.    No.

Q.    This would have been the eight people on the list of Exhibit 4, correct?

A.    Correct.

Q.    None of those people ever mentioned it?

A.    No.

Q.    Including Michelle Harrison your contractor, correct?

A.    Correct.

Q.    Jeffery Phillips, the design and former employee, he never mentioned it, correct?

A.    Correct.

Q.    During the project did you ever see a Tenzing branding guide, the one that was created by Duncan Way's?

A.    No.

Q.    And for that project did you ever see any mood boards or logo concepts or brand guides created by Duncan Way?

CONFIDENTIAL/ROUGH DRAFT

A.    No.

Q.    Did Duncan Way's website play any role in how Consociate developed the Tenzing VA brands?

A.    No.

Q.    Did it play any role in how you chose the colors?

A.    No.

Q.    Did it play in how you designed the logo?

A.    No.

Q.    Did it play any role in the brand story you built around Tenzing Norgay?

A.    No.

Q.    Did Duncan Way's role play in how you arrived at the blue in the final drafts?

A.    No.

Q.    Did it play any role in how you designed the "T" mark?

A.    No.

Q.    Was Duncan Way's website used in any way by Consociate's development of

CONFIDENTIAL/ROUGH DRAFT

the Tenzing VA brand?

A.    No.

Q.    As you sit here today, speaking for Consociate Media, are you aware of anyone at Consociate, or anywhere else, who viewed or used Duncan Way's website while developing the Tenzing VA brands?

A.    No.

Q.    All right.  That's it for me.

Just everything that you've told me today is accurate and complete to the company's knowledge, correct?

A.    Yes.  Correct.

Q.    Is there anything you'd like to add or correct?

A.    No.

MR. RUBEN:  I'd like to reserve any time we have left for rebuttal, but I'm finished as of right now.  I can either hand it off to CC or Plaintiffs.  I'll let you guys decide who wants to go first.

82

CONFIDENTIAL/ROUGH DRAFT

But, again, Mr. Heinatz, I really appreciate your time and having you, you know, tell us the story of how this project was developed.  Thank you.

THE WITNESS:  You're welcome.

EXAMINATION BY MS. XIE:

Q.    Thank you, Mr. Heinatz for your time.  I'll keep it pretty brief because I think Phil was pretty thorough with everything.

I've a couple more questions if that's all right?

A.    Of course.

Q.    So prior to receiving notice of this lawsuit, did you or anyone at Consociate know of or know of Furlong Financial Group?

A.    No.

Q.    What about Tenzing Financial Advisors?

A.    No.

Q.    What about the individual, Jerry L. Furlong, Jr.?

CONFIDENTIAL/ROUGH DRAFT
questions I have for my end.  Yeah.

Plaintiff's, if you want to go and I will share this in the chat Tammy.  Thank you.

EXAMINATION BY MS. PELLANT:

Q.   I guess we're afternoon now, Mr. Heinatz.  Good afternoon.  I'm Jessie Pellant.  I represent the plaintiffs in this matter, and I'll just ask a few questions as well.

In preparation for this deposition, did you meet with anyone?

A.   I had a phone conversation with Jeff Phillips.

Q.   And Jeff Phillips is who you said developed the brand --

A.   Yes.

Q.   -- for Tenzing VA?

A.   Yes, ma'am.

Q.   Did you meet with, or have a phone call with anyone else?

A.   Other than attorneys, no.

Q.   Okay.

A.   I mean, I'm not sure the

89

CONFIDENTIAL/ROUGH DRAFT

to clients.

Things like -- my guess is that Jeff, as I mentioned earlier, did some kind of hand sketching to start this process, as he does in a lot of projects, we would not retain that stuff.

Q. Okay. Would you retain any of the online research conducted?

A. No. Other than what can be established by the search histories.

Q. Okay. Great.

You were asked by Mr. Ruben whether or not Jeff witnessed, or anyone at Consociate, witnessed the Tenzing Financial brand website in Florida.

Can you say for certain that Jeff did not access or view the Tenzing Financial website for Tenzing in Florida?

A. I can say for certain because I asked him the question directly. I worked with the man for several years. He is militant about respecting other artists, and he's honest to a fault. So I would say with certainty he did not access

90

CONFIDENTIAL/ROUGH DRAFT

it because that's what he told me.

Q.    Does Consociate use any tools to help with sort of differentiating brands or logos?  When I say "tools," I mean, any programs, data programs, design assistant programs, are artificial intelligence and the like?

A.    No.  Everything is done through the Adobe Creative Suite.

Q.    Do you know if anyone from Consociate, any your designers, utilized any artificial intelligence during the development of their brands?

A.    I don't know that.  I don't think so, and I would say that confidently.

MS. PELLANT:  I think I'm going to take a quick break and just sort of look over my notes.  I don't think I have any further questions, but I want to be sure before we dismiss you, if that's all right?

THE WITNESS:  Absolutely.

95

REPORTER CERTIFICATE

I, Tammy B. Figler, do hereby certify that I did report in stenotype machine shorthand the proceedings held in the above-entitled matter;

Further, that the foregoing transcript is a true and accurate transcription of my said stenographic notes taken at the time and place hereinbefore set forth.

Dated:  June 23, 2026

at Rochester, New York

TAMMY B. FIGLER
Freelance Court Reporter and
Notary Public No. 01FI4573724
in and for Ontario County, New York

# EXHIBIT A2

 KAUFMAN & CANOLES

Kristan B. Burch
(757) 624.3343
kristan.burch@kaufcan.com

April 20, 2026

**VIA EMAIL**

Clinton H. Brannon, Esq.
Williams Mullen P.C.
8350 Broad Street, Suite 1600
Tysons, VA 22102

Jessie L. Pellant, Esq.
Vincent Marenda, Esq.
StudioIP Law, LLC
3000 Lawrence Street
Denver, CO 80205

**Re:    Tenzing Financial Advisors, PLLC v. Tenzing Financial, LLC,**
**Civil Action No. 4:26-cv-00044-JWK-RJK**

Dear Counsel:

I am writing on behalf of Tenzing Financial, LLC ("Defendant") to address the allegations in the Complaint filed by Tenzing Financial Advisors, PLLC ("Plaintiff") in an effort to reach an early resolution of this dispute.

## Creation of Defendant's Name and Logo

In Paragraph 66 of the Complaint, Plaintiff alleges on "information and belief" that Defendant "intended to copy Plaintiff's name, logo, and overall brand feel."  In Paragraphs 69 and 71 of the Complaint, Plaintiff alleges that upon "information and belief," Defendant had access to Plaintiff's branding materials prior to developing "its logo and the founding of their business through internet access" based on the Tenzing Brand Guide "inadvertently" being "made public nearly a year before Defendant's founding."

These allegations in the Complaint pled on information and belief are not accurate, and Defendant provides the following support for this denial:

- Defendant will be able to put on evidence to show how it picked its name in 2020.  Defendant's CPA suggested that Defendant use Tenzing for its name because the accountant thought it would

Kaufman & Canoles, P.C.
150 West Main Street • Suite 2100 • Norfolk, VA 23510

Mailing Address
Post Office Box 3037 • Norfolk, VA 23514

t: (757) 624.3000
f: (888) 360.9092

kaufCAN.com

TF000016

Clinton H. Brannon, Esq.
Williams Mullen P.C.
April 20, 2026
Page 2

interesting for a financial services company to use the Everest adventure as part of its branding. The founders of Defendant love the outdoors so the story had appeal to them.

- Defendant did not copy Plaintiff's name when it selected its name. Specifically, by June 12, 2020, Defendant selected its name, and it filed its Articles of Incorporation with the Virginia State Corporation Commission to register its LLC under that name.

    Based on the allegations in the Complaint, Plaintiff did not contract with Phos Creative LLC until January 3, 2023 and did not file its Articles of Incorporation until March 14, 2023. Compl. §§ 20, 24.

    Defendant selected its name over two and half years before Plaintiff selected its name. This shows that Defendant did not copy Plaintiff's name since Defendant selected its name *before* Plaintiff selected its name.

- Before this lawsuit, Defendant never heard of Phos Creative LLC and never had been to the website of Phos Creative LLC. Before this lawsuit, Defendant never had seen the Tenzing Brand Guide referenced in Paragraph 69 of the Complaint.

- Defendant did not access Plaintiff's branding materials before Defendant developed its logo and started using its name as alleged on "information and belief" in Paragraph 71 of the Complaint.

    In early 2025, Defendant contacted a local marketing firm in the Hampton Roads area to help it design its marketing materials. On February 10, 2025, Defendant signed an Agreement for Services with the marketing firm, and the marketing firm contracted to perform services for Defendant in connection with creation of branding materials, photography, video creation, and website design.

    In April 2025, the marketing firm presented Defendant with a variety of different logos and stories behind each of the concepts. Defendant worked with the marketing firm to review and refine the options, and Tenzing selected one of the logos designed by the marketing firm to use for its business. In June 2025, the marketing firm created Brand Standards for Defendant to use for its business. Defendant began using the Tenzing name and logo in summer 2025.

### Lack of Similarity between Defendant's Logo and Plaintiff's Logo

The logos used by Plaintiff and Defendant are not "nearly identical" or confusingly similar as claimed by Plaintiff in the Complaint. This can be seen by placing the two logos next to each other as Plaintiff has done in Paragraph 52 of the Complaint.

Furthermore, the materials created by the marketing companies for each party further support this point.

**TF000017**

Clinton H. Brannon, Esq.
Williams Mullen P.C.
April 20, 2026
Page 3



Plaintiff's "primary logo lock-up" is                    , and the two T's mark "represents the taking on of another's load as shown in the action of a sherpa pulling a climber up a mountain."  Compl., Ex. C.



Plaintiff's "horizontal logo lockup" is                   , and the horizontal logo lockup "offers an alternative lockup for placements with more horizontal space available."  Compl., Ex. C.

Defendant's logo is [image]   , and it is described in its Brand Standards as follows: "The 'T' in Tenzing is reimagined by removing its right side, then mirroring and deconstructing key sections to introduce depth and layering."

In addition, the blue used on Defendant's website is not "a nearly identical deep blue color" to the blue used by Plaintiff in the Tenzing Branding Guide as claimed in Paragraph 74 of the Complaint.  The examples below undercut this claim:



TF000018

Clinton H. Brannon, Esq.
Williams Mullen P.C.
April 20, 2026
Page 4

## Other Issues with Allegations in Complaint

Based on its initial review of the allegations in the Complaint, Defendant notes the following additional issues with the allegations asserted against it:

- Counts I and II are based upon 15 U.S.C. § 1114(1) which requires "a registered mark." Plaintiff does not have a registered mark for either Count I or Count II of the Complaint.

- While Plaintiff's design mark is progressing toward registration, Plaintiff's word mark is not. On February 26, 2026, the trademark examiner issued a non-final office action, citing a likelihood of confusion with two trademarks already issued to Tenzing Limited, a United Kingdom limited company, with one registered on September 17, 2024 and the other registered on January 6, 2026.

  Plaintiff seeks registration in International Class 036 for the following services:

  > Financial advisory services; Financial planning; Financial trust planning; Financial planning for retirement; Financial planning and investment advisory services; Financial portfolio management; Estate trust planning; Providing information in the field of estate planning for charitable trust.

  Tenzing Limited holds a registered trademark for International Class 036 for the following services:

  > CLASS 36: Advice relating to investments; financial and monetary affairs, namely, investment management, banking and financial trading;investment services in the nature of brokerage; Financial investment brokerage; banking; private equity fund investment services;management of private equity funds; private equity fund management; financial asset management; equity financing; equitycapital investment; venture capital investment and advisory services; stock market advisory services; stock brokerage, trading andmanagement; private equity investment in SMEs; security brokerage; financial advice relating to taxation; consultancy, informationand advisory services relating to the aforesaid service

  To date, Plaintiff has not responded to the office action issued by the trademark examiner.

- The alleged copying that is the basis for Count IV does not rise to the level of copyright infringement, even if Defendant had known about the posting by Phos Creative, LLC (which Defendant did not). Plaintiff's inability to meet the standard for copyright infringement is shown by the allegations of alleged copying in Paragraph 75 of the Complaint.

- Defendant plans to rely upon the defense set forth in 15 U.S.C. § 1115(b)(5) based upon the fact that Defendant "adopted without knowledge of the registrant's prior use and has been continuously used

TF000019

Clinton H. Brannon, Esq.
Williams Mullen P.C.
April 20, 2026
Page 5

by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title." Defendant began using its mark in summer 2025, and Plaintiff did not file its trademark application for Tenzing with the United Patent and Trademark Office until October 9, 2025.

**<u>Co-Existence Agreement</u>**

Defendant offers to resolve the dispute by the parties entering into a co-existence agreement such that they both can continue to operate under the Tenzing mark. As part of such a co-existence agreement, Defendant would agree to cooperate with Plaintiff in its efforts to obtain a federal trademark for the word mark. To the extent that Plaintiff is able to advance its word mark to a notice of publication, Defendant agrees not to oppose the mark's registration. In addition, as part of that duty to cooperate, Defendant agrees not to contact Tenzing Limited and alert them to the trademark claims that Plaintiff is asserting.

Defendant is open to exploring other terms and conditions that Plaintiff may seek to include in an agreement to resolve this dispute.

I am available for a call to discuss any or all of the items in this letter in an effort to reach an early resolution of this dispute.

*This letter is not sent for settlement purposes and is intended to be used in litigation if the parties cannot resolve this dispute.*

Very truly yours,

Kristan B. Burch

KBB/wr

31879432v1

**TF000020**